[Doc. Nos. 85, 91, 94]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

UNITED STATES OF AMERICA,

       Plaintiff,

   v.

SENSIENT COLORS, INC.,

       Defendant.

Civil No. 07-1275 (JHR)

## OPINION AND ORDER

The issue before the Court is whether to bar, stay or permit the depositions of three former or present employees of the Environmental Protection Agency ("EPA"). These individuals are Christine Todd Whitman ("Whitman"), former EPA Administrator, Jane M. Kenny ("Kenny"), former Regional Administrator of EPA Region II, and David Rosoff ("Rosoff"), the On-Scene Coordinator for the Site at issue in this litigation. Whitman and Kenny filed motions to quash deposition subpoenas, and Rosoff filed a motion for protective order. Because the relevant issues overlap, the Court will address the three motions together. The Court has exercised its discretion to decide the motions without oral argument. See Fed. R. Civ. P. 78 and L. Civ. R. 78.1.[1]  For the reasons to be discussed, the motion as to Whitman is GRANTED and the motions as

---

[1]Sensient does not challenge plaintiff's standing to move to quash Whitman's subpoena. None of the movants is challenging the service of their subpoenas and deposition notices.

to Kenny and Rosoff are GRANTED in part and DENIED in part.

Background

In March 2007, plaintiff, on behalf of the EPA, filed this cost recovery action against defendant, Sensient Colors Inc. ("Sensient"), pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§9601-9675 (2000). Plaintiff alleges Sensient is responsible for the contamination at the General Color Site ("Site") in the City of Camden, New Jersey, and is liable to reimburse it for costs in excess of $16 million that the EPA spent to respond to the release or threatened release of hazardous substances at the Site. It is alleged that from 1922 to 1988, Sensient's predecessor manufactured inorganic and organic pigments and dyes at the Site.[2]

In addition to this case, Sensient is also a defendant in a related civil action pending in the State Superior Court of New Jersey, Law Division, Camden County (CAM-L-6579-03). In that case, Sensient's neighbor, Pleasant Gardens Realty Corp., alleges Sensient contaminated its property and is liable for the cleanup costs. The Court understands that the trial of the Pleasant Gardens case was recently postponed due to Sensient's request for additional discovery.

Part of Sensient's defense in this case focuses on its

---

[2]A summary of the EPA's activities at the Site is set forth in United States v. Sensient Colors, Inc., 580 F. Supp. 2d 369 (D.N.J. 2008). The summary is incorporated herein by reference.

objection to the EPA's characterization of the work at the Site as a "removal action."  Sensient points out that EPA's actions at the Site spanned eight years and cost $16 million.  However, Sensient notes that CERCLA prohibits plaintiff from recovering removal costs in excess of $2 million, or 12 months in duration.  See 42 U.S.C. §9604(c)(1).[3]  Sensient also contends that the EPA deliberately mischaracterized its response activity at the Site as an emergency removal action in order to obtain funding to conduct a community redevelopment at Sensient's expense.  (See Sensient's Answer to Plaintiff's Complaint, Eighth Affirmative Defense [Doc. No. 59].)

Sensient argues that its defense is supported by its recent discovery of Rosoff's February 7, 2006 e-mail.[4]  Sensient believes Rosoff's e-mail, and Kenny's September 30, 2003 letter to then Camden Chief Operating Officer Randy Primas (discussed infra), confirms that the EPA purposely mischaracterized its response at

---

[3]Sensient contends that none of the statutory exceptions in 42 U.S.C. §9604(c)(1)(A)-(C) apply.

[4]The e-mail states in pertinent part:

It was a remedial site - I just completed with removal funds over a 6 year period (a very fast RI/FS-RD/RA but a very slow removal).  The secret is spread it out and they don't realize how much your spending - 9 million is a drop in the bucket for you but here I am looked at like I have 3 heads.  Preremedial didn't want to touch it so we did it ourselves.  Normally I could have never done this with Dick as a boss but with the support of Jane and Anthony he couldn't say no.  There is no real 2 million dollar limit so I have learned.  I'll be looking in NY this spring.

the Site as a removal action instead of a remedial action. Sensient contends that these documents demonstrate that the soil excavation at the Site was motivated by a desire to assist Camden in redeveloping the Site at Sensient's expense.

Shortly after Sensient learned of Rosoff's e-mail it filed its motion for leave to amend its answer and to file a third-party complaint [Doc. No. 66]. Sensient also served the subpoenas and deposition notices that are the subject of this discovery dispute. Sensient proposes to amend its answer to add affirmative defenses, to include a counterclaim against the plaintiff and the EPA, and to assert individual third-party claims against Rosoff, Kenny, and other unknown EPA employees or agents. Sensient's motion has been fully briefed and will be decided shortly.

As noted, Sensient recently issued subpoenas and deposition notices to Whitman, Kenny and Rosoff. Plaintiff filed the motion to quash Whitman's deposition. Separately engaged counsel filed motions to quash and for protective orders on behalf of Kenny and Rosoff. Primarily relying upon United States v. Morgan, 313 U.S. 409 (1941), and subsequent cases interpreting the decision, Whitman argues her deposition should be quashed because she is a former high level government official. She also argues she does not have unique personal knowledge about relevant issues that cannot be obtained elsewhere. Kenny also relies on Morgan. In addition, Kenny argues Sensient should not be permitted to obtain discovery

4

in this court that it could not take in the Pleasant Gardens litigation.[5]  Kenny also argues her deposition should not take place until she finds out if she will be joined as a party and has an opportunity to present her qualified immunity defense.  Rosoff argues his deposition should not take place until he has an adequate opportunity to prepare, until he knows if he will be joined and until he has an opportunity to present his qualified immunity defense.  Sensient counters by arguing that Morgan does not apply to former government employees and that Whitman and Kenny are not high ranking government officials.  Alternatively, Sensient argues that even if Morgan applies extraordinary circumstances justify the depositions of Whitman and Kenny.  Sensient also argues discovery should not be delayed by the deponents' qualified immunity defense, and the depositions should proceed immediately after the Court decides Sensient's motion to amend.

---

[5]In the Pleasant Gardens litigation Sensient's ability to take depositions of EPA personnel is limited by EPA regulations. See Toughy v. Regan, 340 U.S. 462 (1951); 40 C.F.R. §2.401 et seq. The regulations prohibit Agency employees from testifying concerning their official duties unless authorized by the General Counsel or his designee under 40 C.F.R. §2.404.  The EPA did not authorize Rosoff to testify because it determined that the Pleasant Gardens litigation concerned a matter purely among private litigants, the outcome of which will have no significant effect on the EPA.  See B. Van de Weghe Certification at Exhibit B, Doc. No. 94-3.

Discussion

Christine Todd Whitman[6]

The first issue to address regarding Whitman's motion is whether her deposition is subject to the Morgan doctrine. The parties agree that the Morgan decision has come to support the general proposition that depositions of current high ranking government officials concerning their official duties should not be taken absent extraordinary circumstances. See Buono v. City of Newark, 249 F.R.D. 469, 470 n.2 (D.N.J. 2008)("top executive department officials should not be required to appear for depositions or testify at trial absent extraordinary circumstances, ....."); Bogan v. City of Boston, 489 F.3d 417, 423 (1st Cir. 2007)("The need for limited access to high government officials through the discovery process is well established"). See also In re United States, 197 F.3d 310, 313-14 (8th Cir. 1999); In re FDIC, 58 F.3d 1055, 1062 (5th Cir. 1995); In re United States, 985 F.2d 510, 512 (11th Cir. 1993); Franklin Sav. Ass'n v. Ryan, 922 F.2d 209, 212 (4th Cir. 1991). The rule recognizes that high ranking government officials have greater duties and time constraints than

_____

[6]Pursuant to Fed. R. Civ. P. 26(c) and 45(c)(3), a court may issue a protective order to quash a subpoena. A motion to quash is judged under a standard similar to a motion for protective order. See Leibholz v. Hariri, C.A. No. 05-5148 (DRD),2008 WL 2697336, at *2 (D.N.J. June 30, 2008)(citing to 9 James W. Moore, et al., Moore's Federal Practice §45.50[2] (3d ed. 2008)). For good cause a court may issue a protective order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense.

other witnesses, and without appropriate limitations these officials will spend an inordinate amount of time tending to pending litigation. <u>Kessler</u>, 985 F.2d at 512. The rule is also designed to protect officials from unwarranted inquiries into their decision-making process. <u>Morgan</u>, 313 U.S. at 422. <u>See also</u> <u>Franklin Sav. Ass'n</u>, 922 F.2d at 211 (citations omitted)(absent extraordinary circumstances, a government decision maker should not be compelled to testify about her mental processes in reaching a decision, including the manner and extent of her study of the record and her consultation with subordinates).

Sensient argues the <u>Morgan</u> doctrine does not apply to former employees. Although the Third Circuit has not addressed the issue, the Court rejects Sensient's argument and finds that <u>Morgan</u> applies to former high-ranking government employees. <u>See</u> <u>United States v.</u> <u>Wal-Mart Stores</u>, C.A. No. 01-152, 2002 WL 562301 (D. Md. March 29, 2002). It is true that the deposition of a former official may not interfere with her governmental duties to the same extent as if she were a current employee. However, the possibility that a current employee may be deposed after she leaves government service is likely to impact how the employee performs her duties. It is not far fetched to conclude that a government employee's work performance may be "chilled" if she may be deposed on her thought process after she leaves government service. Thus, the rationale behind the <u>Morgan</u> doctrine applies to former employees.

7

Furthermore, the goal of limiting inquiries into a decision maker's thought process is as equally applicable to a former employee as it is to a current employee.

There are other important reasons justifying the application of the Morgan doctrine to former officials.  The Court agrees with Wal-Mart that unchecked depositions of former high ranking government employees would be unduly burdensome on them and likely discourage individuals from public service positions.  Id. at *3 ("Subjecting former officials decision-making processes to judicial scrutiny and the possibility of continued participation in lawsuits years after leaving public office would serve as a significant deterrent to qualified candidates for public service").  Accord Energy Capital Corp. v. United States, 60 Fed. Cl. 315, 318 (Fed. Cl. 2004)(citing cases that "have persuasively argued for the application of the Morgan doctrine to former high-ranking government officials").  See also Arnold Agency v. West Virginia Lottery Comm'n, 206 W.Va. 583, 599, 526 S.E.2d 814, 830 (1999)("Former high-ranking government administrators, whose past official conduct my potentially implicate them in a significant number of related legal actions, have a legitimate interest in avoiding unnecessary entanglements in civil litigation").  No significant public policy or interest is served by permitted unchecked depositions of former high-ranking government employees. On the other hand, as discussed, the public interest is furthered

8

by applying a heightened scrutiny to these depositions.  For these reasons, the Court finds that the Morgan doctrine applies to former high-ranking government employees.

The cases Sensient relies upon do not support its position that depositions of former high-ranking government officials should be treated the same as other depositions.  In Toussie v. County of Suffolk, C.A. No. 05-1814, 2006 WL 1982687, at *2 (E.D.N.Y. July 13, 2006), the court permitted the deposition of an official to proceed but only after the movant demonstrated that the deponent was "personally involved" in the events at issue in the case. (Also noting that "depositions of former government officials should be lightly granted." Id.)  In Sanstrom v. Rosa, C.A. No. 93-7146, 1996 WL 469589, at *5 (S.D.N.Y. Aug. 16, 1996)(citing American Broadcasting Companies v. United States Information Agency, 599 F. Supp. 765, 769 (D.D.C. 1984)), the court determined that former Governor Cuomo possessed "particular information necessary to the development ... of the [plaintiff's] case, which cannot be reasonably obtained by another discovery mechanism."

Having found that the Morgan doctrine applies to former employees, the Court turns to Sensient's argument that Whitman was not a high-ranking government employee.[7]  This argument is

_____

[7]Whitman was the EPA Administrator from January 31, 2001-June 27, 2003. See http://www.epa.gov/history/admin/agency/index.htm (last visited January 27, 2009).

9

meritless.   As the head of a large executive Agency Whitman's
responsibilities were undoubtedly enormous.   Plaintiff has pointed
out that the head of the EPA has been afforded cabinet level rank,
and shares this rank with the Vice-President.   See Reply Brief at
3, Doc. No. 114.   Other cases apply Morgan to individuals whose
rank does not surpass the Administrator of the EPA.   See, e.g.,
Franklin Sav. Ass'n, supra, (Director of the Office of Thrift
Savings); Central Valley Chrysler Valley Jeep, Inc. v. Witherspoon,
CV-F-04-6663, 2006 WL 2619962 (E.D. Cal. Aug. 25, 2006)(Executive
Officer of the California Air Resources Board).

Sensient primarily relies upon In re Kessler, 100 F.3d 1015
(D.C. Cir. 1997) to support its argument that Whitman was not a
high ranking government employee.   In its zeal to support its
argument Sensient mischaracterizes the Kessler decision.   In
Kessler, the court addressed the issue of whether the FDA
Commissioner could appeal the lower court's order permitting his
deposition before he was found in contempt of court.   The court did
not address whether the FDA Commissioner was a high-ranking
government official subject to the protections in Morgan.   Sensient
omitted the citation to a crucial passage in Kessler that makes it
evident that the issue before this Court was not addressed:

> The primary difficulty in accepting the government's
> argument is that it has no principled stopping point. If
> the Commissioner of Food and Drug is privileged to appeal
> a federal district judge's discovery order without being
> held in contempt, who in the executive branch is not?
> And it certainly cannot be-the government does not even

suggest the proposition-that *all* elective branch officials fall into that category.

*Kessler*, 100 F.3d at 1018 (emphasis supplied). Further, after the court denied Kessler's petition for writ of mandamus it specifically stated, "we, of course, express no view on the merits of the discovery order, including Dr. Kessler's status under *Simplex*, *see* 766 F.2d at 586 [e.g., the *Morgan* doctrine]." *Id.*[8]

Given the Court's finding that the *Morgan* doctrine is applicable to Whitman's deposition, the Court has no hesitation granting plaintiff's motion to quash Whitman's subpoena and to bar her deposition. Extraordinary circumstances sufficient to depose a high-ranking government official exist when the official has "direct personal factual information pertaining to material issues in an action," and "the information to be gained is not available through any other sources." *Bogan*, 489 F.3d at 423. There are no extraordinary circumstances that warrant Whitman's deposition and she has no unique personal knowledge of any relevant issue in the case. This is evidenced by the fact that despite Sensient's receipt of tens of thousands of documents from the plaintiff, Sensient has not cited a single document authored by or sent to Whitman regarding the Site. Plaintiff also points out that none of the EPA representatives recently deposed testified that Whitman has

---

[8]In *Simplex Time Recorder Company v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1995), the Court affirmed the ALJ's decision which denied the petitioner's request to call as trial witnesses "top Department of Labor officials."

any personal knowledge regarding the Site.[9]  Brief at 2, Doc. No.
114.  In addition, Whitman left the EPA almost three years before
Rosoff's February 7, 2006 e-mail that is at the heart of Sensient's
discovey requests.

Sensient's basis for deposing Whitman is based on guesswork
and speculation.  Sensient argues, "[g]iven Ms. Kenny's direct
involvement with the remediation efforts at the Site and her close
relationship with Ms. Whitman, it is inevitable that Ms. Whitman
was also acutely aware of the remediation efforts taking place."
(Brief at 7 [Doc. No. 107].)  No facts support Sensient's
"inevitability" argument. The Morgan doctrine would be eviscerated
if Sensient could take the deposition of the Administrator of the
EPA based on its speculation that she "was acutely aware of the
remediation" at its property.

Sensient argues that Whitman has knowledge of Kenny's interest
in redeveloping Camden because Whitman was governor when Kenny was
the Commissioner of the New Jersey Department of Community Affairs
and she was the EPA Administrator when Kenny was the Administrator
of EPA Region 2.  (Id. at 2.)  Sensient also "understands" that
Kenny "currently works with or for" Whitman at the Whitman Strategy

_____

[9]The deponents were former Chief of Staff for EPA Region 2
Anthony Cancro on December 11, 2008; former Branch Chief of the
Removal Assessment and Enforcement Section Richard C. Salkie on
December 12, 2008; current EPA On-Scene Coordinator Joseph
Cosentino on December 15, 2008; and current Deputy Director of
the Emergency and Remedial Response Division John LaPadula on
December 16, 2008.

Group.   Sensient's argument that this establishes extraordinary circumstances to take Whitman's deposition is rejected.   If the Court accepts Sensient's argument then Sensient could depose almost anyone who allegedly worked with or knew Kenny well.   This circumstance is clearly unacceptable. Even if the Court assumes that Kenny's interest in redeveloping Camden is relevant, Whitman most assuredly is not the only person who could testify on this subject.  A high level government official should only be deposed when his or her relevant knowledge cannot be obtained by other less obtrusive means.   In addition, Sensient has not established that Whitman has any relevant personal knowledge regarding the issues in dispute.  Under these circumstances no extraordinary circumstances justify Whitman's deposition and her motion will be granted.

Jane M. Kenny

Kenny first argues that even if the Court permits her deposition, she should not be deposed until after the Court determines whether she will be added as a third-party defendant. The Court agrees with Kenny.   Pursuant to Fed. R. Civ. P. 26(c)(1)(B), the Court may issue a protective order specifying the time and order of discovery. In order to protect Kenny from annoyance, oppression or undue burden and expense, Kenny should know the claims asserted against her before she is deposed. Sensient is asserting serious allegations against Kenny.   For example, Sensient alleges Kenny knowingly certified false and

13

misleading statements to further an improper and unauthorized scheme. (See Proposed Third Party Complaint at ¶31 [Doc. No. 91-6].)  Sensient also alleges Kenny knowingly created a false administrative record to "cover-up the true nature" of the EPA's unauthorized activities at the site.  (Id. at ¶33.)  In addition, Sensient contends Kenny "knowingly and willfully created an increased risk to the public health" and "mischaracterized" the EPA's actions at the Site.  (Id. at ¶¶34, 36.) It is self-evident that Kenny should know whether she will be a named party in the case before she is deposed.  The nature of Sensient's allegations will impact her deposition preparation and perhaps even her choice of counsel.  The fact that Kenny's immediate deposition is not justified is buttressed by the fact that no emergent circumstances exist that necessitate that she be deposed before her immunity status is resolved.[10]

The Court also finds that as an Administrator of EPA Region 2, Kenny was a former high ranking government official entitled to the protection of the Morgan doctrine.  Region 2 consists of New Jersey, New York, Puerto Rico, the U.S. Virgin Islands and seven federally-recognized Indian Nations.  See http://www.epa.gov/region02/aboutr2.htm (last visited January 27,

---

[10]After Sensient's motion to amend is decided, the Court will schedule a conference with all parties to discuss relevant discovery issues.  If in the future the Court grants Sensient leave to join Kenny, she will have fair notice if her deposition will be taken and when it will be scheduled.

2009). The Region contains more than 31 million residents. Id. As the Administrator of Region 2 Kenny answered directly to the EPA Administrator who was answerable to the President of the United States. (See J. Kenny Affidavit at ¶3.)  Kenny was only one of ten Regional Administrators in the country.  (Id.)  She also had primary responsibility for the planning, programming, implementation, control and direction of the technical, legal and administrative aspects of the activities in Region 2.  (Id.)  When Kenny was the Regional Administrator there were more than one thousand civil servants employed in the Region who were responsible for day to day operations.  (Id. at ¶4.)  The Court finds that this background qualifies Kenny as a former high ranking government official. See Simplex, 766 F.2d at 586-87 (recognizing that OSHA's Regional Administrator and Area Director are high ranking government officials).

   The crux of Kenny's argument is that Sensient has not established it is entitled to her deposition under the Morgan doctrine.[11]   Sensient requests Kenny's deposition to support its

_____

   [11]Although the burden to justify a protective order is ordinarily on the moving party, the Court agrees with Kenny that Sensient has the burden of establishing the necessity for Kenny's deposition, rather than placing the burden on her to show that the deposition is not appropriate. See Buono, supra, 249 F.R.D. at 470 n. 2("The Court must, therefore, ... determine if the plaintiff has met its burden to obtain the deposition"); Wal-mart Stores, 2002 WL 562301, at *3("the party seeking to depose a former high-ranking official must still demonstrate the existence of extraordinary circumstances or the personal involvement of the former official in a material way"); Coleman v. Schwarzenegger,

contention that the EPA conducted a redevelopment project rather than a removal action.  The primary evidence of Kenny's direct involvement at the Site involves her September 30, 2003 letter. (See S. Schlossberg Certification at Exhibit C [Doc. No. 108-2].) On August 26, 2003, then Chief Operating Officer, Melvin Primas, wrote Kenny and advised her of Camden's redevelopment efforts in East Camden.  Primas proposed that Camden demolish the buildings at the Site and the EPA continue its cleanup and remediate any contamination below the buildings.  Kenny wrote back on September 30, 2003 and advised Primas that the EPA had no plans to address known buried hazardous waste beneath the buildings "at this time." Kenny explained that the buried waste was not an immediate threat because it was not accessible.  However, Kenny advised Primas that if the City demolished the buildings the buried waste would then be exposed. Kenny then wrote that if this occurred, the EPA would investigate the Site and perform appropriate cleanup activities to mitigate risks to the public health.  Kenny advised Primas that she looked "forward to working with the City of Camden to complete the revitalization efforts that we both have been working toward." According to Sensient, Kenny's letter demonstrates that she "collaborated with the City of Camden to create an alleged health

_____

C.A. No. S-90-0520, 2008 WL 4300437, at *4 (E.D. Cal. Sept. 15, 2008)(denying depositions of Governor and his Chief of Staff and stating "plaintiffs have not carried their burden of establishing that no other person possesses the information in question, ... or that such information may not be obtained by other means").

hazard, and then claimed the authority to address the alleged hazard." (Brief at 9 [Doc. No. 109].)

Sensient also argues Kenny's involvement at the Site is evidenced by the fact that she "personally approved three requests to increase EPA spending at the General Color Company Site beyond CERCLA's $2 million limit and extend the so-called removal actions beyond the statutorily designated 12-month period." (Id. at 8-9.) She also submitted a request to increase the spending ceiling at the Site to $11.9 million. (Id. at 9.)

In Buono, supra, the court set forth a summary of the relevant factors to consider when deciding if the deposition of a high ranking government official should proceed: (1) whether the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that could not be reasonably obtained from other sources; (3) the testimony is essential to that party's case; (4) the deposition would not significantly interfere with the ability of the official to perform his government duties, and; (5) the evidence sought is not available through any alternative sources or less burdensome means. These factors provide an appropriate framework to decide if Kenny should be deposed.

At this time, Sensient has not established that Kenny's deposition is necessary to obtain relevant information that is not available from another source. Bald assertions of bad faith are

17

insufficient to require agency officials to submit to depositions. Schaghticoke Tribal Nation v. Norton, No. 3:06cv81 (PCD), 2006 WL 3231419, at *4 (D. Conn. Nov. 3, 2006) (citing Friends of the Shawangunks, Inc. v. Watt, 97 F.R.D. 663, 667 (N.D.N.Y. 1983)). Sensient's focus is on the reasons why the Site was remediated, why it took so long to remediate the Site, why it was not notified earlier of its potential liability, and other "nuts and bolts" issues. Sensient should first attempt to obtain this information from "rank and file" personnel, not Kenny. This case is at a relatively early stage of discovery. Sensient has not established that Kenny is the only person who has the information it requests. In Coleman, supra, at *4, the court denied the plaintiff's request to take the depositions of Governor Schwarzenegger and his Chief of Staff, and noted:

> [i]t is not sufficient simply to make allegations to such effect in a conclusory manner; rather a party seeking to depose a high-ranking official must make a showing as to what efforts have been made to determine whether the information is otherwise available and the extent to which their efforts failed to uncover such information.

The same reasoning applies to this case. Kenny's deposition should be a last resort, not a first resort.

As to the second Buono factor, Sensient has not established that Kenny is the only reasonably available source for the requested information. At a minimum this proffer must await the results of additional discovery Sensient is bound to take. The fact that Kenny may have signed an official appropriation request

18

is not in and of itself a sufficient basis to take her deposition. _Buono_, 249 F.R.D. at 470 n. 2 (citation omitted)(an official's <u>pro forma</u> approval of a matter without showing deliberations about it, will not justify ordering a deposition of the official). <u>See also</u> <u>Coleman</u>, <u>supra</u>, at *4 ("When the Governor acts within the parameters of his official duties by, for example, issuing orders ..., it is likely that other lower-ranking members of his office or administration would have relevant information about his actions").

The third <u>Buono</u> factor to consider is whether Kenny's testimony is essential to Sensient's case.  Based on the present record the Court concludes Kenny's testimony is not essential.  The present focus of Sensient's defense is that the EPA's actions were not consistent with CERCLA and the applicable regulatory requirements. Sensient can pursue this defense without Kenny's immediate deposition.  As to the fourth <u>Buono</u> factor, it is obvious that since Kenny is not a current government employee her deposition will not interfere with any present government duties. However, for the reasons already discussed, it is important to apply the <u>Morgan</u> doctrine to former employees to ensure that current employees are not chilled in their duties by the thought that their depositions may indiscriminately be taken after they leave government service.  The last <u>Buono</u> factor examines whether the requested information is available through alternative or less burdensome means.  For the reasons already discussed, Sensient has

19

not demonstrated that Kenny is the only reasonably available source for the requested discovery.  Albeit, the Court recognizes that the case is still in the relatively early stage of discovery.

Based on the foregoing analysis, the Court grants Kenny's motion to quash her subpoena and to bar her deposition.  However, at this time the Court is not ruling that Kenny's deposition may never be taken.  In Whitman's case it is clear that absent an unforeseeable development her deposition will not be permitted. However, unlike Whitman, Kenny had some direct involvement with the Site.  The Court is not foreclosing the prospect that future developments may justify Kenny's deposition.  The Court reiterates that it is not aware of any exigent circumstances that justify Kenny's immediate deposition.[12]

David Rosoff

Rosoff has been an EPA employee for eighteen years and is the EPA On-Scene Coordinator ("OSC") in the Removal Action Branch of the Emergency and Remedial Response Division for the Site.  He has been involved with the Site since 1998.  (B. Van de Weghe

---

[12]The Court rejects Kenny's argument that her deposition should be barred because Sensient cannot take discovery in this case that it could not obtain in the Pleasant Gardens litigation. If Kenny's deposition is relevant to the issues in this case, and if it is permitted under the applicable federal case law, it is of no moment to this Court that the deposition may or may not be used in the Pleasant Gardens litigation.  Similarly, it is of no moment that the Pleasant Gardens case may soon go to trial.  The Court is managing this case, not the Pleasant Gardens litigation.

Certification at ¶2 [Doc. NO. 94-3][13]; Rosoff Brief at 4 [Doc. No. 94-21].)  Rosoff clearly has relevant personal knowledge regarding the Site.  Rosoff does not argue that he is a high ranking government employee.  Instead, Rosoff argues (1) he should be given time to prepare with his recently retained counsel, (2) his deposition should be stayed until his immunity defense is resolved, (3) he should not be deposed until Sensient's motion to amend is decided, and (4) Sensient should not be permitted to obtain discovery in this action that it could not obtain in the Pleasant Gardens litigation.  Most of Rosoff's arguments have already been addressed.  After this Court decides Sensient's motion to amend it will schedule a status conference.  If Rosoff is deposed, he will be given fair notice and an adequate opportunity to prepare for his testimony.  The Court reserves decision on whether Rosoff's deposition will be stayed pending the final resolution of his immunity defense. Magistrate Judges have broad discretion to manage discovery, including the sequencing of depositions.  See Gerald Chamales Copr. V. Oki Data Americas Inc., 247 F.R.D. 453, 454 (D.N.J. 2007).  The Court recognizes that the Supreme court has stated that "[u]ntil ... the threshold immunity question is resolved, discovery should not be allowed." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Further, the Third Circuit has

---

[13]The OSC is designated by the EPA to coordinate and direct removal actions at the Site.  40 C.F.R. §300.5.

recognized that discovery should ordinarily not proceed until the immunity question is resolved.  <u>Thomas v. Independence Township</u>, 463 F.3d 285, 291 (3d Cir. 2006).  However, the Court is not foreclosing the possibility that future developments may demonstrate that Rosoff's deposition is imperative even before it is finally determined whether he will be joined.  Thus, at this time the Court is not foreclosing the possibility that Rosoff may be deposed on relevant issues even before his immunity defense is finally resolved.  This scheduling issue will be addressed at a future date.  Lastly, the Court has already ruled that the fact that Sensient may use discovery in this case in the Pleasant Gardens litigation is not determinative on any issue before this Court.

<u>Conclusion</u>

Based upon the foregoing, and for all the reasons stated in the Court's Opinion, it is hereby ORDERED this 28th day of January, 2009, that Whitman's Motion to Quash Subpoena and to Bar her Deposition [Doc. No. 85] is GRANTED; and

IT IS FURTHER ORDERED that Kenny's Motion to Quash Subpoena and to Bar her Deposition [Doc. No. 91] is GRANTED in part and DENIED in part.  Sensient's present subpoena is quashed without prejudice to its right to re-new its request for Kenny's deposition based on relevant discovery developments.  If Sensient intends to re-new its request it shall follow the procedure set forth in L.

Civ. R. 37.1(a)(1) and first seek leave of court to file a motion on the issue; and

IT IS FURTHER ORDERED that Rosoff's Motion for Protective Order [Doc. No. 94] is GRANTED in part and DENIED in part. Sensient's present deposition notice (and subpoena) directed to Rosoff is quashed, without prejudice to its right to re-new its request for Rosoff's deposition in the future.  If Sensient intends to re-new its request, it shall follow the procedure set forth in L. Civ. R. 37.1(a)(1) and first seek leave of court to file a motion on the issue.[14]

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

---

[14]This Opinion and Order only addresses the issues presented in the motions discussed herein.  The Court expresses no opinion on the propriety of Sensient's likely deposition questions and whether particular testimony may or may not be privileged. Those issues will be addressed when and if they are presented on a full record.