[Doc. No. 66]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Civil No. 07-1275 (JHR)** |
| **SENSIENT COLORS, INC.,** | |
| **Defendant.** | |

## OPINION AND ORDER

This matter is before the Court on Defendant Sensient Colors, Inc.'s "Motion for Leave to Amend its Responsive Pleading." Sensient seeks to assert a counterclaim against the United States and the Administrators of the EPA and EPA Region 2, to assert third party "Bivens-type" claims against an EPA On-Scene Coordinator and the former Administrator of Region 2, and to add affirmative defenses. Plaintiff opposes Sensient's motion as futile. As will be discussed, Sensient's motion is denied because the court does not have jurisdiction over its proposed counterclaim, Sensient's third party complaint is procedurally and substantively improper, and Sensient's proposed new affirmative defenses are invalid.

## I.   BACKGROUND

In March 2007, Plaintiff, on behalf of the EPA, filed this cost recovery action against Sensient pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675 (2000). Plaintiff alleges Sensient's predecessor manufactured inorganic and organic pigments and dyes at the General Color Site

("Site") in the City of Camden, New Jersey.[1]  Plaintiff alleges that Sensient is responsible for the contamination at the Site and is liable to reimburse it for costs in excess of $16 million that the EPA spent in its removal action responding to the release or threatened release of hazardous substances at the Site.

Part of Sensient's defense focuses on its objection to the EPA's characterization of the work at the Site as a "removal action."  Sensient points out that the EPA's actions at the Site spanned eight years and cost $16 million.  Sensient argues the EPA violated CERLCA by conducting a removal action that cost more than $2 million and lasted more than 12 months.  See 42 U.S.C. § 9604(c)(1).  Sensient also contends that the EPA deliberately mischaracterized its response activity at the Site as an emergency removal action in order to obtain funding to conduct a community redevelopment at Sensient's expense.

Sensient filed this motion after discovering what it characterizes as a "smoking gun" email. In a February 2006 email exchange between David Rosoff, the EPA On-Site Coordinator, and his EPA colleague, Rosoff allegedly admits that he conducted a remedial action at the Site disguised as a removal action.  In relevant part, the email states:

> It was a remedial site – I just completed with removal funds over a six year period (a very fast RI/FS-RD/RA but a very slow removal).  The secret is to spread it out and they don't realize how much you're spending . . . Preremedial didnt [sic] want to touch it so we did it ourselves.  Normally, I could have never done this with Dick as a boss but with the support of Jane and Anthony he couldnt [sic] say no.  There is no real 2 million dollar limit so I have learned.

(Def. Br. Cert. Ex. S [Doc. No. 66]).  According to Sensient, this email confirms its position that the EPA falsely classified its response action at the Site as an emergency removal action in

---

[1] The background of this case has been discussed in detail in a previous decision.  See United States v. Sensient Colors, Inc., 580 F. Supp. 2d 369 (D.N.J. 2008).

numerous documents, including the administrative record. (Def. Br. at 6.)  Sensient argues the
EPA relied on the falsified documents and made materially false statements in order to exceed
the statutory spending and time limits on removal actions. (Id. at 5-6.)  Sensient alleges that Jane
Kenny, the Administrator for EPA Region 2, knowingly signed falsified documents authorizing
the EPA to exceed the statutory spending and time limits of a removal action.  (Id. at 9.)

Sensient also alleges that Kenny improperly invited the City of Camden to demolish
buildings on the Site, which created a threat to the public health and environment.  (Id. at 8.)
Sensient cites an August 2003 letter that Melvin Primas, Camden City's Chief Operating Officer,
wrote to Kenny requesting the EPA's help to develop the Site for residential use.  (Id. at 7.)
Kenny responded that the EPA had no plans to address the hazardous waste buried beneath the
buildings on the Site because there was no immediate threat to the public health or environment.
(Id. at 8.)  However, Kenny explained that if Camden demolished the buildings, then the buried
waste would be exposed and the EPA would be willing to investigate the contamination and
perform the appropriate clean up activities.  (Id.)

Based on these allegations, Sensient seeks to amend its responsive pleading to assert a
counterclaim against the Government and named officials, to assert third party Bivens claims,
and to add additional affirmative defenses.  Sensient seeks, inter alia:

1. An order declaring the EPA and its officials exceeded and violated their
   statutory authority and failed to perform their nondiscretionary duties under
   CERCLA;

2. Preliminary and permanent orders enjoining the EPA and its agents from
   authorizing, prosecuting, or continuing to prosecute any action against
   Sensient for costs incurred by the United States in connection with the Site;

3. An award of damages to Sensient, against the EPA, incurred as a result of the

EPA's violations of its statutory authority and failing to perform its nondiscretionary duties under CERCLA;

4. An order declaring Third Party Defendants, Kenny, Rosoff, and certain unknown EPA officers, acting in their official capacities as government officials, knowingly violated Sensient's Due Process rights;

5. An order of judgment in favor of Sensient and against Third Party Defendants personally in an amount sufficient to compensate Sensient for monetary damages sustained as a result of Third Party Defendants violating Sensient's Due Process rights;

6. An award of costs and disbursements, including attorney and expert fees;

7. Any other relief deemed by the Court to be just and equitable under the circumstances; and

8. An order of judgment in its favor and denying all relief sought by the United States, a dismissal of the United States' Complaint against Sensient with prejudice, and for such other and further relief as the Court deems proper.

(Proposed Amended Answer, at 30-32 [Doc. No 66-3]).

## II. <u>DISCUSSION</u>

### A. <u>Standard of Review</u>

Pursuant to Fed. R. Civ. P. 15(a), leave to amend pleadings "shall be freely given when justice so requires." Leave shall be freely given in the absence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies in previous amendments, undue prejudice or futility of the amendment. <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000). "[A]bsent substantial or undue prejudice, denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." <u>Long v. Wilson</u>, 393 F.3d 390, 400 (3d Cir. 2004) (quoting <u>Lundy v. Adamar of</u>

New Jersey, Inc., 34 F.3d 1173, 1196 (3d Cir. 1994)).  An amendment sought pursuant to Rule

15(a) shall be permitted unless it would be inequitable or futile.  Grayson v. Mayview State

Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

In determining the futility of an amendment, the court "applies the same standard of legal

sufficiency as applies under Rule 12(b)(6)."  Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal

Co., Inc., 380 F. Supp. 2d 457, 462 (D.N.J. 2005) (quoting In re Burlington Coat Factory Sec.

Litig., 114 F.3d 1410, 1434 (3d. Cir. 1997)); Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).

The court must "accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint,

the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d

Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002));

Brown v. Philip Morris, Inc., 250 F.3d 789, 796 (3d Cir. 2001). The factual allegations must be

enough, when taken as true, to state a claim for relief that is plausible on its face.  Bell Atlantic

Corp. v. Twombly, — U.S. —, 127 S.Ct. 1955, 1974 (2007).  A proposed claim is also futile if

the court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  A federal court

must dismiss an action if, at any time, it determines that it does not have subject matter

jurisdiction to grant a party's requested relief.  Arbaugh v. Y & H Corp., 546 U.S. 500, 514

(2006).  Thus, it is futile for a court to grant a motion to amend a  pleading if, after filing, the

court must dismiss the amended pleading for lack of jurisdiction.  In the context of this motion

the only issue the Court will address is whether Sensient's proposed amendments are futile.[2]

---

[2] The Government objects to Sensient's motion on the ground it is untimely. As discussed
at oral argument, the Court rejects this argument.  The mere fact that Sensient's motion could
have been filed earlier is not determinative on whether its proposed amendment should be

### B.  Sensient's Counterclaim

The United States, as sovereign, is immune from suit unless it has waived its immunity and consents to be sued.  See United States v. Testan, 424 U.S. 392, 399 (1976); Army & Air Force Exch. Svc. v. Sheehan, 456 U.S. 728, 734 (1982).  In this context, however, it is imperative to acknowledge that the waiver of the Federal Government's sovereign immunity must be "unequivocally expressed in statutory text" and "will be strictly construed, in terms of its scope, in favor of the sovereign." Gomez-Perez v. Potter, – US – , 128 S.Ct. 1931, 1942-43 (2008) (cititng Lane v. Peña, 518 U.S. 187, 192 (1996)); United States v. Nordic Village Inc., 503 U.S. 30, 34 (1992) (finding that a waiver of sovereign immunity must not be enlarged beyond what the language of the waiver requires). Sensient asserts three bases for jurisdiction over its counterclaim, all of which the Court rejects:  (1) CERCLA's citizen suit provision, 42 U.S.C. § 9659(a)(2), (2) the Administrative Procedure Act ("APA") 5 U.S.C. § 701 et seq. and (3) the court's inherent equitable powers.

### 1.  CERCLA Jurisdiction

The United States has made a limited waiver of its immunity to be sued under CERCLA pursuant to 42 U.S.C. § 9659(a)(2), which authorizes citizen suits against the United States and its agencies. The grant of jurisdiction provides in relevant part that "any person may commence a

---

granted.  See Adams v. Gould, Inc., 739 F.2d 858, 869 (3d Cir. 1984) (the mere passage of time, without more, does not require that a motion to amend be denied); Deakyne v. Commissioners of Lewes, 416 F.2d 290, 300 n.19 (3d Cir. 1969) (delay alone is insufficient ground to deny an amendment).  Leave to amend on the ground of undue delay should only occur where the delay causes prejudice to the non-moving party.  Cincerella v. Egg Harbor Tp. Police Dep't, C.A. No. 06-1183 (RBK), 2007 WL 2682965, at *2 (D.N.J. Sept. 6, 2007). The Court finds that the Government is not prejudiced by the timing of Sensient's motion.

civil action on his own behalf . . . (2) against the President or any other officer of the United States (including the Administrator of the Environmental Protection Agency . . .) where there is alleged a failure . . . to perform any act or duty under this chapter, . . . which is not discretionary with the President or such other officer."  A district court's jurisdiction over a citizen suit "depends on the existence of a duty alleged to be nondiscretionary with the Administrator; if no nondiscretionary duty exists, then neither can a citizens' suit." Fairview Township v. EPA, 773 F.2d 517, 525 (3d Cir. 1985).  To trigger the citizen suit provision, "a plaintiff must allege the existence of a nondiscretionary duty under CERCLA, and she must also allege that the President or federal officer has failed to comply with that duty." State of South Carolina ex rel. Medlock v. Reilly, C.A. No. 91-3090, 1992 WL 409971, at *1-2  (D.D.C. May 7, 1992).   Thus, to state a claim for relief under CERCLA's citizen suit provision Sensient must allege (1) the existence of a nondiscretionary duty, (2) enacted pursuant to CERCLA and (3) that the Administrator failed to comply with the duty.  The Court must strictly construe the waiver of immunity and not extend it "beyond what the language requires." Nordic Village, 503 U.S. at 34.

To support its counterclaim under §9659(a)(2), Sensient alleges the EPA failed to perform five (5) nondiscretionary duties under CERCLA:  (1) a duty under 42 U.S.C. § 9604(c)(1)(A)-(C) to limit the cost of its removal action to $2 million or 12 months in duration; (2) a duty under 40 C.F.R. § 300.800 to create an administrative record that accurately reflects the basis for its actions; (3) a duty under the False Statements Act, 18 U.S.C. § 1001, to create an accurate and truthful administrative record; (4) a duty not to knowingly and willfully create an increased risk to the public health; and (5) a duty to notify Sensient of its removal action and determine whether Sensient could perform the necessary action in accordance with its constitutional due process

rights.  For the reasons discussed infra, the Court finds it lacks jurisdiction under CERCLA over

the proposed counterclaim because Sensient has not established the existence of a

nondiscretionary duty, it has not demonstrated that the EPA breached an alleged nondiscretionary

duty, and it has not established that the alleged nondiscretionary duties arose under CERCLA.

Sensient argues that the EPA violated its nondiscretionary duty to limit removal actions to 12

months or $2 million.  The CERCLA provision allegedly creating this duty provides:

> [u]nless (A) the President finds that (I) continued response actions are immediately
> required to prevent, limit, or mitigate an emergency, (ii) there is an immediate risk to
> public health or welfare or the environment, and (iii) such assistance will not otherwise
> be provided on a timely basis, or (B) the President has determined the appropriate
> remedial actions pursuant to paragraph (2) of this subsection and the State or States in
> which the source of the release is located have complied with the requirements of
> paragraph (3) of this subsection, or (C) continued response action is otherwise appropriate
> and consistent with the remedial action to be taken obligations from the Fund, other than
> those authorized by subsection (b) of this section, shall not continue after $2,000,000 has
> been obligated for response actions or 12 months has elapsed from the date of initial
> response to a release or threatened release of hazardous substances.

42 U.S.C. § 9604(c)(1)(A)-(C).  In other words, CERCLA limits an EPA response action to $2

million in costs and/or 12 months in duration unless the EPA finds that one of the enumerated

exceptions is met.  Thus, to successfully claim that the Government violated a nondiscretionary

duty Sensient must allege that the EPA exceeded the statutory limitations and that the EPA did

not find one of the enumerated exceptions applied.  While Sensient alleges the EPA exceeded the

statutory limitations, it does not allege that the EPA failed to find that one of the statutory

exceptions applied.  In fact, Sensient's proposed counterclaim pleads the opposite because it

contends that proposed defendants Rosoff and Kenny "prepared necessary documents to

authorize EPA to exceed the $2,000,000 or 12 month duration limits on the removal activities at

the Site." (Proposed Amended Counterclaim at ¶31). Because Sensient does not allege that the

EPA failed to make a finding required under CERCLA, it does not state a claim for relief under CERCLA's citizen suit provision.

Sensient argues the court has jurisdiction over its counterclaim because the EPA's determination that an exception applied was based on false and misleading statements. This argument must be rejected because a citizen suit cannot be used to challenge the manner, substance or content of a nondiscretionary agency action. See Sun Enter., Ltd. v. Train, 532 F.2d 280 (2d Cir. 1976) (finding no jurisdiction under citizen suit provision where plaintiff challenged the manner in which EPA performed nondiscretionary duty); Scott v. City of Hammond, 741 F.2d 992 (7th Cir. 1984) (finding plaintiffs could not use citizen suit to challenge the content of EPA's determinations). While a court may, under a statute's citizen suit provision, "hold a defendant responsible for nonfeasance" of a nondiscretionary duty, the citizen suit provision "does not allow for a judgment of malfeasance, such as a finding that a defendant made the wrong decision." Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs ("U.S. Army Corps"), 404 F. Supp. 2d 1015, 1021 (M.D. Tenn. 2005) (holding that while an agency may have a mandatory duty to make a determination, the agency has discretion over such determination's content); see also Cascade Conservation League v. M.A. Segale, Inc., 921 F. Supp. 692, 698 (W.D. Wash.1996) (finding no jurisdiction under citizen suit provision where plaintiff claimed the government performed a nondiscretionary duty erroneously). But see Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 316 (4th Cir. 1988) (finding that district court had jurisdiction under citizen suit provision to hear claim challenging the content of the government agency's

determination).[3]

In U.S. Army Corps, supra, environmental groups brought a citizen suit against the government seeking a declaratory judgment that wetlands adjacent to an airport were "waters of the United States" and thus subject to the jurisdiction of the Army Corps of Engineers ("Corps") under the CWA.  404 F. Supp. 2d at 1021.  The plaintiffs claimed that the government had a mandatory duty to "make reasoned wetlands determinations" and that the government violated this duty when the Corps initially determined that the wetlands were not jurisdictional under the CWA and when the EPA failed to override this determination.  Id.  The court in U.S. Army Corps found that "while the Corps may have a mandatory duty to make some sort of jurisdictional determination, the Corps has discretion over such determination's content" and dismissed the claim for lack of jurisdiction.  Id.  Like the plaintiffs in U.S. Army Corps, Sensient's claim is not that the EPA failed to perform a mandatory duty, but instead the claim challenges the manner in which the EPA performed its duty.  This is not sufficient to establish jurisdiction over Sensient's proposed counterclaim pursuant to §9659(a)(2).

Similarly, in Cascade, supra, plaintiffs sought to bring a citizen suit pursuant to a CWA provision that prohibited the discharge of dredged material onto designated wetlands without a

---

[3]Although the cited cases involve the citizen suit provision of the Clean Water Act ("CWA"), they are still persuasive authority.  The language of CWA's citizen suit provision is almost identical to CERCLA's citizen suit provision. Compare 33 U.S.C. § 1365(a)(2) with 42 U.S.C. § 9659(a)(2); see also Burnette v. Carothers, 192 F.3d 52, 57 (2d Cir. 1999) ("[t]he CWA . . . and CERCLA contain substantially identical provisions permitting citizens to sue as private attorneys general").  The citizen suit provision of CERCLA was modeled after the corresponding provisions of the Clean Air, Clean Water and Solid Waste Disposal Acts.  Conservation Law Found. of New England, Inc. v. Browner,  840 F. Supp. 171, 174 (D. Mass.1993) (citing S.Rep. No. 11, 99th Cong., 1st Sess. 62 (1985)). Thus, CWA cases are instructive to the Court's analysis of CERCLA's citizen suit provision.

government permit, unless one of the enumerated statutory exceptions applied.  See 33 U.S.C. §1344(f).  The Cascade plaintiffs argued that the Corps erroneously found that one of the statutory exceptions applied and that the EPA had a nondiscretionary duty to overturn the Corps' decision.  921 F. Supp. at 695.  The court in Cascade disagreed with plaintiff's characterization and noted that the CWA's citizen suit provision only provides federal jurisdiction when the government fails to perform a nondiscretionary duty, not when a duty is performed erroneously. Id. at 698 n. 8.  Sensient is making this precise claim in this case.  Like the duty discussed in Cascade, the EPA's duty to limit the cost and length of removal actions to $2 million and/or 12 months in duration is subject to certain exceptions. Once the EPA finds that an exception applies, like the EPA did here,  a party cannot challenge that determination in a citizen suit.

To support its position Sensient primarily relies upon Bennett v. Spear, 520 U.S. 154 (1997). Sensient argues, "[t]he only difference between Bennett and this case is that in Bennett the agency merely ignored or omitted the required procedures." (Def. Reply at 9.)  Sensient is wrong. In Bennett, the plaintiff brought a citizen suit pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. § 1540.  Unlike Sensient, the plaintiff in Bennett alleged that the Secretary of Interior failed to comply with a specifically required statutory procedure.  Id. at 172 (citing 16 U.S.C. § 1533(b)(2) ("[t]he Secretary shall designate critical habitat. . . on the basis of the best scientific data available and after taking into consideration the economic impact, . . . of specifying any particular area as critical habitat)).  The Court found that plaintiffs' claim was reviewable under ESA's citizen suit provision because the plaintiffs alleged that the government failed to take into consideration the economic impact of the designation. Id.  The Court held that because consideration of the economic impact was a "categorical requirement" in the statute, the breach

11

of this requirement provided jurisdiction for a citizen suit.  Id. (emphasis in original).  Here Sensient does not allege the EPA failed to comply with a "categorical requirement" in CERCLA. The mere fact that the EPA's removal action exceeded $2 million or 12 months is not in and of itself a breach of a nondiscretionary duty because these limitations may be exceeded if the EPA determines that one of the exceptions in §9604(c)(1)(A)-(C) is applicable. Because the EPA made such a finding in this case the EPA did not breach a nondiscretionary duty.  Therefore, the proposed counterclaim that the EPA  breached its duty under 42 U.S.C. § 9604(c)(1)(A)-(C) to limit removal actions to $2 million and/or 12 months is denied as futile.[4]

A second argument Sensient makes to establish citizen suit jurisdiction is that the EPA breached a nondiscretionary duty to create an administrative record that accurately reflects the basis for its actions.  There is no explicit reference in the applicable regulation that this duty exists.  See 40 C.F.R. § 300.800.  The National Contingency Plan ("NCP") provides that the EPA "shall establish an administrative record that contains the documents that form the basis for the selection of a response action" and "shall compile and maintain the administrative record in accordance with this subpart." Id.   Sensient does not assert that the EPA failed to establish an

_____

[4]Sensient does not cite a single case where a court has found jurisdiction pursuant to §9659(a)(2) of CERCLA.  In its own search of the case law, the Court identified two cases where a court found it had §9659(a)(2) jurisdiction over a claim that the government breached a nondiscretionary duty.  Neither of the cases supports Sensient's arguments. See State of New York v. Reilly, 143 F.R.D. 487 (N.D.N.Y. 1992) (finding that State of New York stated a claim under §9659(a)(2) when it sought  to compel the EPA to perform its non-discretionary duty pursuant to §9604(c)(9)  to withhold remedial funds from states until the EPA determines if the states had an adequate availability of  hazardous waste treatment facilities); City of Moses Lake v. United States, 416 F. Supp. 2d 1015, 1026 (E.D. Wash. 2005) (compelling the EPA  to make available its proposed remedial plan to city-plaintiff pursuant §9620(f), because CERCLA "specifically and plainly states" that the EPA  "shall afford to relevant State and local officials the opportunity to participate in the planning and selection of the remedial action").

administrative record, rather, Sensient alleges the EPA "knowingly compiled a false and inaccurate record."  (See Def. Reply at 12.) This allegation does not provide jurisdiction over Sensient's proposed counterclaim.  Once again, Sensient is challenging the manner in which the EPA exercised its duty (i.e., to create an administrative record) rather than the failure to perform its duty.  The Court will not enlarge the government's waiver of immunity to include claims that the administrative record was inaccurate where this is not an explicit requirement under CERCLA.  See Nordic Village, 503 U.S. at 34.   Thus, because Sensient challenges the manner in which the EPA compiled its administrative record, rather than whether a record was created, Sensient has not pled that the EPA breached a nondiscretionary duty.

The Court also rejects Sensient's argument that the court can assert jurisdiction over its counterclaim based on the breach of an "implied duty" under CERCLA.  It is well established that the United States is immune from suit except as Congress specifically provides, and this waiver must be strictly construed in favor of the United States.  Testan, 424 U.S. at 399.  These waivers must be unequivocally expressed and cannot be implied.  Id.; United States v. Skipper, 781 F. Supp. 1106, 1111 (E.D.N.C. 1991).   Sensient's "implied duty" argument is inconsistent with the foregoing bedrock principles of federal jurisdiction.  It is not surprising that Sensient does not cite a case that finds federal jurisdiction under CERCLA may be based on the breach of an implied duty.

No one can seriously dispute Sensient's self-evident argument that the United States should produce a complete and accurate administrative record, that it should not mis-characterize the nature of its work, that it should be truthful and accurate in all respects, etc.  Nonetheless, the alleged failure to fulfill these obligations, in the absence of a breach of an explicit or categorical

13

requirement in CERCLA, does not provide a jurisdictional basis for a CERCLA citizen suit or counterclaim.  Although the EPA's alleged rogue actions do not provide a jurisdictional basis for Sensient's counterclaim, it does not mean that the actions will go unchecked.   As discussed herein, Sensient's rights are protected under other applicable CERCLA provisions and other statutes, regulations and case law that afford Sensient the right to defend its interests and to seek relief for alleged government misconduct.

The Court also rejects Sensient's third basis for jurisdiction over its counterclaim.  Section 9659(a)(2) only permits citizens to sue for violations of any standard, regulation, condition, requirement, or order which has become effective pursuant to CERCLA. The court does not have jurisdiction to hear Sensient's claim that the EPA violated the False Statement Act, 18 U.S.C. §1001, because the Act did not become effective pursuant to CERCLA.  A similar issue was addressed in Bennett, supra.  In that case, the ESA provided that a citizen suit could be brought "(C) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." 16 U.S.C. § 1540(g)(1). Despite this language, the plaintiffs argued the court had jurisdiction under this provision to hear their claim that defendants violated §1536.  The Supreme Court rejected this argument and held that the fact that subsection (C) only covered violations of §1533 was "clear and unambiguous" and that plaintiff's §1536 claim was "obviously not reviewable under this provision." Bennett, 520 U.S. at 171.   Similarly, it is just as clear and unambiguous that §9659(a)(2) of CERCLA does not provide jurisdiction over a claim brought under the False Statement Act.  See also McCormick v. Anschutz Min. Corp., C.A. No. S 88-97 C (5), 1989 WL 88083, at *1-2  (E.D. Mo. January 30, 1989) (finding a "civil action will not lie against EPA

14

unless plaintiffs can identify specific statutory provisions [under CERCLA] that the administrator has violated"). This finding is consistent with the fact that the limited waiver of the Federal Government's sovereign immunity must be "strictly construed, in terms of its scope, in favor of the sovereign." Potter, – US – , 128 S.Ct. at 1942-43.

The Court also rejects Sensient's argument that the court has jurisdiction over its counterclaim because CERCLA imposes a nondiscretionary duty on the EPA not to knowingly and willfully create an increased risk to the public health. At base this is just another way of pleading that the EPA did not properly perform its response action.  As discussed supra, a challenge to the manner in which the EPA carried out its response action is not a basis for citizen suit jurisdiction over a counterclaim. In addition, the Court has also determined that jurisdiction under §9659(a)(2) cannot be based on the breach of an implied duty.  Potter, – US – , 128 S.Ct. at 1942 (citing Lane v. Peña, 518 U.S. 187, 192 (1996) ("[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text").  If the Court accepted Sensient's argument, then the citizen suit waiver of immunity could be expanded to any case where a plaintiff alleges the EPA's response action failed to adequately protect the environment. This contention is typically made in CERCLA cases, and if this were enough to establish jurisdiction over a counterclaim it would eviscerate the government's limited waiver of sovereign immunity.  See Potter, – U.S. – , 128 S.Ct. at 1942-43.  See also Cascade, 921 F. Supp. at 699 (rejecting the argument that "Congress intended the citizen's suit provision to apply to such broadly-defined duties"); Skipper, 781 F. Supp. at 1111 (finding that counterclaimants must point to a specific waiver of sovereign immunity before they could proceed against the United States). Moreover, courts have consistently held that when the government is acting in its

15

regulatory capacity it is not subject to liability under 42 U.S.C. § 9607(a).  See id. at 1111-12

(citing United Stats v. Azrael, 765 F. Supp 1239 (D. Md. 1991)).

In Skipper, defendants in a cost recovery action counterclaimed against the United States

alleging that the Government was liable for carrying out a removal action that was inconsistent

with the NCP.  Id.  The court rejected the counterclaim and found that CERCLA did not include

a broad waiver of sovereign immunity.  Id. (citing B.R. MacKay & Sons v. United States, 633 F.

Supp. 1290, 1296 n. 9 (D. Utah 1986)).  In rejecting the counterclaim, the court noted

"[d]efendants in this cost recovery action should raise the issue of inconsistency with the NCP as

an affirmative defense . . . not as a counterclaim."  Id. at 1113.  The same holds true here.

Sensient also cannot base citizen suit jurisdiction on the allegation that the EPA violated a

duty when it "invited" the City of Camden to demolish the buildings on the Site.  The EPA's

decision to engage in a response action at the Site was a discretionary act.  Under CERCLA, the

EPA is authorized to remove or arrange for the removal of a hazardous substance whenever there

is a substantial threat of a release of a substance into the environment that may present an

imminent and substantial danger to the public health or welfare.  See 42 U.S.C. § 9604(a)(1);

Dickerson v. Administrator, E.P.A., 834 F.2d 974, 976 (11th Cir. 1987).  CERCLA also

provides that the EPA  may respond to any threat of release  "if, in the [EPA's] discretion,"  the

threatened release "constitutes a public health or environmental emergency and no other person

with the authority and capability to respond to the emergency will do so in a timely manner." 42

U.S.C. § 9604(a)(4).  The EPA's decision that a response action was appropriate at the Site was

discretionary.  The fact that Sensient disagrees with the decision does not create jurisdiction over

a counterclaim against the EPA.

16

Sensient also argues the EPA violated a nondiscretionary duty under 40 C.F.R.§ 300.415(a)(2) and the Due Process Clause of the United States Constitution by  failing to notify Sensient of its response action and determining whether Sensient would perform the removal action. The Court rejects Sensient's argument because the EPA does not have a nondiscretionary duty to notify all responsible parties of its activities.  The relevant NCP provision states, "[w]here the responsible parties are known, an effort initially shall be made to the extent practicable to determine whether they can and will perform the necessary removal action promptly and properly."  40 C.F.R.§ 300.415(a)(2).  This regulatory requirement is plainly discretionary on its face because the regulation qualifies the EPA's duty "to the extent practicable."  Additionally, Subpart E of the NCP specifically states that the EPA's duty to determine whether responsible parties will perform the necessary removal action is discretionary.  See 40 C.F.R. § 300.400(i)(3) (stating that the subpart E activities by the federal government are discretionary governmental functions, "[t]his subpart does not create in any private party a right to federal response or enforcement action"); see also Quarles v. United States ex rel. BIA, C.A. No. 00-913, 2005 WL 2789211, at *13 (N.D. Okla. Sept. 28, 2005) (finding government's duty was not nondiscretionary based, in part, on the language in  40 C.F.R. § 300.400(i)(3)).

The Court also rejects Sensient's argument that its due process claim is an adequate jurisdictional basis for its counterclaim.  Sensient cannot bring a citizen suit alleging the EPA violated its due process rights because the Due Process Clause of the Fifth Amendment was not enacted pursuant to CERCLA.   As discussed supra, section 9659(a)(2) is a limited  waiver of sovereign immunity and only permits citizens to sue the United States for violations of rules and regulations that have become effective pursuant to CERCLA.   Because the Due Process Clause

17

did not become effective pursuant to CERCLA, the court does not have jurisdiction under section 9659(a)(2) to hear the counterclaim and it must be denied as futile.

### 2. APA Jurisdiction

In addition to alleging jurisdiction over its counterclaim pursuant to §9659(a)(2) of CERCLA, Sensient also argues the court has jurisdiction under the APA to consider its claims that the EPA violated its due process rights and violated the False Statements Act by maintaining a fraudulent administrative record.  The Court rejects this argument.  The APA waives sovereign immunity to allow for judicial review of agency actions that are allegedly arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.   See 5 U.S.C. §§ 702, 706(2). However, the APA only allows for judicial review of final agency actions for which there is no other adequate remedy in a court. See 5 U.S.C. § 704; Am. Disabled for Attendant Programs Today v. U.S. Dept. of Hous. and Urban Dev., 170 F.3d 381, 390 (3d Cir.1999) (barring judicial review under APA where an adequate judicial remedy exists).  The "no other adequate remedy" prerequisite to APA review makes it clear that "[w]hen Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies."  Bowen v. Massachusetts, 487 U.S. 879, 903 (1988).

Sensient seeks review under the APA of its claim the EPA violated its due process rights by failing to determine whether responsible parties "can and will perform the necessary removal action promptly and properly" and by failing to give Sensient timely notice of the action. However, under CERCLA, a court may review the EPA's selection of a response action as well as the EPA's alleged procedural errors.  42 U.S.C. § 9613(j)(3)(4).  CERCLA  precludes the

court from awarding recovery costs to the extent that the EPA's selection of its response action was "arbitrary and capricious or otherwise not in accordance with law" and/or the EPA committed procedural errors that were "so serious and related to matters of such central relevance to the action that the action would have been significantly changed had such errors not been made." Id.  In other words, if a court finds that the EPA's selection of a response action was inconsistent with the NCP, arbitrary and capricious, or otherwise not in accordance with the law, or that the EPA committed serious procedural errors, the court may deny the government the costs it seeks. Sensient, therefore, has an adequate remedy under CERCLA.

CERCLA also provides Sensient with an adequate remedy to safeguard against a fraudulent administrative record.  See 42 U.S.C. § 9613(j) ("applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court").  "Where inadequacies in an administrative record frustrate proper judicial review of the agency's actions under the arbitrary and capricious standard, the proper course is to remand the case to the agency, or to allow supplementation of the record in district court." United States v. Rohm and Haas Co., 669 F. Supp. 672, 683 (D.N.J. 1987).  Because Sensient already has an adequate remedy under CERCLA to protect its interests in an accurate and truthful administrative record, there is no jurisdiction under the APA to review Sensient's counterclaim.  See United States v. 662 Boxes of Ephedrine, C.A. No. 08-3326,  — F. Supp. 2d. — , 2008 WL 5382646, at *5-6 (D.N.J. Dec. 29, 2008) (dismissing APA counterclaims).  In Ephedrine, defendants brought a counterclaim against the United States seeking a declaratory judgment under the APA that the government wrongfully seized their property.  The court dismissed the counterclaim as superfluous, finding that the same result could be achieved through the underlying forfeiture proceeding.  Similarly, Sensient's

defenses to the government's cost recovery suit provide Sensient with an adequate remedy rendering the APA counterclaim superfluous.

Sensient relies upon  Employers Insurance of Wausau v. Clinton, 848 F. Supp 1359 (N.D. Ill. 1994), to support its position that the court has jurisdiction under the APA to hear its counterclaim, but the decision is inapposite.  In Wausau, the plaintiffs challenged the EPA's finding that they did not comply with its clean up order.  The court noted that although "CERCLA provides for judicial review under certain circumstances," the statute did not provide for judicial review of the EPA's determination that a party did not comply with its clean up order. Wausau, 848 F. Supp  at 1365.   The reason the court found jurisdiction appropriate in Wausau is because the plaintiff had no other remedy in a court.  Id.  The Court has already discussed that Sensient has an adequate remedy for the relief it seeks here.

### 3.   Equitable Jurisdiction

Sensient argues the court has general equitable jurisdiction to hear its counterclaim and grant the relief it seeks. Quite simply, there is no support for Sensient's position that the Court can ignore constitutional and statutory law, and controlling Supreme Court precedent, and base federal jurisdiction on its inherent equitable powers.  A federal court has no authority to create equitable exceptions to jurisdictional requirements.  Bowles v. Russell,  – US – , – ,127 S.Ct. 2360, 2366 (2007).  Thus, a court cannot extend its equitable power "beyond the realm of its federal subject matter jurisdiction." Sansom Comm. by Cook v. Lynn, 735 F.2d 1535, 1538 (3d Cir. 1984).  To support its argument Sensient relies on United States v. Shaffer Equip., 11 F.3d 450, 461 (4th Cir. 1993).  However, Shaffer is irrelevant to the issues at hand.  In describing courts' inherent equitable power, the Fourth Circuit held that "it must be exercised with the

greatest restraint and caution, and then only to the extent necessary." <u>Id.</u> at 461.   In <u>Shaffer</u>, the

EPA's On Scene Coordinator misrepresented his academic credentials and the government's

attorneys failed to reveal the misrepresentations once they learned of them.   Because the

government attorneys deliberately and in bad faith breached their professional duty of candor, the

district court found that dismissal of the action with prejudice was the "only sanction . . .

consistent with the duty of candor violation." <u>Id.</u> at 452.   The Fourth Circuit, however, finding

that the district court did not use the necessary restraint in exercising its equitable power, vacated

the judgment and remanded for sanctions short of dismissal.   <u>Id.</u> at 463.   The <u>Shaffer</u> decision did

not address the issue of whether a court has jurisdiction to hear a counterclaim against the

government.   The decision merely addressed the issue of what sanctions are appropriate for an

attorney's misconduct.   The decision has no applicability to the issues here.

### C.  **Third Party Complaint**

#### 1.  **Fed. R. Civ. P. 14.**

Sensient seeks to join as third party defendants Jane Kenny, David Rosoff, and certain

unknown EPA officers or agents for knowingly violating Sensient's constitutional due process

rights.  (<u>See</u> Proposed Third Party Complaint at ¶38.)   The Court finds that Sensient's proposed

third-party complaint is procedurally improper and therefore must be denied as futile.   Pursuant

to Fed. R. Civ. P. 14(a),  a defendant, as a third party plaintiff, may join a party who may be

liable to the third party plaintiff for all or part of the plaintiff's claims against the third party

plaintiff. What Sensient disregards is the fact that  "[a] third-party claim may be asserted under

Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the

main claim or when the third party is secondarily liable to defendant. If the claim is separate or

independent from the main action, impleader will be denied." F.D.I.C. v. Bathgate, 27 F.3d 850, 873 (3d Cir. 1994) (quoting C.A. Wright, A. Miller, M.K. Kane, Federal Practice and Procedure, Vol. 6, § 1446, at 355-58 (1990)) (finding improper joinder where proposed third party defendant's liability was not derivative of the original defendant's liability). "The crucial characteristic of a Rule 14 third-party claim is that the original defendant is attempting to transfer to the third-party defendant all or part of the liability asserted against him by the original plaintiff." Ryan v. Collucio, 183 F.R.D. 420, 422 (D.N.J. 1998) (quoting In re One Meridian Plaza Fire Litig., 820 F. Supp. 1492, 1496 (E.D. Pa.1993)). In Ryan, plaintiffs sued their insurer for coverage as well as the prior owners of their home. After the plaintiffs dismissed their claims against the insurer, the prior owners moved for leave to file a third party complaint against the insurer. The court found that defendant's proposed third party complaint was improper because it did not attempt to transfer to the proposed third party defendants all or part of the liability asserted against it by the plaintiffs. Id. at 423. See also Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co., 512 F.3d 800, 805 (6th Cir. 2008) ("Rule 14(a) does not allow a third-party complaint to be founded on a defendant's independent cause of action against a third-party defendant, even though arising out of the same occurrence underlying plaintiff's claim, because a third-party complaint must be founded on a third party's actual or potential liability to the defendant for all or part of the plaintiff's claim against the defendant. . . .The third-party complaint is in the nature of an indemnity or contribution claim.")

This case is similar to Ryan. Here, the liability of the proposed third party defendants is not dependent on the outcome of Plaintiff's cost recovery claim against Sensient. The proposed new parties are not responsible parties under CERCLA §9607(a) and cannot be liable in contribution

to Sensient pursuant to §9613(f).  Additionally, Sensient is not attempting to transfer to Kenny, Rosoff and the unknown EPA officials all or part of the liability for the cost-recovery action brought against it by the Plaintiff. Instead, Sensient seeks to assert affirmative claims against the proposed new parties.  Thus, Sensient's proposed third party complaint is procedurally improper under Fed. R. Civ. P. 14 and will be denied.

### 2. <u>Bivens</u> Claims

Even if Sensient's third party claim were not procedurally deficient, it would still be denied as futile.  The basis of Sensient's proposed joinder is a new <u>Bivens</u> remedy it asks the Court to adopt.   In <u>Bivens</u>, the Supreme Court held that an individual whose Fourth Amendment rights were violated by a federal official had a right recover damages against the official despite the absence of a statutory right.  <u>Carlson v. Green</u>, 446 U.S. 14, 17 (1980) (citing <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971)). The purpose for creating a <u>Bivens</u> cause of action is to deter unconstitutional behavior by federal officials.  <u>See</u> <u>Carlson</u>, 446 U.S. at 21.

In its opposition to Sensient's motion, Plaintiff correctly points out that courts seldom create new <u>Bivens</u> causes of action.  In a number of different factual settings, the Supreme Court has considered <u>Bivens</u> claims and held that the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a <u>Bivens</u> remedy against the officer responsible for the violation.  <u>Shreiber v. Mastrogiovanni</u>, 214 F.3d 148, 152 (3d Cir. 2000). Moreover, since 1980 the Supreme Court has "consistently refused to extend <u>Bivens</u> liability to any new context or new category of defendants."  <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 67 (2001).  "A <u>Bivens</u> action is a blunt and powerful instrument for correcting

constitutional violations and not an 'automatic entitlement' associated with every governmental infraction." Benzman v. Whitman, 523 F.3d 119, 125 (2d Cir. 2008) (citing Wilkie v. Robbins, --- U.S. ---, 127 S.Ct. 2588, 2598, 2600 (2007)).  The Supreme Court has cautioned "hesitation" before authorizing a new Bivens claim.  Id. at 125 (internal citations omitted).

In deciding whether to recognize a Bivens remedy a court must consider  "whether any alternative process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." Wilkie, 127 S.Ct. at 2597-98. See also United States v. Green, 33 F. Supp. 2d 203, 226-27 (W.D.N.Y. 1998) (dismissing defendant's Bivens crossclaim alleging EPA's onsite coordinator violated defendant's Fifth Amendment Due Process rights because defendants had not availed themselves of the alternative remedy available for unlawful takings afforded under the Tucker Act).   For instance, the fact that Congress has established  a statutory cause of action "weighs strongly against the judicial creation of a novel Bivens action implied by the substantive component of the Due Process Clause." Benzman, 523 F.3d at 126.  Furthermore,  not every tort committed by a state actor is a constitutional violation of the Due Process Clause. Id. at 127 (citing DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 202 (1989)).

An example of the limited scope courts give to Bivens is Benzman, supra.  In Benzman, the plaintiffs were a class of residents, students and workers in Manhattan and Brooklyn, who brought a Bivens claim against former and current administrators of the EPA for violations of their Fifth Amendment substantive due process rights.  The plaintiffs alleged that in the weeks after September 11, 2001, EPA officials knew of the health threat  posed by dust from the World Trade Center but failed to report the health risks associated with the air quality or misrepresented

the risks.  The court denied the plaintiffs' <u>Bivens</u> claim and  found that Congress had already

provided the plaintiffs with a statutory cause of action arising out of the September 11 tragedy.

523 F.3d at 125-26.[5]

In this case Sensient seeks a finding that the EPA's actions were unlawful, a finding of non-

liability, and an award of attorneys' fees and costs.  If warranted by the evidence all of this relief

is available to Sensient without creating a new <u>Bivens</u> cause of action.  The Court already

discussed the statutory and regulatory provisions that protect Sensient's interests relating to a

finding of non-liability.  As to its claim for fees and costs, Sensient may pursue a claim pursuant

to the Equal Access to Justice Act ("EAJA"),  28 U.S.C. § 2412(d), which provides attorneys'

fees to persons prevailing in a civil action brought by or against the United States when the

government's position is not substantially justified. <u>See</u> <u>generally</u>  <u>Pierce v. Underwood</u>,  487

U.S. 552 (1988); <u>see</u> <u>also</u> <u>Stive v. United States</u>, 366 F.3d 520, 521 (7th Cir. 2004) (the EAJA

"makes the United States liable for attorneys fees" when it has "acted in bad faith, vexatiously,

wantonly or for oppressive reasons").  Additionally, if Sensient's allegations are correct, it may

be able to seek sanctions, including attorneys fees, if it can show that the Government violated

Fed. R. Civ. P. 11.  <u>See</u> <u>Mattingly v. United States</u>, 939 F.2d 816 (9th Cir. 1991) ("[t]he

government is not immune from Rule 11 sanctions").

Further, even if there is no alternative process available to protect Sensient's interests, a court

will still not create a <u>Bivens</u> remedy if "any special factors [counsel] hesitation before

authorizing a new kind of federal litigation."  <u>Wilkie</u>, 127 S.Ct. at 2597-98.  "The special factors

---

[5]The court in <u>Benzman</u> also declined to create a new <u>Bivens</u> remedy because the plaintiffs did not allege that any defendant intended to injure anyone. <u>Id.</u> at 127.  The same allegation is lacking in this case.

counselling hesitation in the creation of a new remedy  [do] not concern the merits of the particular remedy . . . sought.  Rather, they [are] related to the question of who should decide whether such a remedy should be provided." Bush v. Lucas,  462 U.S. 367, 380 (1983).  To determine whether there are any "special factors" that weigh against the creation of a new Bivens action, the court should consider whether "there are reasons for allowing Congress to prescribe the scope of relief that is made available" such as "a policy question in an area that has received careful attention from Congress." Benzman, 523 F.3d at 126.  Accordingly, the Supreme Court has refused to extend the Bivens remedy in policy areas where Congress has created a "comprehensive scheme." Bush, 462 U.S. at 386.  The Supreme Court also has refused to imply a Bivens remedy even where a comprehensive statutory scheme did not provide the plaintiff with complete relief,  noting that "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies." Schweiker v. Chilicky, 487 U.S. 412, 423 (1988).

In Bush, supra, a federal employee claimed he was demoted for making public statements critical of his agency-employer in violation of the First Amendment.  Through an administrative process created pursuant to federal civil service statutes, the plaintiff was reinstated with back pay.  He then brought a Bivens action seeking to recover for emotional distress and attorney's fees that were unavailable under the applicable statutory framework.   The Supreme Court refused to create a Bivens action despite the fact that "existing remedies [did] not provide complete relief for the plaintiff, " citing the comprehensive elaborate remedial system available to the plaintiff which demonstrated that Congress had paid careful attention to the policy in

question. Bush, 462 U.S. at 388-89.  Similarly, in Schweiker, individuals whose social security benefits were improperly terminated but were later restored alleged that federal officials violated their due process rights by adopting illegal policies that led to the termination of their benefits. The plaintiffs asserted a Bivens claim seeking money damages that were unavailable under the social security remedial scheme.  The Supreme Court held there was no Bivens cause of action for  money damages against the federal officials because Congress had established an elaborate remedial scheme which did not include a money damages remedy against officials responsible for unconstitutional conduct. Schweiker, 487 U.S. at 425-26.

A second reason the Court will not imply a new Bivens remedy is because special factors counsel against it.  Like the statutory schemes examined in Bush and Schweiker, when Congress enacted CERCLA it created a comprehensive system under which a party can defend itself against a claim for environmental response costs. See §§ 9607(a)(4)(A), 9613(j).  "CERCLA represents Congress's effort to address a complex environmental problem under a comprehensive remedial statute."  United States v. E.I. Dupont De Nemours and Co.,  432 F.3d 161, 169 (3d Cir. 2005).   CERCLA's language expressly states that the EPA cannot recover costs that are inconsistent with the NCP.  See §9607(a)(4)(A); United States v. Northeastern Pharmaceutical & Chem. Co.,  810 F.2d 726, 747 (8th Cir. 1986) ("[CERCLA's] statutory language itself establishes an exception for costs that are inconsistent with the NCP . . . and therefore, not recoverable" ). Additionally, § 9613(j)  precludes an award of costs to the extent that  the EPA's selection of its response action was "arbitrary and capricious or otherwise not in accordance with law" and the EPA has committed serious procedural errors that "related to matters of such central relevance to the action that the action would have been significantly changed had such errors not

27

been made." Given CERCLA's elaborate statutory and regulatory scheme, Congress has already

spoken on the scope of the relief that is available under the statute. Thus, the Court declines to

imply a <u>Bivens</u> claim and denies Sensient's proposed third party complaint as futile.

### D. **Sensient's Affirmative Defenses**.

Sensient seeks to add a Tenth Affirmative Defense that the United States' claim is barred by

the doctrine of unclean hands, fraud in the creation of the administrative record and abuse of the

legal process. The viability of Sensient's affirmative defenses was discussed in detail in <u>Sensient</u>,

<u>supra</u>, 580 F. Supp. 2d 369. The Court has already noted that CERCLA provides the only

substantive affirmative defenses to liability in cost recovery actions. 580 F. Supp. at 376-77. <u>See</u>

<u>also</u> <u>United States v. Rohm & Haas II</u>, 939 F. Supp.1142, 1151 (D.N.J.1996) ("this circuit has

made it clear in its jurisprudence that non-§ 107(b) defenses are not available to defeat CERCLA

liability"). Sensient has not cited any authority to support its proposed defenses. As to its

unclean hands defense, the Third Circuit has ruled that equtiable defenses, including unclean

hands, are not viable in the CERCLA context. <u>Smith Land and Imp. Corp. v. Celeotex Corp.</u>,

851 F.2d 86, 90 (3d Cir. 1988); <u>Rohm & Haas II</u>, 939 F. Supp. at 1152 (striking equitable

defenses because "the majority of courts, including this court, have rejected equitable defenses to

a section 107(a) cost recovery action as inconsistent with the explicit language of the statute and

congressional intent"); <u>United States v. Kramer</u>, 757 F. Supp. 397, 424 (D.N.J. 1991). Thus,

Sensient's unclean hands defense is futile.

As to the defense of fraud in the creation of the administrative record, the Court finds that

this proposed defense is futile because it is redundant of Sensient's existing defenses. Sensient's

Ninth Affirmative Defense already alleges that the EPA's administrative record was inaccurate

28

and incomplete.  In addition, the same defense alleges the record contains information that the EPA "knowingly misrepresented."  The defense also alleges that the EPA conducted a remedial action rather than a removal action, which is precisely what Sensient alleges in its proposed Tenth Affirmative Defense. Accordingly, Sensient's fraud defense will not be permitted based on its redundancy.  See Fed. R. Civ. P. 12(f).

As to Sensient's "abuse of process" defense, it too is denied as futile.  Although not clear from Sensient's motion and supporting papers, it appears that Sensient is asserting a cause of action for abuse of process. Abuse of process is a tort actionable under state law requiring a showing of "(1) an ulterior motive and (2) some further act after an issuance of process representing the perversion of the legitimate use of the process." SBK Catalogue Partnership v. Orion Pictures Corp., 723 F. Supp. 1053, 1067 (D.N.J.1989) (internal citation omitted).  Because this is a separate cause of action rather than a defense to a CERCLA action, the proposed defense is denied as futile.

## III.    CONCLUSION

For all the reasons stated herein Sensient's motion for leave amend its response to Plaintiff's complaint to assert a counterclaim against the United States and Stephen L. Johnson, acting in his official capacity as Administrator of the Environmental Protection Agency, and Alan Steinberg, acting in his official capacity as Administrator of the Environmental Protection Agency Region 2, to assert third party "Bivens-type" claims individually against EPA On-Scene Coordinator David Rosoff, former EPA Region 2 Administrator Jane Kenny, and certain unknown EPA employees or agents, and to add affirmative defenses is DENIED as futile.

Accordingly,

IT IS on this 13th day of February 2009 hereby

ORDERED that Sensient's Motion for Leave to Amend its Responsive Pleading is DENIED.

s/Joel Schneider

JOEL SCHNEIDER

United States Magistrate Judge
