## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

UNITED STATES OF AMERICA,          :   Hon. Joseph H. Rodriguez

                         :

        Plaintiff,          :   Civil Action No. 07-1275

                         :

        v.              :   **Opinion**

                         :

SENSIENT COLORS, INC., f/k/a     :

WARNER-JENKINSON COMPANY, INC.,  :

f/k/a H. KOHNSTAMM & COMPANY, INC.,  :

                         :

       Defendants.       :

_____:

This matter comes before the Court on two appeals pursuant to Local Civil Rule 72.1(c), by Defendant Sensient Colors, Inc. ("Sensient"). Defendant Sensient appeals [Dkt. Entry No. 130] from the January 28, 2009 Opinion and Order of Magistrate Judge Schneider [Dkt. Entry No. 128], which: (1) granted Christine Todd Whitman's Motion to Quash Subpoena and to Bar her Deposition; (2) granted in part and denied in part Jane M. Kenny's Motion to Quash Subpoena and to Bar her Deposition; and (3) granted in part and denied in part David Rosoff's Motion for Protective Order. Defendant Sensient also appeals [Dkt. Entry No. 136] from the February 13, 2009 Opinion and Order of Magistrate Judge Schneider [Dkt. Entry No. 129], which denied Sensient's Motion for Leave to Amend its responsive pleading.

This case presents a unique set of facts demanding application to a novel area of law. Parties and non-parties alike have an interest in its outcome. For the reasons expressed below, the magistrate judge is affirmed in part and reversed in part.

# I. Background

Because the parties and relevant non-parties are intimately familiar with this case, an exhaustive recitation of the facts and procedural history is unnecessary. Only those facts that are necessary to the analysis of this review are included herein.[1]

In March of 2007, the United States filed this cost recovery action against Sensient under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"). See generally 42 U.S.C. §§ 9601-9675 (2000). Alleging that Sensient is responsible for contaminating the General Color Site (hereinafter "Site" where appropriate) in Camden, New Jersey, the Government via the Environmental Protection Agency ("EPA") seeks approximately $16 million in costs resulting from its removal action activities at the Site.

Sensient objects to the EPA's characterization of the Site project as a "removal action." Sensient underscores the eight years and $16 million spent by the EPA on the Site, and contends that both are incongruous with a "removal action" under CERCLA. A cursory reading of the statute supports Sensient's view. For example, CERCLA prohibits the EPA from recovering any removal costs in excess of $2 million, or 12 months in duration. See 42 U.S.C. § 9604(c)(1).[2] Sensient further contends that the EPA

---

[1]     As noted by Judge Schneider below, see United States v. Sensient Colors, Inc. ("Sensient II"), No. 07-1275, 2009 WL 303689, at *1 n.2 (D.N.J. Jan. 28, 2009); and United States v. Sensient Colors, Inc. ("Sensient III"), No. 07-1275, 2009 WL 394317, at *1 n.1 (D.N.J. Feb. 13, 2009), a detailed background of this case is provided in a previous decision rendered by this Court. See United States v. Sensient Colors, Inc. ("Sensient I"), 580 F. Supp. 2d 369, 372-74 (D.N.J. 2008). In that case, this Court approved certain affirmative defenses for Sensient. Sensient I, supra, at 389-90.

[2]     However, there are certain statutory exceptions to 42 U.S.C. § 9604(c)(1), which, if found, allow the EPA to exceed the $2 million, or 12 months in duration threshold. See 42U.S.C. § 9604(1)(A)-(C). Disputing the Government's contention, Sensient contends that no

deliberately mischaracterized its response activity at the Site as an emergency removal action in order to redevelop the Site–and per force, the City of Camden–at Sensient's expense.  In support of this contention, Sensient relies on an e-mail from David Rosoff, the EPA On-Scene Coordinator for the Site.  That highly relevant e-mail provides:

> It was a remedial site - I just completed with removal funds over a 6 year period (a very fast RI/FS-RD/RA but a very slow removal).  The secret is spread it out and they don't realize how much your spending - 9 million is a drop in the bucket for you but here I am looked at like I have 3 heads.  Preremedial didn't want to touch it so we did it ourselves.  Normally I could have never done this with Dick as a boss but with the support of Jane and Anthony he couldn't say no.  There is no real 2 million dollar limit so I have learned.  I'll be looking in NY this spring.

See Sensient II, 2009 WL 303689, at *1 n.4.  When viewed alongside Jane M. Kenny's September 30, 2003 letter to then-Camden Chief Operating Officer Randy Primas,[3] Sensient contends there is sufficient evidence that the EPA deliberately and purposely mischaracterized its response at the Site as a "removal action" instead of a "remedial

---

exception applies in the instant case.

[3]    Jane M. Kenny, former Regional Administrator of EPA Region II, wrote Primas in September in response to his letter of August 26, 2003.  In the August letter, Primas proposed that Camden demolish the buildings at the Site and the EPA continue its responsive activities to any contamination discovered underneath the buildings.  Sensient II, 2009 WL 303689, at *6.  The magistrate judge accurately summarized the substance of Kenny's response as follows:

> Kenny . . . advised Primas that the EPA had no plans to address known buried hazardous waste beneath the buildings at this time.  Kenny explained that the buried waste was not an immediate threat because it was not accessible.  However, Kenny advised Primas that if the City demolished the buildings the buried waste would then be exposed.  Kenny then wrote that if this occurred, the EPA would investigate the Site and perform appropriate cleaning activities to mitigate risks to the public health.  Kenny advised Primas that she looked forward to working with the City of Camden to complete the revitalization efforts that we both have been working toward.

Id. (internal quotations omitted).

3

action."  Relatedly, Sensient contends that "Kenny falsely certified that proposed EPA action associated with the . . . Site constituted a time critical removal . . . thus enabling expenditures to exceed statutory time and spending limits."  (Sensient Br. 8.)

Upon discovery of the Rosoff e-mail and the Kenny letter, Sensient filed a motion for leave to amend its answer and to file a third-party complaint. [Dkt. Entry No. 66.] Sensient also served subpoenas and deposition notices on Whitman, Kenny and Rosoff. Motions to quash were filed by Whitman and Kenny, and a motion for a protective order was filed by Rosoff. [Dkt. Entry Nos. 85, 91, 94.]  Judge Schneider denied Sensient's motion to amend, [Dkt. Entry No. 129], and granted in part and denied in part the motions to quash and motion for a protective order.  [Dkt. Entry No. 128.]  These decisions form the bases of this appeal.[4]

### III. Standard of Review

This Court reviews decisions on nondispositive matters by a magistrate judge under the "clearly erroneous or contrary to law" standard.[5]  See Andrews v. Goodyear

---

[4]     Pursuant to the Local Civil Rules, "any party may appeal from a magistrate judge's determination of a non-dispositive matter within 10 days after the party has been served with a copy of the Magistrate Judge's order . . ."  L. Civ. R. 72.1(c)(1)(A).  These appeals, filed on February 13, 2009 and March 2, 2009, respectively, are considered timely.

[5]     Sensient contests the applicability of the clearly erroneous or contrary to law standard with respect to review of its motion to amend its responsive pleading. (Sensient Br. 13.)  Sensient contends that the de novo standard should apply.  (Id.)  In doing so, Sensient cites authority from the Eleventh Circuit and the District of Minnesota.  See Freeman v. First Union Nat'l, 329 F.3d 1231, 1234 (11th Cir. 2003) ("[W]hen the district court denies the plaintiff leave to amend due to futility, we review the denial de novo because it is concluding that as a matter of law an amended complaint 'would necessarily fail.' "); American Ins. Co. v. St. Jude Medical, Inc., 597 F. Supp. 2d 973, 977 (D. Minn. 2009) (observing that while a magistrate appeal is normally reviewed under the clearly erroneous or contrary to law standard, "[a] motion denied as futile . . . is reviewed de novo.").  Of course, the Government contends that the clearly erroneous or contrary to law standard applies.  (Gov't. Opp'n Br. 3.)  This Court agrees

Tire & Rubber Co., 191 F.R.D. 59, 67 (D.N.J. 2000) (citing 28 U.S.C. § 636(b)(1)(A)

(West 1999)); see also Fed. R. Civ. P. 72; L. Civ. R. 72.1(c)(1)(A).  In this regard, "the

---

with the Government; the clearly erroneous or contrary to law standard of review is applicable to a motion to amend on appeal from a magistrate decision.

Three cases inform this Court's judgment.  Most recently, a court sitting in this District applied the clearly erroneous or contrary to law standard to a magistrate appeal regarding a motion for leave to file a third-party complaint.  See Am. Fire and Cas. Co. v. Material Handling Supply, Inc., No. 06-1545, 2007 WL 2416434, at *1 (D.N.J. Aug. 16, 2007) (affirming decision of lower court and applying the deferential standard of review).  Here, part and parcel of Defendant's motion to amend is its proposed third party complaint asserting Bivens actions against certain EPA officials.  Accordingly, American Fire is persuasive.

Even more persuasive is Falzo v. County of Essex.  See No. 03-1922, 2005 WL 2129927, at *2 (D.N.J. Aug. 31, 2005).  In Falzo, the district court confronted the precise issue presently before this Court.  Id. at *2.  The defendants sought application of the de novo standard of review to a motion to amend because, in their view, the magistrate judge's "order denying [the] [d]efendants' motion to file counterclaims was effectively dispositive of those counterclaims."  Id. (alteration in original).  Rejecting the argument and applying the clearly erroneous or contrary to law standard, the district court opined:

> [The] decision to deny [the] [d]efendants' motion to file counterclaims was not dispositive of those claims.  Motions to amend pleadings are non-dispositive.  Furthermore . . . [a] determination of futility does not require a determination of the merits, and may only serve as the basis for denial of leave to amend where the proposed amendment . . . advances a claim that is legally insufficient on its face . . . Thus, [the] determination of futility was not a determination on the merits of [the] [d]efendants' counterclaims.  Accordingly, her decision was not dispositive.  Because [it] was not dispositive, the clearly erroneous or contrary to law standard of review applies . . .

Falzo, 2005 WL 2129927, at *2 (internal citations and quotations omitted) (alteration in original).

Finally, a third court sitting in this district applied the clearly erroneous or contrary to law standard of review to a magistrate judge's decision denying a motion to amend.  See Miller v. Beneficial Mgmt. Corp., 844 F. Supp. 990, 997 (D.N.J. 1993).  While not binding on this Court, these cases nevertheless inform this Court's judgment today.  As a result, the clearly erroneous or contrary to law standard of review applies to the motion to amend.

magistrate judge is accorded wide discretion." <u>Miller v. Beneficial Mgmt. Corp.</u>, 844 F.

Supp. 990, 997 (D.N.J. 1993) (citing <u>NLRB v. Frazier</u>, 966 F.2d 812, 815 (3d Cir. 1992)).

A magistrate judge's decision is clearly erroneous "when, although there may be some

evidence to support it, the reviewing court, after considering the entirety of the evidence,

is 'left with the definite and firm conviction that a mistake has been committed.' " <u>See</u>

<u>Kounelis v. Sherrer</u>, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (citing <u>Dome Petroleum</u>

<u>Ltd. v. Employers Mut. Liab. Ins. Co.</u>, 131 F.R.D. 63, 65 (D.N.J. 1990) quoting <u>United</u>

<u>States v. Gypsum Co.</u>, 333 U.S. 364, 395 (1948)).  A magistrate judge's decision is

contrary to law when he or she has "misinterpreted or misapplied applicable law."

<u>Kounelis</u>, 529 F. Supp. 2d at 518 (citing <u>Gunter v. Ridgewood Energy Corp.</u>, 32 F. Supp.

2d 162, 164 (D.N.J. 1998)).  It should be noted that "[p]articular deference is accorded to

magistrate judges on discovery issues." <u>Costa v. County of Burlington</u>, 584 F. Supp. 2d

681, 684 n.2 (D.N.J. 2008) (citing <u>Boody v. Twp. Of Cherry Hill</u>, 997 F. Supp. 562, 573

(D.N.J. 1997)).  The burden of demonstrating clear error rests with the appealing party.

<u>Kounelis</u>, 529 F. Supp. 2d at 518.

## IV. Discussion

### A. Motions to Quash & Motion for a Protective Order

Sensient appeals the magistrate judge's January Opinion and Order restricting

the depositions of Whitman,[6] Kenny, and Rosoff.[7]  Sensient first contends the magistrate

---

[6]    For purposes of this case, Christine Todd Whitman is referenced in her capacity as former EPA Administrator.  She served in that capacity from 2001 to 2003. See http://www.epa.gov/history/admin/agency/index.htm .

[7]    <u>Sensient</u> does not press for reversal of the portion of the magistrate judge's January Opinion and Order granting the EPA's motion to quash Christine Todd Whitman's deposition.  That portion should only be reversed, Sensient contends, if this Court decides the

judge committed reversible error by applying the Morgan Doctrine to former high-ranking government officials.  In doing so, Sensient takes issue with the magistrate judge's reliance on relevant case law.  Sensient cites public policy concerns that, in its view, militate "in favor of limiting the applicability of the Morgan Doctrine to current government officials." (Sensient Br. 14.)  Next, Sensient alternatively contends that, even if Morgan applies to former high-ranking government officials, "extraordinary circumstances" warrant deposing Kenny.  (Id. at 9.)  As for Rosoff, Sensient acknowledges that Courts often stay discovery pending determinations of qualified immunity.  (Id. at 8.)  Nevertheless, Sensient contends that it is appropriate to depose Rosoff without delay.  (Id. at 8-9.)

In response, the Government contends the magistrate judge's application of Morgan to former high-ranking government officials is neither clearly erroneous nor contrary to law.  (Gov't. Br. 3.)  The United States alternatively contends that, even if Morgan is inapplicable to former high-ranking government officials, Sensient has failed to demonstrate why it is entitled to depose Whitman.  Accordingly, the United States contends that the decision granting the motion to quash Whitman's deposition should be affirmed.

Regarding Kenny, a non-party in the action, she agrees that Morgan applies to former high-ranking government officials.  (Kenny Br. 10.)  Kenny contends that "ample authority exists . . . to apply Morgan to former high-ranking government officials." (Id.)  Kenny additionally contends that Sensient has made no showing that she possessed

---

Morgan Doctrine is inapplicable to former high-ranking government officials.  (Sensient Br. 17 n.7.)

first-hand knowledge essential to the case in order to warrant the taking of her deposition.  (Id. at 13.)

For whatever reason, Rosoff has not submitted papers in opposition to Sensient's appeal.  Essentially then, Sensient's contentions regarding his deposition go unchallenged on this appeal.  These contentions are examined below.

 1. Applicability of the *Morgan* Doctrine to Former High-Ranking Government Officials

There is wide agreement among the Circuits that current high-ranking government officials should not be subject to the taking of depositions absent extraordinary circumstances.  See Bogan v. City of Boston, 489 F.3d 471, 423 (1st Cir. 2007) (citing Simplex Time Recorder Co. v. Sec'y of Labor, 766 F.2d 5765, 586 (D.C. Cir. 1985); In re United States (Holder), 197 F.3d 310, 313 (8th Cir. 1999); In re FDIC, 58 F.3d 1055, 1060 (5th Cir. 1995); In re United States (Kessler), 985 F.2d 510, 512 (11th Cir. 1993)); see also Kyle Engineering Co. v. Kleppe, 600 F.2d 226, 231 (9th Cir. 1979) ("Heads of government agencies are not normally subject to deposition.").  This agreement stems from the landmark case of United States v. Morgan, 313 U.S. 409, 422 (1941).  In that case, the Supreme Court strongly cautioned against the taking of depositions of high-ranking government officials.  Id.  As its primary rationale, the Court recognized the importance of protecting the decision-making process of such officials. Id.  The Court feared the effects of nettlesome mind-probing and analogized the high-ranking government official to a judge; "[j]ust as a judge cannot be subjected to such scrutiny, so the integrity of the administrative process must be equally respected."  Id.

Since Morgan, other courts have discussed additional rationales for the mental process privilege.  See Buono v. City of Newark, 249 F.R.D. 469, 470 n.2 (D.N.J. 2008)

8

(noting the interest in "ensuring that high level government officials are permitted to perform their official tasks without disruption or diversion.") (citations omitted); accord United States v. Wal-Mart Stores, No. 01-152, 2002 WL 562301, at *1 (D.Md. Mar. 29, 2002) (fearing "litigation-related burdens" might "render their time . . . for government service significantly diluted or completely consumed."). The court in Wal-Mart Stores also observed that a contrary rule might discourage otherwise upstanding individuals from public service. Id. at *3.

Relying on the foregoing, the magistrate judge opined–"the goal of limiting inquiries into a decision maker's thought process is as equally applicable to a former employee as it is to a current employee." Sensient II, 2009 WL 303689, at *3. Consequently, he extended the Morgan Doctrine to former high-ranking government officials Whitman and Kenny. Id. at *4-*6.

This decision is neither clearly erroneous nor contrary to law. First and foremost, the Third Circuit has yet to speak on this issue. In the absence of controlling Third Circuit precedent, there can be no error in examining the persuasive authority of other jurisdictions. See Am. Fire and Cas. Co. v. Material Handling Supply, Inc., 2007 WL 2416434, at *1 (D.N.J. Aug. 16, 2007) (holding same). Here, the magistrate judge did just that; he accepted persuasive authority from the District of Maryland. See Wal-Mart Stores, 2009 WL 562301, at *3 (applying Morgan to former high-ranking officials and noting that "[i]f the immunity Morgan affords is to have any meaning, the protections must continue upon the official's departure from public service."). The magistrate judge then distinguished the cases upon which Sensient relied, see generally Toussie v. County of Suffolk, No. 05-1814, 2006 WL 1982687 (E.D.N.Y. July 13, 2006); Sanstrom v. Rosa,

9

No. 93-7146, 1996 WL 469589 (S.D.N.Y. Aug. 16, 1996), and observed that in each circumstance the former official possessed such personal knowledge that Morgan protection was unavailing.  Sensient I, supra, at *3.  Sensient contends the magistrate judge "unfairly dismiss[ed]" these cases because, in its view, Toussie and Sanstrom unequivocally deny the application of Morgan to former high-ranking government officials.  (Sensient Br. 13-14.)  A brief examination of these cases is therefore necessary.

In Toussie, the district court confronted the issue of whether a former county executive should be subject to deposition.  Toussie, 2006 WL 1982687, at *1.  The court opined, "The specific rules governing depositions of high level government officials do not apply to Mr. Gaffney as he is no longer the County Executive."  Toussie, supra, at *2.  The court then stated, "that is not to say that the depositions of former government officials should be lightly granted."  Id.  Continuing in this vein, the court observed that "[g]enerally, the depositions of former government officials are granted where the official has been personally involved in the events at issue in the case."  Id.  (citing Gibson v. New York Police Officer Carmody, 1991 WL 161087, at *1 (S.D.N.Y. Aug. 14, 1991)).  Based on that general rule, the Court permitted the deposition of the former county executive because of his personal involvement in the case.  Id.

Similarly, in Sanstrom the Southern District of New York allowed the deposition of former Governor Mario Cuomo where it was "critical" that the plaintiffs prove his "personal involvement in order to recover damages under 42 U.S.C. § 1983."  See Sanstrom, 1996 WL 469589, at *5.  The underlying claims in that case alleged deprivations of due process and equal protection stemming from the New York State Division of Human Rights' delay in "investigating and processing" claims of

discrimination.  Id. at *1.  The Court did not apply Morgan to former Governor Cuomo; rather, it reasoned in relevant part, "because Mr. Cuomo is no longer governor, he cannot claim this privilege."  Id. at *5.  The Court then observed, even if he was still Governor, extraordinary circumstances–i.e. personal involvement–warrant the taking of his deposition.[8]  Id.  ("[H]e possesses particular information necessary to the development . . . of the plaintiff's case. . ." (quoting Am. Broad. Co's. v. United States Info. Agency, 599 F. Supp. 765, 769 (D.D.C. 1984))) (brackets omitted).

Although the courts in Toussie and Sanstrom addressed the applicability of Morgan to former officials, the greater part of the analysis was focused on the personal involvement or knowledge of the deponent.  It was this factor that the courts deemed critical.  The magistrate judge committed no error by distinguishing these cases accordingly.

Yet, even assuming Sensient is correct that Toussie and Sanstrom unequivocally deny the application of Morgan to former high-ranking government officials, the magistrate judge's decision to accept Wal-Mart Stores as persuasive over Toussie and Sanstrom is neither clearly erroneous nor contrary to law.  In contrast to Toussie and Sanstrom, Wal-Mart Stores provides an extensive analysis of the Morgan Doctrine, including Morgan's underlying rationale which, in the view of the District of Maryland, applies in equal force to current and former high-ranking government officials.  Given

---

[8]  Notably, the district court was unimpressed with former Governor Cuomo's main contention that his busy schedule should preclude the taking of his deposition.  Sanstrom, supra,  at *4.  Although this contention is consistent  with the rationale of Morgan as it relates to current high-ranking government officials, see Wal-Mart Stores, 2002 WL 562301, at *1 (fearing "litigation-related burdens" might "render their time . . . for government service significantly diluted"), its persuasiveness subsides once that individual leaves office.  This observation is discussed more thoroughly below.  See infra Part IV.A.2.ii.

the lack of controlling Third Circuit precedent, and considering an additional case from the Supreme Court of Appeals of West Virginia, see Arnold Agency v. West Virginia Lottery Comm'n, 206 W.Va. 583, 599, 526 S.E.2d 814, 830 (1999) ("former high-ranking government administrators . . . have a legitimate interest in avoiding unnecessary entanglements in civil litigation"), this Court finds no reversible error in the magistrate judge's ruling that Morgan applies to former high-ranking government officials.  This portion of the January Opinion and Order is therefore affirmed.

Having found that Morgan applies to former high-ranking government officials, there can be no doubt that Morgan applies to Ms. Whitman, the former Administrator of the EPA.  The magistrate correctly observed that other courts apply Morgan to government officials "whose rank does not surpass the Administrator of the EPA." Sensient I, supra, at *4 (citing Franklin Sav. Ass'n v. Ryan, 922 F.2d 209, 212 (4th Cir. 1991) (applying Morgan to Director of the Office of Thrift Savings); Central Valley Chrysler Valley Jeep, Inc. v. Witherspoon, CV-F-04-6663, 2006 WL 2619962, at *2-*3 (E.D.Cal. Aug. 25, 2006) (applying Morgan to Executive Officer of the California Air Resources Board)).  Sensient concedes as much in its Brief.  (Sensient Br. 17 n.7.) Moreover, Sensient has submitted no evidence suggesting Ms. Whitman had any personal involvement in or knowledge relevant to the General Color Site.  Finding no error in the magistrate judge's ruling granting Ms. Whitman's motion to quash, the Court affirms that portion of the Opinion and Order.

Review of the magistrate judge's January Opinion and Order is now confined to the rulings restricting the depositions of Kenny and Rosoff.  It is with these rulings, respectfully, that the Court finds reversible error.

<u>2. Jane M. Kenny</u>

The magistrate judge granted in part and denied in part Jane M. Kenny's motion to quash. <u>Sensient II</u>, <u>supra</u>, at *8. Kenny's motion to quash her subpoena and bar her deposition was granted. Because Kenny had direct personal involvement in the Site, however, the magistrate judge envisioned that her deposition might eventually be justified. <u>Id.</u> ("The Court is not foreclosing the prospect that future developments may justify Kenny's deposition."). As such, the magistrate judge denied in part the motion to quash. <u>Id.</u> at *9 (quashing Sensient's subpoena "without prejudice to its right to re-new its request for Kenny's deposition.").

Sensient contends the magistrate judge's ruling was clearly erroneous or contrary to law. (Sensient Br. 9-13.) Sensient advances two grounds to support this contention. First, Sensient contends the magistrate judge erred by finding Jane M. Kenny to be a former high-ranking government official. (Sensient Br. 18) In Sensient's view, "Kenny was not of sufficient rank to warrant the extraordinary protection of the <u>Morgan</u> Doctrine." (<u>Id.</u>) Second, Sensient contends that even if she warrants the protection of <u>Morgan</u>, extraordinary circumstances justify the taking of her deposition. Kenny contests both grounds. These contentions are examined below.

<u>i. Status of Jane M. Kenny</u>

Sensient contends Kenny is not a high-ranking government official. (Sensient Br. 18.) Sensient advances several arguments in support of this contention. First, Sensient estimates Kenny's position of EPA Regional Administrator–of which there are ten in the

Nation–to be a Level IV position consistent with 5 U.S.C. § 5315.[9]  (Sensient Br. 19 n.8.)
Level IV includes approximately 342 officials.  (Id.)  By contrast, Level I includes only
twenty-one officials, including such high-ranking officials as the Secretary of State.  (Id.)
While Sensient acknowledges the need to apply Morgan to the relatively few Level I
employees, it contends the application of Morgan to Level IV employees "unfairly limits
the broad discovery rights at the heart of our judicial system and fosters an unwarranted
climate of governmental secrecy."  (Id. at 20.)  This public policy concern, Sensient
contends, militates in favor of deposing Kenny.

 In support, Sensient relies on In re Kessler.[10]  See 100 F.3d 1015, 1017 (D.C. Cir.
1996) (rejecting FDA Commissioner's argument that he may appeal a district court's
discovery order without first being held in contempt).  There, the D.C. Circuit refused to
extend the privilege of appealing a discovery order without first being held in contempt
to the FDA Commissioner.  See Kessler, 100 F.3d at 1017.  The D.C. Circuit observed
that the FDA Commissioner holds a Level IV ranking, "the same grade as the typical
secretary of a department or member of a Commission. . ."  Id.  The court further

---

[9]  The EPA Administrator is a Level II employee, and the Deputy EPA
Administrator is a Level III employee.  While Section 5315 of Title 5 does not expressly include
EPA Regional Administrators in its Level IV list, it does include EPA Assistant Administrators.
Sensient observes EPA Assistant Administrators are on the same organizational level as EPA
Regional Administrators.  (Sensient Br. 20 n.8 (citing EPA Organizational Structure, *available
at* http://www.epa.gov/epahome/organization.htm).  For the sake of argument, the Court
accepts Sensient's postulation that EPA Regional Administrators are Level IV federal officials.

[10]  Sensient initially relied on In re Kessler to persuade the magistrate judge that
Christine Todd Whitman should not be afforded the protections of Morgan.  See Sensient I,
supra, at *4 ("Sensient primarily relies upon In re Kessler to support its argument that Whitman
was not a high ranking government employee.").  Here, Sensient again relies on Kessler.  This
time, however, Sensient relies on Kessler to persuade this Court from affording Morgan
protection to Jane M. Kenny.  (Sensient Br. 18-20.)  To the extent that the magistrate
judge's analysis of that case is applicable to Kenny, it is included herein.

observed that the FDA Commissioner is three levels below the Secretary of Health and Human Services.  Id. at 1017-18.  Fearing a slippery slope in the absence of a well-defined stopping point, the Court did not extend the privilege.  Id. at 1017 (contrasting the situation of the FDA Commissioner with that of the President); see also United States v. Nixon, 418 U.S. 683, 692 (1974) (allowing President Nixon to appeal a discovery order without first being found in contempt).

Here, the magistrate judge correctly observed that the D.C. Circuit "did not address whether the FDA Commissioner was a high-ranking government official subject to the protections in Morgan."  Sensient II, supra, at *4.  Instead, the court addressed "whether the FDA Commissioner could appeal the lower court's order permitting his deposition before he was found in contempt of court."  Id.  (citing Kessler, 100 F.3d at 1017-18).  The court made this point clear in the final sentence of its Opinion.  Kessler, 100 F.3d at 1018 ("We deny the petition, and we, of course, express no view on the merits of the discovery order, including Dr. Kessler's status under Simplex, see 766 F.2d at 586.").

Sensient acknowledges Kessler did not deal with the instant issue before the Court.  (Id. at 18.)  Rather, the case cited by the D.C. Circuit in Kessler, supra, at 1018 (citing Simplex Time Recorder Co. v. Sec'y of Labor, 766 F.2d 575, 586 (D.C. Cir. 1985) (applying Morgan to certain "top Department of Labor officials")), dealt with that issue. Nevertheless, Sensient contends the slippery-slope rationale of Kessler is equally applicable to the instant issue–"If the Morgan Doctrine applies to an EPA Regional Administrator, to whom in the executive branch does it not apply?"  (Id. at 18.)  Phrased somewhat differently, where should the courts draw the line?

Sensient proposes the line be drawn at cabinet-level officers.  (Sensient Br. 19.)

Citing Citizens for Responsibility and Ethics in Washington v. Cheney, 580 F. Supp. 2d

168 (D.D.C. 2008), Sensient underscores dicta suggesting as much.  (Sensient Br. 19.)

In Citizens, the district court rejected the contention that the Director of the Presidential

Materials Staff was a high-ranking government official subject to Morgan.  Id. at 179.

The court reasoned, "[s]he is not the sort of *cabinet-level officer* over which the D.C.

Circuit's decisions contemplate protection from discovery."  Id.  (emphasis added).  The

court also rejected the contention that David Addington, the Vice-President's Chief of

Staff, was subject to Morgan protection.  Id.  In that instance, the court reasoned, "he is

not a *cabinet-level officer*, and he is uniquely qualified to address the areas of inquiry

identified as appropriate for discovery in this case."[11]  Id.  (emphasis added).  Sensient

hangs its hat on the twice used "cabinet-level officer" language in advancing its

argument.  This dicta, it contends, limits the application of Morgan to those officers

alone.

This contention is unavailing.  The relevant authority does not support such a

constrained view of Morgan application.  Notwithstanding the district court's dicta,

other courts, including those sitting in the District of Columbia, have extended Morgan

to officials below cabinet-level rank.  See United States v. Wal-Mart Stores, 2002 WL

562301, *1 (D. Md. March 29, 2002) (treating chair of federal Consumer Product Safety

Commission as a high-ranking government official); Alexander v. F.B.I., 1999 WL

_____

[11]      In Citizens, the plaintiffs brought suit against the Vice-President, Executive Office of the President, and Office of the Vice-President, among others, alleging the defendants improperly and unlawfully placed limitations on the scope of Vice Presidential records subject to the Presidential Records Act.  Citizens, 580 F. Supp. 2d at 170.

270022, *1 (D.D.C. Apr. 21, 1999) (treating Deputy White House Counsel as a high-ranking government official); Am. Broad. Cos. v. United States Info. Agency, 599 F. Supp. 765, 769 (D.D.C. 1984) (treating Director of United States Information Agency as a high-ranking government official); Sykes v. Brown, 90 F.R.D. 77, 78 (E.D.Pa. 1981) (treating head of the Defense Logistics Agency as a high-ranking government official). In the state government context, Morgan is similarly unconstrained.  See Buono v. City of Newark, 249 F.R.D. 469, 471 (D.N.J. 2008) (treating Mayor of Newark as a high-ranking government official subject to Morgan); Coleman v. Schwarzenegger, 2008 WL 4300437, *4 (E.D. Cal. Sept. 15, 2008) (treating Chief of Staff to California Governor as a high-ranking government official); Toussie v. County of Suffolk, 2006 WL 1982687, *1 (E.D.N.Y. July 13, 2006) (treating county executive as a high-ranking government official).  Much to Sensient's chagrin, there is no hard and fast rule when it comes to applying Morgan to a particular government official.  Cf. Byrd v. District of Columbia, --- F.R.D. ----, 2009 WL 1809901, at *4 (D.D.C. 2009) (acknowledging "no standard has been established for determining if an official is high-ranking").  The determination is done on a case-by-case basis.

In keeping with that standard, the magistrate judge properly analyzed Kenny's official position before finding it to be subject to Morgan.  The EPA Regional Administrator for Region 2 reports directly to the EPA Administrator, who in turn reports directly to the President of the United States.  The position is one of ten which report directly to the EPA Administrator.  Without error, the magistrate judge relied on these facts when he found Kenny to be a former high-ranking government official. Sensient II, 2009 WL 303689, at *6.  The magistrate judge also relied in part on Simplex

17

from the D.C. Circuit.  Sentient II, supra, at *6 (citing Simplex, 766 F.2d at 586-587).
There, the court extended Morgan to certain government officials in the Department of
Labor.  Simplex, supra, at 586.  One of those officials was the Regional Administrator of
OSHA.  Id. at 586-87.  The magistrate judge tacitly reasoned by analogy that if the
Regional Administrator of OSHA enjoys the protections of Morgan, so too should the
Regional Administrator of the EPA.  See Sentient II, supra, at *6.  That analogy fortified
his decision to apply Morgan to Kenny.[12]  Id.  His decision is without error.  Jane M.
Kenny, former EPA Regional Administrator for Region 2, is a former high-ranking
government official.  Accordingly, her deposition shall only be allowed upon a showing
of extraordinary circumstances.

### ii. Extraordinary Circumstances

Federal Rule of Civil Procedure 26(b)(1) provides in relevant part, "Parties may
obtain discovery regarding any nonprivileged matter that is relevant to any party's claim
or defense. . ."  Fed. R. Civ. P. 26(b)(1).  Depositions of parties and non-parties alike
serve as efficient tools in this discovery process.  They elicit key facts, thereby
progressing cases from complaint to settlement or judgment.  Attempting to balance the
need for broad discovery with the need to protect high-ranking government officials

---

[12]     Somewhat notably, the magistrate judge also relied on the fact that Region 2
encompasses 31 million residents.  Id.  Sentient questions the magistrate judge's reliance on this
factor.  Sentient deftly points out, "If this fact were relevant, then the Opinion and Order would
suggest that the EPA Regional Administrator for the more sparsely populated Region 8 might
not be (population of approximately 10 million according to
http://www.epa.gov/region08/about.htm)."  (Sentient Br. 19.)  The point is noted, but it does
not alter the Court's conclusion today.   If anything, reliance on this factor demonstrates the
magistrate judge's careful analysis of the totality of the circumstances before rendering a
decision on the status of Kenny under Morgan.  Given the presence of several additional factors
militating in favor of extending Morgan to the position of EPA Regional Administrator, the
Court finds no error in the magistrate judge's ruling.

from nettlesome deposition taking, <u>Morgan</u> stands for the proposition that high-ranking government officials should not be subject to the taking of depositions absent extraordinary circumstances. <u>See</u> <u>Bogan v. City of Boston</u>, 489 F.3d 471, 423 (1st Cir. 2007).

Like the determination of whether an individual is a high-ranking government official, the determination of whether extraordinary circumstances exist is done on a case-by-case basis. This case-by-case approach applies to both current and former high-ranking government officials. Several factors assist the court's determination. For example, in this District, a five-prong inquiry has developed to determine whether extraordinary circumstances exist in a given case. <u>See</u> <u>Buono v. City of Newark</u>, 249 F.R.D. 469, 471 n.2 (D.N.J. 2008). Consistent with that inquiry, a party seeking the deposition of a high-ranking government official must show: (1) the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that cannot reasonably be obtained from other sources; (3) the testimony is essential to the case at hand; (4) the deposition would not significantly interfere with the ability of the official to perform his government duties; and (5) the evidence sought is not available through less burdensome means or alternative sources. <u>See</u> <u>Buono</u>, 249 F.R.D. at 471 n.2.

Prongs (1), (2), and (5) of the Buono <u>inquiry</u> collaboratively direct the court's attention to a factor consistently present in a finding of extraordinary circumstances–personal involvement or knowledge. Courts have time and again allowed the deposition of current and former high-ranking government officials upon a showing that the official has personal involvement or knowledge relevant to the case.

See, e.g., Energy Capital Corp., v. United States, 60 Fed. Cl. 315, 318 (Fed. Cl. 2004)
(permitting videotaped deposition of former Secretary of Housing and Urban
Development upon showing of first-hand personal knowledge); see also Toussie, 2006
WL 1982687, *2 ("Generally, the depositions of former government officials are granted
where the official has been personally involved in the events at issue in the case." (citing
Gibson v. Carmody, 1991 WL 161087, at *2 (S.D.N.Y. Aug. 14, 1991) (permitting
deposition of former New York Police Commissioner upon showing of personal
involvement)).  The converse is also illustrative; courts have disallowed depositions of
high-ranking government officials upon no showing of personal involvement or
knowledge.  See, e.g., Stagman v. Ryan, 176 F.3d 986, 994 (7th Cir. 1999) (affirming
district court's denial of request to depose Illinois Attorney General ("AG") where AG
was neither personally involved nor the "ultimate decision-maker" in the subject matter
of the dispute); Buono, supra, at 471 (disallowing deposition of Mayor of City of Newark
where Mayor was neither personally involved in the events surrounding the dispute nor
had personal knowledge that could not be gleaned from other sources).

 The Eastern District of California observes that courts also allow depositions of
high-ranking government officials "when there are allegations that the official acted with
improper motive *or* acted outside the scope of his official duty."  Coleman v.
Schwarzenegger, 2008 WL 4300437, *3 (E.D. Cal. Sept. 15, 2008) (emphasis added).
But here again, personal involvement or knowledge is key.  In either circumstance, the
official has personal involvement in or knowledge of the subject events because the
official has allegedly "acted" in some fashion.  The extent of the personal involvement or
knowledge is plainly evident in the district court's string cite, wherein the court cites

three notable cases:

> See, e.g., Bagley v. Blagojevich, 486 F. Supp. 2d 786, 789 (C.D. Ill. 2007
> (permitting deposition where plaintiffs alleged that the Governor ordered
> their jobs eliminated in retaliation for their attempt to organize on behalf of
> a union that was a rival to a group that had contributed heavily to his election
> campaign); Detoy v. City and County of San Francisco, 196 F.R.D. 362, 370
> (N.D. Cal. 2000) (permitting deposition where the chief of police took the
> 'unusual' step of intervening personally in disciplinary proceedings against
> a police officer to ensure lighter discipline for the officer); Virgo Corp. v.
> Paiewonsky, 39 F.R.D. 9, 10 (D.V.I. 1996) (permitting deposition of a
> Governor accused of taking arbitrary actions as a result of Congressional
> pressures and personal friendships).

Coleman, supra, at *3.

Although personal involvement in or knowledge of the subject events seems to be a necessary prerequisite for deposing a high-ranking government official, it is not sufficient.  A party must still show that the information cannot be gleaned from other sources or achieved through less burdensome means.  See Buono, supra, at 471 n.2; see also Toussie, 2006 WL 1982687, at *1 ("[D]epositions of high ranking government officials should only be permitted if that official has unique personal knowledge that cannot be obtained elsewhere.").  Additionally, the information sought should form a key component of the party's claim or defense.  Buono, supra, at 471 n.2.  These factors help round out the five-prong inquiry in Buono.

In the present case, the magistrate judge performed the Buono inquiry and concluded that Kenny should not be immediately deposed.  Sensient II, 2009 WL 303689, at *7-*8.  The magistrate judge found no extraordinary circumstances sufficient to justify Kenny's deposition.  Id. at *8.  Sensient challenges that ruling on two main grounds.  First, Sensient contends that Jane M. Kenny is essential to its case.  Second, Sensient contends the magistrate judge gave insufficient weight to the personal role that

21

Kenny played at the General Color Site. This Court agrees with Sensient on both grounds. For the sake of clarity, however, this Court analyzes each of the <u>Buono</u> factors discussed by the magistrate judge.

The magistrate judge found the first prong counseled against deposing Kenny. He reasoned that Sensient failed to carry its burden of showing that it could not obtain the information it sought from Kenny from another source. <u>Sensient II</u>, <u>supra</u>, at *7. He consequently directed Sensient to investigate "rank and file" personnel before resuming its pursuit to depose Kenny. <u>Id.</u> According to the magistrate judge, "Bald assertions of bad faith are insufficient to require agency officials to submit to depositions." <u>Id.</u>

To be sure, this Court agrees with the magistrate judge's assessment of bald assertions of bad faith. They clearly are insufficient to require agency officials to submit to depositions. Yet, armed with the following facts, the Court must question the characterization of Sensient's allegations as "bald assertions." Kenny, as Regional Administrator, approved three requests between February 2002 and February 2003 to exponentially increase EPA spending on the General Color Site above the $2 million threshold. She also communicated with then-C.O.O. of Camden, Melvin Primas, on several occasions regarding potential cleanup activities at the Site. Finally, she is specifically named in the Rosoff e-mail, wherein Rosoff observes that this job could have never exceeded the $2 million/twelve month limit without her help. Such facts demonstrate her personal involvement in and knowledge of the Site. They imbue enough substance into Sensient's contentions to render them much more than "bald assertions".

The Court also questions the direction to Sensient by the magistrate judge to

22

investigate rank and file personnel before resuming its pursuit to depose Kenny.

Decisions regarding site designations or cleanup strategy, including those decisions

which exponentially increase federal funding at the Site, are decisions made by high-

level policy makers, not low-level rank and file employees.  At a law firm, for example, a

senior partner designates the legal strategy or theory best suited for achieving the

client's goal.  He may then delegate the execution of the strategy to a senior associate,

who in turn delegates specific projects or work assignments to middle-level or low-level

associates and employees.  These rank and file employees, several times removed from

the key strategy decisions at the law firm, complete the assignments consistent with the

given direction.  To ask them why the firm pursued one strategy over another is an

exercise in futility.  Similarly here, the rank and file EPA employees are several times

removed from the key decisions made regarding the Site.  Other than testifying to either

the average length of time it normally takes to clean up a site of this size or how much

equipment is typically used, it is difficult to imagine what relevant information such

rank and file employees can provide.  While these employees may indeed be able to

testify as to the "nuts and bolts" issues, see Sensient II, supra, at *7, they simply are not

privy to the decision-making processes occurring at the managerial levels of the EPA.

Therefore, in the unique context of this particular case, the magistrate judge's direction

essentially sent Sensient on an ineffective mission.

　　　This point ties in nicely with the second prong of the Buono inquiry.  The

magistrate judge reasoned that Sensient failed to establish "that Kenny is the only

reasonable source for the requested information."  Id.  at *8.  The magistrate judge

opined in relevant part, "The fact that Kenny may have signed an official appropriation

request is not in and of itself a sufficient basis to take her deposition." Id.  Much like the

statement about bald assertions, this statement, read in isolation, is true.  The

authorities support it.  Id. (citing Buono, 249 F.R.D. at 470, n.2 (noting "an official's *pro*

*forma* approval of a matter without showing deliberations about it, will not justify

ordering a deposition. . ."); Coleman, supra, at *4 ("When the Governor acts within the

parameters of his official duties by, for example, issuing orders . . ., it is likely that other

lower-ranking members of his office or administration would have relevant information

about his actions.").  But the appropriation requests should not be viewed in isolation.

The extent of Kenny's involvement goes beyond a mere rubber stamp on a form.  She is

named by Rosoff as a crucial person in his e-mail, which is worth repeating in its

entirety:

> It was a remedial site - I just completed with removal funds over a 6 year
> period (a very fast RI/FS-RD/RA but a very slow removal).  The secret is
> spread it out and they don't realize how much your spending - 9 million is a
> drop in the bucket for you but here I am looked at like I have 3 heads.
> Preremedial didn't want to touch it so we did it ourselves.  Normally I could
> have never done this with Dick as a boss but with the support of *Jane* and
> Anthony he couldn't say no.  There is no real 2 million dollar limit so I have
> learned.  I'll be looking in NY this spring.

(Dkt. Entry No. 109-2, Ex. D) (emphasis added).  She also had several communications

via letter with C.O.O. Primas.  Primas had asked Kenny whether the EPA had plans to

address buried hazardous waste under the General Color Site.  Kenny responded:

> EPA has no plans to address known buried hazardous waste beneath the
> buildings on the Site at this time . . . However, should the City of Camden
> demolish the buildings and remove the demolition debris, including the
> building foundations, then this buried waste would be exposed at the ground
> surface.  EPA would be willing to investigate the extent of this contamination
> and perform appropriate cleanup activities to mitigate the risks to public
> health and the environment.

[Dkt. Entry No. 66-4, Ex. C.]  These facts demonstrate Kenny's involvement at the Site encompassed more than appropriation requests.  The magistrate judge committed error by narrowing the focus solely to Kenny's appropriation requests.  While in and of itself the appropriation requests may be insufficient, taken as part of the whole, they paint a different picture that compels another result.[13]

Regarding the third prong of essentiality, the magistrate judge concluded that Kenny's testimony is not essential to Sensient's case.  Id. at *8.  He stated, "Sensient's defense is that the EPA's actions were not consistent with CERCLA and the applicable regulatory requirements.  Sensient can pursue this defense without Kenny's immediate deposition."  Id.

On this point, some background is necessary.  In Sensient I, this Court approved certain affirmative defenses for Sensient in this cost-recovery action.  See 580 F. Supp. 2d at 389-90.  The first defense–"Removal versus Remedial Action"–essentially challenges the Government's recoverability of response costs on the basis of inconsistencies with the National Contingency Plan under CERCLA.  Id. at 382.  The second defense–"Time and Cost Limitations for Response Action"–essentially challenges those costs exceeding the $2 million or twelve month limitation imposed on removal sites under CERCLA.  Id. at 386.  These defenses were approved on August 12, 2008.  [Dkt. Entry No. 53.]  Shortly thereafter, the Rosoff e-mail surfaced during

---

[13]     Kenny disputes Sensient's nefarious characterization of her involvement at the Site.  For example, she notes that the three spending requests she approved occurred more than one year before she communicated with Primas via letter.  (Kenny Br. 7.)  The final request she approved occurred two months prior to such communication.  (Id.)  Kenny therefore challenges Sensient's arguably vague chronology, which in her view, paints her as "conspiring all along with the City of Camden under the guise of an EPA removal action."  (Id.)  At no point does she challenge the extent of her involvement, however.

discovery.  As noted above, that e-mail names Kenny as a crucial person in executing the cleanup at the Site.  Rosoff thanks Kenny for her help in exceeding the $2 million limit.  This information goes to the crux of Sensient's approved affirmative defenses; "the EPA completed a remedial action at the Site–but called it a removal action and paid for it with removal action funds–in order to facilitate redevelopment that would not otherwise have been eligible for taxpayer funds per the NPL." (Sensient Br. 11.)  Kenny played several key roles in this case as a non-party which clearly demonstrate her essentiality to Sensient's defense.  On this point, therefore, the Court finds error in the magistrate judge's finding.

The fourth Buono factor asks whether the deposition will significantly interfere with the ability of the official to perform his or her duties.  Buono, 249 F.R.D. 469, 471, n.2.  Here, the magistrate judge correctly observed, "[I]t is obvious that since Kenny is not a current government employee her deposition will not interfere with any present government duties."  Sensient II, supra, at *8.  He nevertheless found this fourth prong counseled against taking her deposition because of the other rationales supporting Morgan.  Id.  Specifically, the magistrate judge envisioned current officials might be "chilled in their duties by the thought that their depositions may indiscriminately be taken after they leave government service."  Id.

Although the magistrate judge raised a valid concern, he improperly broadened the focus of the fourth prong of the Buono inquiry.  In doing so, the magistrate judge cited a reason against taking depositions of former government officials *generally*. The focus must be on the interference, if any, the deposition will have on the *specific* official's ability to perform his or her duties.  The magistrate judge's approach would

26

have the effect of turning this prong into a throw-away, consistently tipping the scales against the taking of any deposition of any former government official. On the other hand, this Court acknowledges that applying this prong as it currently reads has the opposite effect. No deposition will ever interfere with the duties of a former high-ranking government official because the official is no longer in office.

At this point, it is important to note that the <u>Buono</u> inquiry arose from a case involving a *current* high-ranking government official. <u>See</u> <u>Buono</u>, 249 F.R.D. at 470. Specifically, the plaintiffs in that case sought to depose Mayor Cory Booker of Newark, New Jersey. <u>Id.</u> The magistrate judge denied the request for an order to compel Mayor Booker's deposition. <u>Id.</u> at 472. Relying on the five-prong inquiry, the magistrate judge reasoned:

> First, there is no allegation that the deponent played any role in the events about which plaintiff complains. The deponent did not work for the City of Newark at the time of the alleged activity and played no role in the alleged retaliatory activity. Thus, unlike the case involving a sitting President who was sued for actions in which he allegedly engaged before his presidency, the deponent was not an alleged actor in any of the events, potentially liable for any wrongdoing, or even in a position privy to discussions. . .

<u>Buono</u>, <u>supra</u>, at 471 n.2. Due to these reasons, and in part because Mayor Booker was in office at the time of the litigation, the magistrate judge ordered a "less disruptive" means of securing discovery; Mayor Booker was ordered to provide a certification identifying the extent of his knowledge of the subject events. <u>Id.</u>

Of course, the facts of the instant case are markedly different from <u>Buono</u>. Sensient contends Kenny played a key role in the EPA cleanup at the Site. Kenny worked for the EPA at the time of the events, and had an established relationship with the City of Camden due to her time spent at the Department of Community Affairs.

27

(Sensient Br. 5.)  And significant for the fourth prong of the Buono inquiry, Kenny is no longer the EPA Regional Administrator.  A deposition will not interfere with her duties.  As a result, there is no need for a "less disruptive" means of securing relevant discovery.  A deposition is consequently appropriate.[14]

Finally, with respect to the fifth Buono prong, the magistrate judge reasoned that Sensient failed to establish that the requested information is not available through alternative or less burdensome means.  Id.  Again, because Kenny is a former high-ranking government official, sitting for a deposition is no more burdensome than it would be for any other private citizen.  With respect to alternative means, this Court has

---

[14]     Because the Buono inquiry arose from a case involving a current high-ranking government official, its translation to former high-ranking government officials is not a seamless one.  Nevertheless, it provides a workable framework.  This Court recognizes three distinct rationales that support Morgan: (1) protecting the mental decision-making process; (2) ensuring officials can perform their duties without constant interruption; and (3) encouraging individuals to serve in public office.  In the case of a *current* high-ranking government official, each of these important rationales is present.  In the case of a *former* high-ranking government official, however, only two rationales are present.  While the Court does not countenance the indiscriminate use of depositions after an official leaves office, it does recognize that concerns regarding fulfillment of duties without interruption are no longer present once the individual leaves office.  As a result, one less impediment exists for a party who seeks to depose a former high-ranking government official.

The case of Clinton v. Jones provides a helpful analogy.  See 520 U.S. 681, 717 (1997) (Breyer, J., concurring).  At stake in that case was whether a private citizen could recover damages from a sitting President due to actions which arose prior to the President's assumption of office.  Id. at 684.  The Supreme Court answered in the affirmative.  Id. at 707-08.  In a Concurring Opinion, Justice Breyer discussed Thomas Jefferson's concerns that litigation might draw a President away from his critical constitutional duties.  Id. at 717 (Breyer, J., concurring).  The Justice reasoned, "That concern may not have applied to [a] case against a *former* President, but it is at issue in the current litigation."  Id.  Thus, Justice Breyer touched on the very idea discussed in this Opinion today.  Once the individual is no longer in office, he or she cannot be pulled from the duties of the office.

In the end, the Buono inquiry remains workable because even if the fourth prong consistently counsels in favor of deposing the former high-ranking government official, which it should, there remain four other prongs which a Court must first examine before granting a deposition request.  These prongs help stem the indiscriminate or arbitrary use of depositions on such officials.

already observed that the information sought by Sensient is not the type that can be gleaned from rank and file EPA employees.

In sum, consistent with the clearly erroneous or contrary to law standard of review, see Kounelis v. Sherrer, 529 F. Supp. 2d 503, 518 (D.N.J. 2008), this Court has a definite and firm conviction that a mistake has occurred. The magistrate judge committed reversible error by disallowing the deposition of Jane M. Kenny. The extent of her personal involvement, combined with her essentiality to Sensient's affirmative defenses and the inability of Sensient to procure information from other sources, all strongly counsel in favor of taking her deposition. Candidly, these are not run of the mill circumstances, and Sensient is not engaging in a fishing expedition. Kenny has provided more than a rubber stamp on appropriation requests. Wal-Mart Stores is instructive in this regard:

> [T]here comes a point when their involvement becomes less supervisory and directory and more hands-on and personal, that it is considered so intertwined with the issues in controversy that fundamental fairness requires the discovery of factual information held by the official by way of deposition.

Wal-Mart Stores, 2002 WL 562301, at *3. Such is the case here. Moreover, Coleman suggests that an allegation of improper motive, or an allegation that acts were performed outside the scope of official duties, could represent extraordinary circumstances sufficient to overcome Morgan protection. See Coleman, 2008 WL 4300437, at *4. Here, Sensient essentially contends just that. Sensient contends the EPA "conducted unauthorized remedial activities at the site under the guise of a removal to circumvent the statutory limits on removal actions." (Sensient Br. 7.) As such, this case presents unique circumstances that justify the taking of Kenny's deposition. The

ruling of the magistrate judge granting in part and denying in part Kenny's motion to quash is reversed.  Kenny shall submit to the taking of a deposition.  She shall be given fair notice of the timing and location of the deposition.[15]

### 3. David Rosoff

The magistrate judge granted in part and denied in part Rosoff's motion for a protective order.  Sensient II, supra, at *9.  Specifically, the magistrate judge "reserved decision on whether Rosoff's deposition will be stayed pending the final resolution of his immunity defense."  Id. at *8.  He relied on his wide discretion as a magistrate judge to support this ruling.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (holding that until qualified immunity question is resolved, "discovery should not be allowed."); accord Thomas v. Independence Township, 463 F.3d 285, 291 (3d Cir. 2006).  But the magistrate judge hedged, and further opined:

> [T]he Court is not foreclosing the possibility that future developments may demonstrate that Rosoff's deposition is imperative even before it is finally determined whether he will be joined.  *Thus, at this time the Court is not foreclosing the possibility that Rosoff may be deposed on relevant issues even before his immunity defense is finally resolved.*

Sensient II, supra, at *8 (emphasis added).

---

[15]     One additional matter is noteworthy.  The magistrate judge wrote, "It is self-evident that Kenny should know whether she will be a named party in the case before she is deposed.  The nature of Sensient's allegations will impact her deposition preparation and perhaps even her choice of counsel."  Sensient II, supra, at *5.  This Court fails to see why it is self-evident that Kenny should know whether she will be a named party prior to her deposition.  Indeed, research fails to find a case where a Court has stayed a deposition until the deponent knows whether he or she will be a named party.  A determination of qualified immunity, of course, is an entirely different situation.  Courts are encouraged to stay discovery until qualified immunity determinations are made, particularly at the early stages of litigation.  See Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  But in those cases, the person or entity asserting qualified immunity is already named in the litigation.  Here, the deponent is not a named party.  Although the mere fact that she might eventually be named may affect her choice of counsel, it should not affect her answers at deposition.

Sensient relies on Federal Rule of Civil Procedure 26(b)(1) to support its argument that Rosoff should be deposed.  (Sensient Br. 7.)  Sensient contends that "regardless of the outcome of the qualified immunity analysis– Rosoff must be deposed. . ."[16]  (Sensient Br. 8.)  Sensient contends that even if its <u>Bivens</u> claim against Rosoff is rejected, <u>see</u> Part V.B, <u>infra</u>, Rosoff's deposition will remain essential to the litigation. (<u>Id.</u>)  This Court agrees.

David Rosoff is uniquely situated in his capacity as the On-Scene Coordinator for the EPA at the General Color Site to provide relevant information to Sensient pursuant to Federal Rule of Procedure 26.  Rosoff was involved with the Site beginning in 1998. Moreover, Rosoff authored the 'smoking gun' e-mail that serves as the catalyst for the discovery motions now on appeal.  Indeed, the magistrate judge acknowledged as

---

[16]     Sensient relies on <u>Alice L. v. Dusek</u>, 492 F.3d 563 (5th Cir. 2007) (per curiam), in support of this contention.  In that case, the appellant sought to stay all district court proceedings pending her interlocutory appeal of the district court's denial of her qualified immunity claim–asserted in defense of a § 1983 action.  <u>Dusek</u>, 492 F.3d at 564.  Essentially, the appellant did not want to answer interrogatories or produce certain documents related to a separate claim that was asserted against her co-defendant.  <u>Id.</u>  As such, she sought a stay of the entire case.  <u>Id.</u>  The Fifth Circuit reasoned, "Although qualified immunity is an entitlement to be free from the burdens of time-consuming pre-trial matters and the trial process itself, it is a right to immunity from certain claims, not from litigation in general."  <u>Id.</u> at 565 (quoting <u>Williams v. Brooks</u>, 996 F.2d 728, 730 n.2 (5th Cir. 1993); <u>Behrens v. Pelletier</u>, 516 U.S. 299, 312 (1996)) (internal quotations omitted).

Sensient relies on this language, even though the issue in that case is distinct from the issue in this case.  Attempting to square the two, Sensient contends that it is entitled to depose Rosoff to test the veracity of the government's complaint and to establish its affirmative defenses.  (Sensient Br. 9.)  This should be the result, Sensient contends, "regardless of whether that discovery overlaps with discovery pertaining to Sensient's <u>Bivens</u> claims against Rosoff." (<u>Id.</u>)

The Court agrees with Sensient's general proposition that it is entitled to depose Rosoff to test the veracity of the Government's complaint and to establish its affirmative defenses.  But Sensient's reliance on <u>Dusek</u> is misplaced.  The facts and procedural posture are far too removed from the instant case to warrant deference.

much–""Rosoff clearly has relevant personal knowledge regarding the Site." <u>Sensient II</u>, <u>supra</u>, at *8.  His involvement at the Site is even more extensive than Kenny's.  If she is to be deposed, it follows <u>a fortiori</u> that he is to be deposed.

In reversing the magistrate judge, the Court observes the unique posture of the January Opinion and Order.  That decision came just one month prior to the decision regarding Sensient's proposed third-party claims which potentially could have made Rosoff a named party in the litigation.  Perhaps this unique posture accounts for the magistrate judge's ruling reserving decision on Rosoff until a determination is made on qualified immunity, yet opining he may be deposed prior to a determination on qualified immunity.  Whatever the case may be, Sensient was entitled to establish its defenses in this cost recovery action.  No circumstances counsel the further delay of his deposition.  Accordingly, David Rosoff shall submit to the taking of a deposition.  He shall be given fair notice of the timing and location of the deposition.  The magistrate judge's ruling granting in part and denying in part David Rosoff's motion for a protective order is reversed.

### B. Motion for Leave to Amend its Responsive Pleading

Sensient next appeals the February 13, 2009 Opinion and Order denying Defendant its motion for leave to amend its responsive pleading.  Sensient seeks to add a counterclaim against the Government and certain officials, to assert third-party <u>Bivens</u> claims, and to add affirmative defenses.[17]  The magistrate judge denied that motion on

---

[17]   The magistrate judge delineated the eight requests of Sensient in its motion to amend:

    1.    An order declaring the EPA and its officials exceeded and violated their statutory authority and failed to perform their nondiscretionary

three principle grounds: (1) the court lacked jurisdiction over the proposed counterclaim; (2) Sensient's third party complaint was procedurally and substantively improper; and (3) Sensient's proposed new affirmative defenses were invalid.  See Sensient III, 2009 WL 394317, at *1.

Sensient contests the magistrate judge's rulings.  Sensient contends on appeal that the Court has jurisdiction over its citizen suit claim.  (Sensient Br. 14.)  As its bases

---

duties under CERCLA;

2.    Preliminary and permanent orders enjoining the EPA and its agents from authorizing, prosecuting, or continuing to prosecute any action against Sensient for costs incurred by the United States in connection with the Site;

3.    An award of damages to Sensient, against the EPA, incurred as a result of the EPA's violations of its statutory authority and failing to perform its nondiscretionary duties under CERCLA;

4.    An order declaring Third Party Defendants, Kenny, Rosoff, and certain unknown EPA officers, acting in their official capacities as government officials, knowingly violated Sensient's Due Process rights;

5.    An order of judgment in favor of Sensient and against Third Party Defendants personally in an amount sufficient to compensate Sensient for monetary damages as a result of Third Party Defendants violating Sensient's Due Process rights;

6.    As award of costs and disbursements, including attorney and expert fees;

7.    Any other relief deemed by the Court to be just and equitable under the circumstances under the circumstances; and

8.    An order of judgment in its favor and denying all relief sought by the United States, a dismissal of the United States' Complaint against Sensient with prejudice, and for such other and further relief as the Court deems proper.

Sensient III, 2009 WL 394317, at *2 (citing Sensient Proposed Am. Answer.)

for jurisdiction, Sensient contends that the EPA and its officials violated four nondiscretionary duties: (1) the nondiscretionary duty to limit the length and cost of removal actions; (2) the nondiscretionary duty to not compile a false or misleading administrative record; (3) the nondiscretionary duty to not violate Sensient's constitutional Due Process rights; and (4) the nondiscretionary duty to not deliberately create an increased risk to the public health.  (Sensient Br. 14-26.)

The Government observes that Sensient has dropped a fifth proposed nondiscretionary duty as construed under the False Statements Act, see 18 U.S.C. § 1001, for purposes of appeal.  (Gov't. Br. 7 n.3.)  Originally, Sensient contended that the EPA had a separate nondiscretionary duty to create an administrative record that accurately reflects the basis for its actions, see 40 C.F.R. § 300.800, and that the EPA had a separate nondiscretionary duty to not compile a false or misleading administrative record under the False Statements Act.  See Sensient III, 2009 WL 394317, at *4.  While it is true that Sensient no longer relies on the False Statement Act to construe an independent or separate nondiscretionary duty under CERCLA, Sensient still maintains that the EPA had a nondiscretionary duty to not compile a false or misleading administrative record.  Sensient, therefore, combines the two proposed nondiscretionary duties into one nondiscretionary duty on appeal.

Sensient also contends this Court has jurisdiction to review its Due Process claims under the Administrative Procedure Act ("APA").  (Sensient Br. 26.)  That statute grants courts authority to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  See 5 U.S.C. § 706.  With respect to the third-party complaint, Sensient contends

that it comports with the spirit of Federal Rule of Civil Procedure 14.  (Sensient Br. 28-30.)  Accordingly, Sensient contends it asserts a valid Bivens claim.  (Sensient Br. 30.)  In its view, the "unlawful, unconstitutional and outrageous behavior by government officials" in this case is precisely the type of behavior that a Bivens action is meant to deter.  (Sensient Br. 31.)  Finally, Sensient contests the magistrate judge's rejection of its proposed unclean hands defense.  (Sensient Br. 36.)  Sensient contends that the affirmative defense of unclean hands is not futile given the "extraordinary circumstances" of this case.  (Sensient Br. 36-39.)  For these reasons, Sensient contends the magistrate judge committed reversible error in his February Opinion and Order.

In response, the Government contends that the magistrate judge's decision denying Sensient's motion for leave to amend its responsive pleading was neither clearly erroneous nor contrary to law.  (Gov't. Br. 4.)  The Government contends that CERCLA's citizen suit provision does not confer jurisdiction over Sensient's proposed counterclaim.  (Gov't. Br. 5.)  In its view, Sensient's proposed nondiscretionary duties, as well as the alleged breaches thereof, do not overcome the limited waiver of sovereign immunity provided in the citizen suit provision of CERCLA.  Similarly, the Government contends that the APA does not confer jurisdiction over Sensient's proposed counterclaim.  (Gov't. Br. 20.)  The Government contends that the APA only applies when there is no other adequate remedy available.  (Id.)

With respect to Sensient's proposed Bivens claims against the EPA and certain EPA officials, those claims are futile in the Government's view.  (Gov't. Br. 23.)  The Government contends, consistent with the magistrate judge's ruling, that the Bivens action is procedurally and substantively futile.  (Gov't. Br. 23-28.)  Finally, the

Government contends that the proposed defense of unclean hands is unavailable to Sensient. (Gov't. Br. 28-9.) For these reasons, the Government seeks affirmance of the magistrate judge's February Opinion and Order.

<u>1. Jurisdiction Under CERCLA</u>

This Court finds no reversible error in the magistrate judge's ruling regarding the limited waiver of sovereign immunity under CERCLA. It is well settled that "the United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980) (quoting <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941)). Any waiver of sovereign immunity is strictly construed and limited to the terms "expressed in statutory text." <u>See</u> <u>Gomez-Perez v. Potter</u>, --- U.S. ----, 128 S. Ct. 1931, 1942-43 (2008).

Regarding CERCLA, the relevant provision regarding waiver of sovereign immunity is found in 42 U.S.C. § 9659(1)-(2). That Section provides in relevant part:

> [A]ny person may commence a civil action on his own behalf (1) against any person (including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter . . . or
>
> against the President or any other officer of the United States (including the Administrator of the [EPA] and the Administrator of the ATSDR) where there is an alleged failure of the President or of such other officer to perform any act or duty under this chapter . . . which is not discretionary with the President or such other officer.

<u>See</u> 42 U.S.C. § 9659(a)(1)-(2). The magistrate judge properly read that provision as providing three elements to state a claim for relief–"(1) the existence of a

36

nondiscretionary duty, (2) enacted pursuant to CERCLA and (3) that the Administrator failed to comply with the duty." See Sensient III, 2009 WL 394317, at *3. This view comports with the relevant case law. See, e.g., Fairview Township v. EPA, 773 F.2d 517, 525 (3d Cir. 1985) ("District court jurisdiction over citizens' suits depends on the existence of a duty alleged to be nondiscretionary with the Administrator; if no nondiscretionary duty exists, then neither can a citizens' suit."); see also State of South Carolina ex rel. Medlock v. Reilly, No. 91-3090, 1992 WL 409971, at *2 (D.D.C. May 7, 1992) ("[P]laintiff must allege the existence of a nondiscretionary duty under CERCLA, and she must also allege that the President or federal officer has failed to comply with that duty."). As a result, the Court finds no reversible error with respect to the magistrate judge's application of CERCLA's citizen suit provision to Sensient's proposed counterclaim.

The next issue is the existence or non-existence of Sensient's proposed nondiscretionary duties. Pointedly, "[a] nondiscretionary duty is one that is mandatory under the legislation[;]. . . suits will not extend to those areas of enforcement with regard to which the Administrator has discretion." Cascade Conservation League v. M.A. Seagle, Inc., 921 F. Supp. 692, 696 (W.D. Wash. 1996) (internal quotations omitted). The following sections review the proposed nondiscretionary duties as alleged by Sensient.

### a. Nondiscretionary Duty to Limit the Length and Cost of Removal Actions

Sensient contends the EPA has a nondiscretionary duty to limit removal actions to 12 months or $2 million. (Sensient Br. 14-18 citing Section 104(c)(1) of CERCLA, 42 U.S.C. § 9604(c)(1)). The magistrate judge correctly observed that this duty provides for

several exceptions or escape valves, which, if present, permit the EPA to exceed the 12 months or $2 million limit. <u>Sensient III</u>, 2009 WL 394317, at *4.  For example, if the EPA finds "there is an immediate risk to public health or welfare or the environment," <u>see</u> 42 U.S.C. § 9604(c)(1)(A)(ii), it may exceed the 12 month or $2 million limit.

Sensient acknowledges the existence of these statutory exceptions.  (Sensient Br. 15.)  Sensient also acknowledges that the EPA "prepared necessary documents to authorize EPA to exceed the $2,000,000 or 12 month duration limits on the removal activities at the Site." <u>Sensient III</u>, <u>supra</u>, at *4 (citing Proposed Am. ComGov't. at ¶ 31).  By Sensient's own admission, therefore, the EPA cannot be in breach of the proposed nondiscretionary duty because it complied with the statutory framework and found an exception to the $2 million or 12 month limits.  The magistrate judge recognized this fact and ruled accordingly.  He did so without error. <u>Id.</u>

Contrary to Sensient's contention, the mere fact that the statute includes the word 'shall' is not dispositive.  Given the numerous exceptions provided in the statute, "shall" essentially becomes "shall . . . unless".  Nevertheless, Sensient contends its position is supported by <u>Bennett v. Spear</u>, 520 U.S. 154 (1997).  In <u>Bennett</u>, the plaintiff brought a citizen suit under the Endangered Species Act by alleging the Secretary of the Interior failed to perform a nondiscretionary duty. <u>Id.</u> at 159-60.  Specifically, the plaintiff alleged that the Secretary failed to consider the economic impact of designating the critical habitat for the Lost River and Shortnose Sucker–types of freshwater fish. <u>Id.</u> at 172.  The Supreme Court examined the language of the statute, which stated in relevant part, "The Secretary *shall* designate critical habitat . . . on the basis of the best scientific data available and after taking into consideration the economic impact, . . . of

38

specifying any particular area as critical habitat." Id. (citing 16 U.S.C. § 1553(b)(2))
(emphasis added). Underscoring the word "shall", the Supreme Court recognized that
consideration of economic impact is a nondiscretionary duty. Id. ("[A]ny contention
that the relevant provision of 16 U.S.C. 1536(a)(2) is discretionary would fly in the face
of its text, which uses the imperative 'shall.' ").

Unlike the instant case, however, no exceptions followed the imperative language
in Bennett. As such, the Secretary always had to consider the economic impact of
designating a particular area as critical habitat. Here, by contrast, removal actions *shall*
be limited to 12 months or $2 million, *unless* one of the statutory exceptions apply. In
short, the statutory language is inapposite. The magistrate judge's ruling is therefore
affirmed.

### b. Nondiscretionary Duty to Not Compile a False or Misleading Record

Sensient contends the EPA has a nondiscretionary duty to not compile a false or
misleading record. (Sensient Br. 18-20.) The crux of Sensient's argument is that the
EPA's finding of an exception to exceed the 12 months or $2 million limit was based on
false certifications. (Sensient Br. 18-19.) According to Sensient, the EPA "deliberately
made a false administrative record with the purpose of creating a false basis for the
selection of its response action". (Id.)

The relevant regulation is 40 C.F.R. § 300.800(a). That regulation provides:

> The lead agency shall establish an administrative record that contains the
> documents that form the basis for the selection of a response action. The lead
> agency shall compile and maintain the administrative record in accordance
> with this subpart.

Reduced to its simplest form, Sensient's contention is as follows:  inherent in the duty to

create an administrative record is the duty to create an accurate administrative record.

Although the Court empathizes with Sensient in that the Government should not falsify documents to skirt the requirements of a statute, the magistrate judge did not commit reversible error by applying applicable precedent and finding that a potential plaintiff may not challenge the manner in which an agency performed a nondiscretionary duty. See Sensient III, supra, at *5 (citing Sun Enter., Ltd. v. Train, 532 F.2d 280 (2d Cir. 1976 ) (finding no jurisdiction under citizen suit provision where plaintiff challenged the manner in which the EPA performed a nondiscretionary duty); Scott v. City of Hammond, 741 F.2d 992 (7th Cir. 1984) (finding plaintiffs could not use citizen suit to challenge the content of the EPA's determinations)). This restriction on CERCLA's citizen suit provision is consistent with the doctrine of limiting waivers of sovereign immunity to the express words in the statute. See United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992) (holding that courts must strictly construe statutory waivers of sovereign immunity by not extending such waivers "beyond what the language requires.").

Here, Sensient's challenge essentially goes to the manner in which the EPA prepared its findings and reports on the Site. As the magistrate judge aptly observed:

> A court may, under a citizen suit provision, hold a defendant responsible for nonfeasance of a nondiscretionary duty, [but] the citizen suit provision does not allow for a judgment of malfeasance, such as a finding that the defendant made the wrong decision.

Sensient III, supra, at *5 (quoting Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs, 404 F. Supp. 2d 1015, 1021 (M.D. Tenn. 2005)). While Sensient understandably disagrees with the findings of the reports and the manner in which they assembled, Sensient

cannot seriously maintain that the EPA failed to comply with its statutory duty to compile an administrative record under 42 U.S.C. § 9604(c)(1).  Accordingly, Sensient's proposed nondiscretionary duty must fail because, in essence, it challenges the manner in which the EPA performed its duty.[18]  <u>Sensient III</u>, 2009 WL 394317, at *6.

Sensient attempts to counter this conclusion by distinguishing the above-cited cases.  It contends that those cases involved situations where the Government made an honest mistake in applying a statutory exception.  (Sensient Br. 15.)  Here, by contrast, Sensient contends that the EPA *deliberately* created a false or misleading record on which to base its decision that a statutory exception applied.  (<u>Id</u>. at 15-16.)  Although this contention makes sense, the Government astutely observes that CERCLA contains no scienter requirement.  (Gov't. Br. 9.)  Indeed, this Court found no authority importing a state of mind element into the citizen suit provision in CERCLA.  <u>See</u> 42 U.S.C. § 9659(a)(2).  In keeping with the limited waiver of sovereign immunity as expressed in the statute, this Court agrees with the Government.  As a result, this portion of the magistrate judge's February Opinion and Order is affirmed.

### c. Nondiscretionary Duty Not to Violate Constitutional Due Process Rights

Sensient next contends the EPA has a nondiscretionary duty not to violate its constitutional due process rights.  (Sensient Br. 20.)  The magistrate judge rejected this novel contention.  <u>Sensient III</u>, <u>supra</u>, at *9.  In doing so, he relied on the second

---

[18]     To the extent that the magistrate judge rejected Sensient's argument on the basis that it represents an implied duty, that portion of the Opinion is also without error.  The magistrate judge correctly observed that waivers of sovereign immunity "must be unequivocally expressed and cannot be implied."  <u>Sensient III</u>, 2009 WL 394317, at *7 (citing <u>United States v. Testan</u>, 424 U.S. 392, 399 (1976); <u>United States v. Skipper</u>, 781 F. Supp. 1106, 1111 (E.D.N.C. 1991)).

element necessary to state a claim for relief under CERCLA's citizen suit
provision–namely, any nondiscretionary duty under CERCLA must be enacted
"pursuant to" CERCLA.  Id. Because "the Due Process Clause of the Fifth Amendment
was not enacted pursuant to CERCLA," he reasoned, "Sensient cannot bring a citizen
suit alleging the EPA violated its due process rights." Id.  The magistrate judge's
reasoning is consistent with applicable case law as well as the limited waiver of
sovereign immunity expressed under CERCLA's citizen suit provision.  Accordingly, his
ruling on this issue is affirmed.

The due process claim is premised on Sensient's alleged untimely receipt of notice
of the removal action.  (Sensient Br. 22.)  The relevant regulation here is 40 C.F.R. §
300.415(a)(2).  That regulation provides:

> Where the responsible parties are known, an effort initially shall be made, to
> the extent practicable, to determine whether they can and will perform the
> necessary removal action promptly and properly.

40 C.F.R. § 300.415(a)(2).  The magistrate judge interpreted that regulation as
discretionary.  Sensient III, supra, at *9.  In doing so, he relied on the language–"*to the
extent practicable.*" Id. (emphasis added).  "This regulatory requirement is plainly
discretionary on its face," he reasoned, "because the regulation qualifies the EPA's duty
'to the extent practicable.'" Id.

Similar to its challenge above, see Part IV.B.1.a supra, Sensient contends this
interpretation reads out of the regulation the word "shall".  (Sensient Br. 22.)  This
contention is unavailing.  When used alone, "shall" is an imperative containing no room
in which to wiggle.  When used with qualifiers, however, shall essentially becomes "shall,
unless".  Here, "shall" is followed by qualifying language–"to the extent practicable."

42

The implication being, if it is not practicable, then an effort need not be made to notify potential responsible parties.  This conclusion is buttressed by 40 C.F.R. § 300.400(i)(3), which provides:

> Activities by the federal and state governments in implementing this subpart are *discretionary* functions.  This subpart does not create in any private party a right to federal response or enforcement action.  This subpart does not create any duty of the federal government to take any response action at any particular time.

Id. (emphasis added).  The magistrate judge relied in part on this regulation when he rejected Sensient's contention.  In light of the foregoing, the magistrate judge's interpretation of the statute is not clearly erroneous.

Sensient persists.  (Sensient Br. 24.)  According to Sensient, "The Magistrate apparently read the first sentence of this regulation to mean that to the extent any regulation contains an express requirement that EPA 'shall' take certain action, the EPA may disregard the express requirement as 'discretionary.' "  (Id.)  But as the Government correctly points out, (Gov't. Br. 16), the magistrate judge did not make such a broad holding.  Instead, he read the qualifying language of § 300.415(a)(2) together with the explanatory language of § 300.400(i)(3), and concluded that timely notification is discretionary.  He did so without error.

Sensient now relies on 42 U.S.C. § 9613(k)(2)(D) to advance its contention.  Section 9613(k)(2)(D) provides that "[t]he President shall make reasonable efforts to identify and notify potentially responsible parties as early as possible before selection of a response action."  Id.  Sensient contends this language is clearly mandatory.  (Sensient Br. 24.)  Sensient contrasts Section 9613(k)(2)(D) with 40 C.F.R. § 300.415(a)(2), supra, and concludes that statutory mandates trump discretionary regulations.  (Id.)  It follows,

Sensient contends, that the EPA had a nondiscretionary duty to notify it before selection of a response action.  (Id.)

In response, the Government observes that the magistrate judge did not address this issue in his February ruling because Sensient failed to advance this contention below.  (Id. at 18.)  The Government accordingly asks the Court to disregard Sensient's contention brought "for the first time in its Appeal."  (Id.)  This Court agrees.  Like the Third Circuit which "generally refuse[s] to consider issues that are raised for the first time on appeal," see Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932 (3d Cir. 1976), this Court will not review issues that were not brought before the magistrate judge unless a "gross miscarriage of justice would occur".  Id.  This case does not present such dire circumstances.  At this posture, the Court's review is confined to those rulings issued by the magistrate judge in his February Opinion and Order.

<u>d. Nondiscretionary Duty to Not Deliberately Create<br>an Increased Risk to the Public Health</u>

Lastly, Sensient contends that the EPA had a nondiscretionary duty "to not knowingly and willfully . . . create an increased risk to the public health in order to create an 'emergency' to further its unauthorized response actions. . ."  (Sensient Br. 25.) In advancing this contention, Sensient cites no statutory authority or case law.  Instead, Sensient relies on the Kenny letter to Primas:

> Notwithstanding its determination that this buried and covered waste posed no threat to public health or the environment, EPA then asked the City of Camden to essentially create such a risk by entering the General Color Site and destroying the buildings, thereby exposing a purported risk to public health and the environment.

(Sensient Br. 26.)  Sensient contends the EPA lacks discretion to create an increased risk

44

to public health.  (Id.)

The United States responds to this contention in three parts:

(1) at base this is a challenge to the manner in which the EPA carried out its response action, which is discretionary; (2) jurisdiction under 42 U.S.C. 9659(a)(2) cannot be based on the breach of an implied duty; and (3) accepting this argument risks enlarging the scope of the provision's waiver of sovereign immunity to encompass any case in which a plaintiff alleges a response action is inadequately protective.

(Gov't. Br. 19.)  This response is persuasive.  Once again, Sensient is challenging the manner in which the EPA responded to the Site.

Moreover, 42 U.S.C. § 9604(a)(1) provides, "[T]he President may respond to any release or threat of release *if in the President's discretion*, it constitutes a public health or environmental emergency and no other person with the authority and capability to respond to the emergency will do so in a timely manner."  Id. (emphasis added).  In light of this statute, the magistrate judge rejected Sensient's contention that this duty is nondiscretionary.  Sensient III, supra, at *8.  Without reversible error, the magistrate judge held that "[t]he EPA's decision to engage in a response action at the Site was a discretionary act."  Id.  The Court therefore affirms this portion of the February Opinion and Order.

### 2. Jurisdiction Under the APA

Sensient contends this Court has jurisdiction to review its due process claims pursuant to the Administrative Procedure Act ("APA").  (Sensient Br. 26.)  The APA authorizes courts to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706.  Relying on Bennett v. Spear, 520 U.S. 154, 175 (1997), Sensient contends

the APA applies to any final agency decision for which there is no other adequate remedy at law.  (Sensient Br. 26.)  This rule is subject to two exceptions: (1) if judicial review is statutorily precluded; or (2) if such agency decisions are specifically committed to the agency's discretion by law.  See Bennett, 520 U.S. at 175 (citing 5 U.S.C. § 701(a)).

The magistrate judge rejected Sensient's claim that the APA provides jurisdiction for its due process claims.  See Sensient III, supra, at *9-*10.  Correctly interpreting the APA as a statute of last resort, the magistrate judge briefly discussed the intent of the Act:

> When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies.

Id. at *9 (quoting Bowen v. Massachusetts, 487 U.S. 879, 903 (1988)).  The magistrate judge then relied on a recent case from the District of New Jersey.  See Sensient III, supra, at *10 (citing United States v. 662 Boxes of Ephedrine, 590 F. Supp. 2d 703, 708-09 (D.N.J. 2008)).  In 662 Boxes of Ephedrine, the defendants brought a counterclaim against the Government in a forfeiture action, seeking, inter alia, declaratory relief under the APA.  Id. at 704.  The district court dismissed the APA claim, holding that "their counterclaims for declaratory relief pursuant to the APA can be achieved through the underlying forfeiture proceeding, and are superfluous."  Id. at 709.  Because CERCLA already provides adequate remedies for Sensient, it follows that jurisdiction under the APA is similarly not warranted.

For example, here, the underlying proceeding is a cost recovery action under CERCLA.  Pursuant to 42 U.S.C. § 9613(j)(4), a court "may disallow costs or damages" if

46

it finds procedural errors "so serious and related to matters of such central relevance to the action that the action would have been significantly changed had such errors not been made."  Additionally, under Section 9613(j)(3), if a court determines that the EPA's selection of a response action was "arbitrary and capricious or otherwise not in accordance with law," said court "shall award only the response costs or damages that are not inconsistent with the national contingency plan," as well as other relief "consistent with the National Contingency Plan."  42 U.S.C. 9613 (j)(3).  The magistrate judge correctly observed that "supplemental materials may be considered by the court" depending on the "adequacy" of the "response action taken."  See Sensient III, supra, at *10 (citing 42 U.S.C. § 9613(j)(1)).  These provisions provide adequate remedy such that application of the APA is unnecessary and superfluous.  Cf. 662 Boxes of Ephedrine, supra.

Sensient maintains its APA claim is justified because the EPA acted ultra vires. (Sensient Br. 27.)  Sensient cites a Ninth Circuit case to substantiate this contention.  In Alaska Fish and Wildlife Fed'n and Outdoor Council, Inc. v. Dunkle, the Ninth Circuit found jurisdiction under the APA to review actions of the Fish and Wildlife Service that allegedly violated the Migratory Bird Treaty Act ("MBTA").  See 829 F.2d 933, 938 (9th Cir. 1987).  The Ninth Circuit reasoned:

> The MBTA grants the Secretary of the Interior discretion to regulate the taking of migratory birds, but that discretion is limited to actions in accordance with the treaties the MBTA implements. We have jurisdiction to determine whether the agency action, entry into the Hooper Bay Agreement and the 1985 Goose Management Plan, was contrary to the provisions of the treaties and thus to the MBTA.

Id.  Reasoning by analogy, Sensient contends the discretion of the EPA is limited by its

47

alleged duties under the False Statements Act.  See 18 U.S.C. § 1001.  By failing to refrain

from "knowingly and willfully falsifying, concealing or covering up a material act,"

Sensient contends the EPA breached this limitation and acted ultra vires.  (Sensient Br.

28.)

    This contention was not addressed by the magistrate judge in his Opinion and

Order.  The United States observes that the Ninth Circuit did not analyze Section 704 of

the APA.  (Gov't. Br. 22.)  The United States also points out that Dunkle contains no

discussion of whether there was an adequate non-APA remedy.  (Id.)  By contrast, the

magistrate judge found adequate remedies within the statutory framework provided

under CERCLA.  See Sensient III, 2009 WL 394317, at *10.  Because this Court finds no

reversible error with respect to this finding, Sensient's reliance on Dunkle cannot carry

the day.  Accordingly, the Court affirms that portion of the magistrate judge's ruling

dealing with this issue.

### 3. Proposed Bivens Claims

    Sensient next contends that the magistrate judge committed reversible error by

rejecting its proposed Bivens claims.[19]  (Sensient Br. 28.)  The magistrate judge denied

the proposed claims as both procedurally and substantively improper.  See Sensient III,

supra, at *11-*12.  Regarding procedurally impropriety, the magistrate judge relied on a

Third Circuit case without error.  Id. at *11 (citing F.D.I.C. v. Bathgate, 27 F.3d 850, 873

(3d Cir. 1994)).  In Bathgate, the Third Circuit rejected a third-party complaint under

---

[19]    Sensient sought to join Jane Kenny, David Rosoff, and other unknown EPA
officers or agents as third-party defendants for knowingly violating its due process rights.  See
Sensient III, 2009 WL 394317 at *11.

Rule 14(a)[20] because the putative third-party defendants' liability was not derivative of the putative third-party plaintiff.  See Bathgate, 27 F.3d at 873 (reasoning bank directors' liability is not derivative of the defendants' liability "on the notes for which the F.D.I.C. is seeking payment.").  The Third Circuit quoted Federal Practice and Procedure:

> A third-party claim may be asserted under Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant.  If the claim is separate or independent from the main action, impleader will be denied.

Id. (quoting C.A. Wright, M.K. Kane, Federal Practice and Procedure, Vol. 6, § 1446, at 355-58 (1990)).

The essence of this case is a cost recovery action brought by the Government pursuant to CERCLA.  Although the Court observes the unique circumstances of this case, that point cannot be forgotten.  Much like the action brought by the Government in Bathgate to recover payment on a note, here, the Government brings an action to recover costs associated with its response action at the General Color Site.  For the same reasons that the Third Circuit rejected the third-party complaint as improper in Bathgate, the magistrate judge rejected Sensient's third-party complaint.  This ruling is without error.  A contrary ruling would imply that the Government somehow shares in the liability stemming from the contamination at the General Color Site.  Cf. Bathgate, 27 F.3d at 873.  Given that the underlying theory of the third party rules is indemnity, see 59 Am. Jur. 2d Parties § 283, it is therefore appropriate to affirm this portion of the

---

[20]     Federal Rule of Civil Procedure 14(a)(1) permits a defending party, as a third-party plaintiff, to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a)(1).

magistrate judge's ruling.  Accordingly, the magistrate judge did not commit reversible error by rejecting Sensient's proposed <u>Bivens</u> claims as procedurally improper.

With respect to the substantive impropriety of Sensient's proposed <u>Bivens</u> claims, here again, the magistrate judge did not commit reversible error.  The magistrate judge relied on two principle reasons in rejecting Sensient's claims: (1) Courts are loathe to create new <u>Bivens</u> remedies; and (2) CERCLA is a comprehensive remedial statute that expressly provides relief for aggrieved parties.  <u>Sensient III</u>, <u>supra</u>, at *13-*14.  Contrary to Sensient's contentions on appeal,[21] both reasons are unassailable.  Some brief analysis is necessary.

In <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court created a cause of action for damages against a federal official for violation of constitutional rights, despite the absence of statutory authorization.  <u>Bivens</u>, 403 U.S. at 397.  <u>Bivens</u> therefore allows a direct cause of action for money damages under the Constitution where no other method of redress exists. <u>Id.</u>; <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S. Ct. 1937, 1947,(2009) ("<u>Bivens</u> proceed[ed] on the theory that a right suggests a remedy. . .") (alteration in original).  The magistrate judge observed that "since 1980 the Supreme Court has 'consistently refused to extend <u>Bivens</u> liability to any new context or new category of defendants.' " <u>Sensient III</u>, <u>supra</u>, at *12 (quoting <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 67 (2001)).

_____

[21]    Sensient cites <u>United States v. Koelzer</u>, 457 F.2d 892, 893-94 (3d Cir. 1972) in support of its <u>Bivens</u> claim.  (Sensient Br. 31.)  In <u>Koelzer</u>, the Third Circuit recognized a <u>Bivens</u> action where F.B.I. Special Agents allegedly falsified documents and produced falsified testimony in order to attain a guilty verdict against a black, Muslim male.  <u>Id.</u> at 893.  The Circuit held "there are sufficient allegations of Fifth Amendment violations to support an action for damages."

Notwithstanding this trend against extending <u>Bivens</u>, the magistrate judge then
performed a thorough and independent analysis before rejecting Sensient's claim.

He appropriately recognized the central question any court must ask before
recognizing a <u>Bivens</u> remedy– "whether any alternative process for protecting the
interest amounts to a convincing reason for the Judicial Branch to refrain from
providing a new and freestanding remedy in damages." <u>Sensient III</u>, <u>supra</u>, at *12
(quoting <u>Wilkie v. Robbins</u>, --- U.S. ---, 127 S. Ct. 2588, 2598 (2007). In <u>Schweiker v.</u>
<u>Chilicky</u>, 487 U.S. 412 (1988), the Supreme Court found convincing the fact that
Congress established elaborate remedial mechanisms under the Social Security system
to redress alleged deprivations of due process rights such that a new <u>Bivens</u> remedy was
unwarranted or superfluous. <u>Id.</u> at 423. The mere fact that the remedial mechanisms
did not include money damages did not dissuade the Court from rejecting the proposed
<u>Bivens</u> claim. <u>Id.</u>

Here, the magistrate judge appropriately analogized <u>Schweiker</u> to the instant
dispute. <u>Sensient III</u>, <u>supra</u>, at *14. There is no doubt that CERCLA is a comprehensive
remedial statute. As acknowledged by the Third Circuit, "CERCLA represents
Congress's effort to address a complex environmental problem under a comprehensive
remedial statute." <u>United States v. E.I. Dupont De Nemours and Co.</u>, 432 F.3d 161, 169
(3d Cir. 2005). Pursuant to this mandate, CERCLA provides several avenues of relief for
aggreived parties. Accordingly, the magistrate judge's ruling denying Sensient's
proposal to create a new <u>Bivens</u> remedy is affirmed.

<u>4. Unclean Hands</u>

Finally, Sensient contends the magistrate judge committed reversible error by

51

rejecting its proposed unclean hands defense as futile.  (Sensient Br. 37.)  With respect to this contention, Sensient acknowledges that equitable defenses are not recognized within CERCLA.  (Id.)  Sensient also acknowledges that a majority of courts, including this one, have ruled that CERCLA does not allow equitable defenses.  (Id.)  Despite this authority, Sensient contends "courts retain all their inherent equitable powers unless otherwise provided by statute, . . . and no court has ever held that CERCLA extinguishes a court's equitable powers."  (Id.) (internal citation omitted).

Sensient is only partially correct.  Of course CERCLA does not completely extinguish this Court's equitable powers.  If, for example, Sensient filed a motion for leave of court to file some hypothetical motion nunc pro tunc, this Court could exercise its equitable powers in deciding to grant or deny such a motion.  The mere fact that some equitable powers are always retained does not mean that this Court can apply them to any situation.  Particularly here, where Congress provides no express mention of equitable remedies and where this Court has already spoken on the issue, equitable remedies are inappropriate.

For example, in United States v. Rohm and Haas Co., this Court struck equitable defenses in a CERCLA action because "the majority of courts, including this court, have rejected equitable defenses to a section 107(a) cost recovery action as inconsistent with the explicit language of the statute and congressional intent. . ." See 939 F. Supp. 1142, 1151-52 (D.N.J. 1996).   Sensient acknowledges Rohm and Hass, but nonetheless contends that egregious conduct may permit an equitable defense of unclean hands against a government agency.  (Sensient Br. 38.)  Sensient cites an unpublished case from the Southern District of New York to substantiate this contention.  See SEC v.

Follick, No. 00 Civ. 4385KMWGWG, 2002 WL 31833868, at *8 (S.D.N.Y. Dec. 18, 2002) (quoting SEC v. Electronics Warehouse, Inc., 689 F. Supp. 53, 73 (D. Conn. 1988) (noting that unclean hands may be available where "the alleged misconduct occurred during the investigation leading to the suit and the misconduct prejudiced the defendant in his defense of the action", but refusing to permit the defense in that case)).

But equitable defenses against government agencies like the EPA are strictly limited.  See Schweiker v. Hansen, 450 U.S. 785, 788 (1981).  In light of that limitation, and considering this Court's previous ruling on this issue, see Rohm and Haas, supra, the magistrate judge did not commit reversible error by rejecting Sensient's unclean hands defense.  As a result, that portion of the magistrate judge's February Opinion and Order is affirmed.

## V. Conclusion

For the foregoing reasons, the magistrate judge is affirmed in part and reversed in part.  With respect to the January 28, 2009 Opinion and Order, the magistrate judge's ruling applying the Morgan Doctrine to former high-ranking government officials is affirmed.  Relatedly, the magistrate judge's ruling granting Christine Todd Whitman's motion to quash is affirmed.  The magistrate judge's ruling granting in part and denying in part Jane M. Kenny's motion to quash, however, is reversed.  Similarly, the magistrate judge's ruling granting in part and denying in part David Rosoff's motion for a protective order is reversed.  With respect to the February 13, 2009 Opinion and Order, the magistrate judge's rulings are affirmed in their entirety.  An appropriate Order shall follow.


/S/ Joseph H. Rodriguez
U.S.D.J.


Date: July 22, 2009