[Doc. No. 143]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>     v.<br><br>SENSIENT COLORS, INC.,<br><br>           Defendant. | Civil No. 07-1275(JHR/JS) |

**O P I N I O N**

This Opinion addresses whether plaintiff waived its privilege and work-product objections to documents it inadvertently produced. The Court will also decide whether plaintiff must produce its documents regarding its search for potentially responsible parties ("PRPs"), and whether Cancro Exhibit 10 is privileged.  This matter is before the Court on defendant Sensient Colors, Inc.'s "Motion to Compel Production of Documents from Plaintiff United States." [Doc. No. 143].  The Court received plaintiff's opposition [Doc. No. 149] and Sensient's reply [Doc. No. 152], and conducted oral argument. The Court also reviewed <u>in</u> <u>camera</u> the documents in question and plaintiff's confidential June 25, 2009 submission.  For the reasons to be discussed defendant's motion is GRANTED in part and DENIED in part.

Background

    The background facts of the case have already been set forth and will not be repeated in detail herein.  See U.S. v. Sensient Colors, Inc., ___ F. Supp. 2d ___, 2009 WL 2222798 (D.N.J. 2009). Only the facts relevant to the present discovery dispute will be summarized.

    Plaintiff produced approximately 45,000 documents (135,000 pages) to defendants on six (6) different days between May 14, 2008 and February 12, 2009.  Michele (Dusty) Strong Decl. ¶3.[1]  These documents comprised 450 boxes.[2]  On August 29, 2008, defendant returned 81 documents it deemed privileged.  On September 10, 2008, plaintiff advised defendant that 80 of the 81 documents were privileged and were inadvertently produced.  On October 23, 2008, defendant identified and returned another 89 privileged documents. Plaintiff produced a supplemental privilege log on November 21, 2008 claiming that most of the inadvertently produced documents were subject to attorney-client or work product protection.

    At the deposition of former EPA employee Anthony Cancro on December 11, 2008, plaintiff claimed that Exhibit Cancro-10 was

---

[1] The majority of the documents were produced on May 14, 2008 (15,800 documents), June 6, 2008 (15,600 documents), and July 9, 2008 (8,200 documents). Id.

[2] Defendant claims that before it reviewed the documents it shared them with its insurance counsel in a related insurance coverage case.  Coverage counsel then sent the documents to his adversaries.  Brief at 2, Doc. No. 144.

privileged.   At the deposition of former EPA employee Richard
Salkie on December 12, 2008, plaintiff claimed that Exhibit Salkie-
10 was privileged.[3]   Plaintiff also claimed these documents were
inadvertently produced.   On March 18, 2009, plaintiff identified
another document as inadvertently produced.   Plaintiff confirmed
this document was inadvertently produced on March 23, 2009.

In its April 27, 2009 response to Sensient's motion plaintiff
wrote that it acquired a new computer application ("Equivio") and
it commenced a "re-review of its entire 47,000 document database."
Brief at 9 n. 3, Doc. No. 149.   Plaintiff also wrote that it would
"promptly notify Defendant of any additional inadvertently
disclosed privileged information identified through this process."
Id.   In June 2009, plaintiff identified 91 more inadvertently
produced documents.   On July 20, 2009, in response to defendant's
July 8, 2009 letter, plaintiff identified three  additional
inadvertently produced documents.   Doc. No. 195 at 3-4, 7-8.   On
August 6, 2009, plaintiff identified six more inadvertently
produced documents.   On August 7, 2009, plaintiff's counsel finally
represented to the Court that its privilege review was completed.

Plaintiff claims that it reviewed 47,000 documents for
relevancy, responsiveness, "and for privilege and other applicable
protections."   Brief at 2.   After its review plaintiff produced

---

[3]Plaintiff has withdrawn its privilege assertion with
respect to Salkie-10.

3

45,000 documents.    Plaintiff claims that in designing and
implementing its privilege review and production of documents and
privilege logs, it relied upon the Discovery Plan it negotiated
with defendant.  <u>Id</u>. at 2-3.  The Discovery Plan addressed, <u>inter
alia</u>, waiver and inadvertent production issues.

        The Declarations of Michele (Dusty) Strong (Litigation Support
Manager and Coordinator with the Office of Litigation Support,
Executive Office, Environment and Natural Resources Division,
United States Department of Justice) and David L. Weigert, Esquire
(plaintiff's litigation counsel) describe the steps plaintiff took
to perform its privilege review.    Plaintiff relied upon twelve
attorneys and paralegals from the U.S. Department of Justice and
EPA to perform its review.    Strong Decl. ¶4.  Plaintiff conducted
"an entirely electronic privilege review without the use of hard-
copy documents or forms."    <u>Id</u>. at ¶5.   Plaintiff prepared a
database of relevant fields of each of its documents which was
accessible by the EPA in New York and the Department of Justice in
Washington.   <u>Id</u>. ¶¶7, 10, 11.   Plaintiff also conducted oral and
written training for all attorney and paralegal privilege
reviewers.   Weigert Decl. ¶2.   Plaintiff claims that after its
preliminary review but prior to its production it performed
computer assisted QA/QC measures to minimize mistakes.   Strong
Decl. ¶¶12 - 18.

        In total, plaintiff has identified 214 inadvertently produced

4

documents: (1) 53 documents identified in defendant's August 29, 2008 letter and confirmed in plaintiff's September 10, 2008 letter, (2) 61 documents identified in defendant's October 23, 2008 letter and confirmed in plaintiff's November 21, 2008 letter, (3) 91 documents identified in June 2009 (including Cancro-10), (4) 3 documents identified in plaintiff's July 20, 2009 letter, and (5) 6 documents identified in plaintiff's August 6, 2009 letter.

Discussion

Joint Discovery Plan

Plaintiff argues the parties' "Joint Rule 26(f) Report, Proposed Discovery Plan, and [Proposed] Order" ("Discovery Plan") [Doc. No. 144-8], precludes a privilege waiver.[4]  This argument is rejected.  Nowhere in the Discovery Plan does it mention that the parties are excused form the requirements of Federal Rule of Evidence 502(b), or the principles enunciated in Ciga-Geigy Corp.

---

[4]Paragraph III.A (page 16) states:

    Non-waiver: By exchanging documents or information with each other, the Parties do not waive any privilege, confidentiality or other protection from production that otherwise applies to such documents or information.

Paragraph VI. (page 12) states:

    The Parties agree that the inadvertent production of privileged documents or information (including ESI) shall not, in and of itself, waive any privilege that would otherwise attach to the document or information produced.

<u>v. Sandoz Ltd.</u>, 916 F. Supp. 404 (D.N.J. 1996).[5] The Court agrees with Sensient (Reply Brief at 4, Doc. No. 152), that paragraph VI of the Discovery Plan would be superfluous if the non-waiver provision was intended to protect the disclosure of all privileged documents under any circumstance.

Plaintiff and Sensient are represented by sophisticated counsel. If they intended to implement a "clawback" provision this would have been specifically mentioned.[6]  The most sensible construction of the parties' Discovery Plan is that the inadvertent production of a document "in and of itself" does not waive a privilege.  In other words, the parties agreed not to subject themselves to the harsh rule that a mere inadvertent production

_____

[5] The <u>Ciba-Geigy</u> analysis was followed in other New Jersey cases.  <u>See</u>, <u>e.g.</u>, <u>Maldonado v. New Jersey ex rel. Administrative Office of the Courts-Probation Division</u>, 225 F.R.D. 120, 128-29 (D.N.J. 204); <u>Jamie Fine Chemicals, Inc. v. Hi-Tech Pharmcal Co.</u>, C.A. NO. 00-3545 (AET), 2006 WL 2403941, at *2 (D.N.J. Aug. 18, 2006); <u>Bensel v. Airline Pilots Ass'n</u>, 248 F.R.D. 177 (D.N.J. 2008).

[6] "Clawback" agreements essentially "undo" a document production. A clawback arrangement involves the return of documents without waiver irrespective of the care taken by the disclosing party.  <u>Zubulake v. UBS Warburg LLC</u>, 216 F.R.D. 280, 290 (S.D.N.Y. 2003).  They are specifically mentioned in the 2006 Advisory Committee Note to Fed. R. Civ. P. 26(f) as a way to reduce discovery costs and delays and to minimize the risk of waiver: "On other occasions, parties enter agreements--sometimes called 'clawback agreements'--that production without intent to waive privilege or protection should not be a waiver so long as the responding party identifies the documents mistakenly produced, and that the documents should be returned under these circumstances.... In most circumstances, a party who receives information under such an arrangement cannot assert [waiver]...."

results in a waiver. See Carter v. Gibbs, 909 F.2d 1450, 1451 (Fed. Cir. 1990); In re Sealed Case, 877 F.2d 976, 980 (D.C. Cir. 1989). The Court agrees with defendant that the parties intended to incorporate the "flexible" standard (discussion infra), to determine if a waiver occurred. This is supported by Koch Materials Co. v. Shore Slurry Seal, Inc., 208 F.R.D. 109, 118 (D.N.J. 2002), wherein it noted that courts do not favor broad disclosure provisions similar to the interpretation plaintiff advocates:

> Courts generally frown upon "blanket" disclosure provisions as contrary to relevant jurisprudence.... In particular, the court observes that such blanket provisions, essentially immunizing attorneys from negligent handling of documents, could lead to sloppy attorney review and improper disclosure which could jeopardize clients' cases. Moreover, where the interpretation of the provision remains hotly disputed, ..., broad construction is ill advised.

See also Ciba-Geigy, 916 F. Supp. at 412. Since the Court finds that the parties' Discovery Plan does not preclude a waiver of the attorney-client privilege or work-product protection, the Court will address whether a waiver occurred.

Federal Rule of Evidence 502(b)

The inadvertent production issue before the Court is controlled by Fed. R. Evid. 502(b). This Rule was recently amended and reads:

Rule 502.  Attorney Client Privilege and Work Product;

7

Limitations on Waiver

(b)  Inadvertent  disclosure.--When  made  in  a  Federal
proceeding  or  to  a  Federal  Office  or  agency,  the
disclosure  does  not  operate  as  a  waiver  in  a  Federal  or
State  proceeding  if:

> (1)  the  disclosure  is  inadvertent;
> (2)  the  holder  of  the  privilege  or  protection
> took  reasonable  steps  to  prevent  disclosure;
> and
> (3)  the  holder  promptly  took  reasonable  steps
> to  rectify  the  error,  including  (if
> applicable)  following  Federal  Rule  of  Civil
> Procedure  26(b)(5)(B).

The 2008 amendment to FRE 502 states that the amendment applies to
matters pending on September 19, 2008, "insofar as is just and
practicable."  Act of Sept. 19, 2008, Pub. L. No. 110-322, §1(c),
122 Stat. 3537, 3538.  This action was pending on September 19,
2008, and the Court finds no justifiable reason not to apply FRE
502(b).  Accord Peterson v. Bernardi, C.A. No. 07-2723 (RMB/JS),
2009 WL 2243988, at *2 (D.N.J. July 24, 2009).

When deciding whether inadvertently produced documents should
be returned a two-step analysis must be done.  First, it must be
determined if the documents in question are privileged.[7]  It is
axiomatic that FRE 502 does not apply unless privileged or
otherwise protected documents are produced.  Peterson, at *2
(citing Heriot v. Byrne, No. 08 C 2272, 2009 WL 742769 (N.D. Ill.

---

[7]Except as to Cancro-10 defendant does not contest that
plaintiff's inadvertently produced documents are privileged or
otherwise protected from discovery.

March 20, 2009)).   Second, if privileged documents are produced
then a waiver does not occur unless the three elements of FRE
502(b) are satisfied: (1) the disclosure must be inadvertent, (2)
the holder of the privilege or protection took reasonable steps to
prevent the disclosure, and (3) the holder promptly took reasonable
steps to rectify the error, including (if applicable) following
Fed. R. Civ. P. 26(b)(5)(B).  Plaintiff, the disclosing party, has
the burden to prove that the elements of FRE 502(b) have been met.
Peterson, at *2; Heriot, at *11; Relion, Inc. v. Hydra Fuel Cell
Corp., C.A. No. CV06-607-HU, 2008 WL 5122828, at *3 (D. Or. Dec. 4,
2008).  See also Ciba-Geigy, 916 F. Supp. at 412.     FRE 502(b)
opts for a middle ground approach to determine if an inadvertent
disclosure operates as a waiver.   See Explanatory Note to FRE
502(b)(revised November 28, 2007);[8] Preferred Care Partners Holding
Crop v. Humana, Inc., No. 08-20404-CIV, 2009 WL 982449, at *4 (S.
D. Fla. April 9, 2009) (the intermediate approach and the Rule
502(b) analysis are substantially similar).  This is essentially

---

[8]The Note discusses a "multi-factor test for determining
whether inadvertent disclosure is a waiver."  These factors
include the reasonableness of precautions taken, the time taken
to rectify the error, the scope of discovery, the extent of
disclosure and the overriding issue of fairness.  Other factors
are the number of documents to be reviewed and the time
constraints for production.  Id. No one factor is dispositive.
"The rule ... is really a set of non-determinative guidelines
that vary from case to case" and is designed to be "flexible."
Id.

the same approach used in <u>Ciba-Geigy</u>.  916 F. Supp. at 411.  Under the <u>Ciba-Geigy</u> analysis at least five factors are analyzed to determine if a waiver occurred: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) any delay and measures taken to rectify the disclosure, and (5) whether the overriding interests of justice would or would not be served by relieving the party of its error.  <u>Id.</u>

Plaintiff's inadvertent production fits into three groups: (1) documents identified by plaintiff on September 10, 2008, (2) documents identified in plaintiff's November 21, 2008 letter, and (3) documents identified by plaintiff on June 25, 2008 or later. The Court's analysis of defendant's motion will separately address these three groups.

(1) <u>Documents Identified in September 10, 2008 Letter</u>

The first group of documents to address are the documents plaintiff identified on September 10, 2008.  As to these documents the discussion regarding Rule 502(b)(1) and (2) overlap and will be addressed together.  The Court does not question that plaintiff's document production was inadvertent in the sense that it was not intended.  However, plaintiff's subjective intent is not

10

controlling.   All  inadvertent  disclosures  are  by  definition
unintentional.  Ciba-Geigy, 916 F. Supp. at 411.  To determine if
plaintiff's  production  was  inadvertent  the  Court  must  look  at  a
multitude  of  factors,  including  whether  plaintiff  took  reasonable
precautions  to  prevent  errors.   Based  upon  the  totality  of  the
circumstances  the  Court  finds  that  plaintiff  satisfies  the
requirements of FRE 502(b)(1) and (2).

The  first  noteworthy  point  is  that  plaintiff's  document
production  was  substantial.   Plaintiff  reviewed  47,000  documents
and  produced  45,000  documents.   Given  this  volume  mistakes  were
bound  to  occur.   Heriot, 2009  WL  742769,  at  *11  (citations
omitted)("where    discovery    is    extensive,    mistakes    are
inevitable....)"  Further,  out  of  the  45,000  produced  documents
only  a  total  of  214  are  at  issue.   Relatively  speaking  this  is  not
a  large  number.   In  addition,  except  as  to  Cancro-10,  plaintiff  did
not  erroneously  produce  the  same  document  on  multiple  occasions.
Compare Ciga-Geigy, 916 F. Supp. at 412-13.  In addition, with some
exceptions,  after  reviewing  the  inadvertently  produced  documents
the  Court  does  not  agree  with  defendant  that  the  privileged
information was self-evident.[9]

---

[9]In addition to reviewing the documents for privilege and
work product protection, plaintiff also reviewed the documents
for private information pursuant to the Privacy Act of 1974,

As to FRE 502(b)(2), plaintiff has presented substantial evidence that it took reasonable steps to prevent an inadvertent production.  Plaintiff's production was made in the midst of a commendable effort to employ a sophisticated computer program to conduct its privilege review.  Unfortunately, mistakes occurred. Plaintiff should not be unduly punished for occasional mistakes that occurred while it started to use new software to organize and sort its documents.  Plaintiff also invested substantial resources to prevent an inadvertent production.  In addition to its computer program, plaintiff employed twelve professionals to conduct its review who were trained on privilege issues.  Plaintiff also performed QA/QC to: (1) ensure completeness of the review, (2) minimize false negatives, i.e., designations of privileged information as non-privileged, and (3) minimize false positives, i.e., designations of discoverable information as privileged. Strong Decl. ¶15.   Thus, the Court finds that plaintiff satisfied the requirements of FRE 502(b)(1) and (2).

The last element plaintiff must satisfy to prevent a waiver is to demonstrate that it took reasonable steps to rectify its error. FRE 502(b)(3). The Court finds this occurred.  Prior to August 29,

---

5 U.S.C. §552a and confidential business information under 40 C.F.R. §§2.201-2.311.

2008 plaintiff had no reason to suspect that its document production was problematic. Sensient notified plaintiff about its error on August 29, 2008. On September 10, 2008, only eight work days later, plaintiff confirmed its error and notified defendant that Rule 26 (b)(5)(B) should be followed. The Court finds that these actions were timely and reasonable.

Defendant's arguments as to the plaintiff's September 10, 2008 identification are not persuasive. The Court does not agree that, "[t]he Government cannot sustain its burden to prove the reasonableness of precautions taken without an explanation of why the errors occurred." Reply Brief at 6, Doc. No. 152. FRE 502(b) requires plaintiff to demonstrate that it took reasonable precautions to prevent an error, which it has done. Although a reasonable explanation for its error would be helpful to know, this is not a sine qua non to establish that an inadvertent production within the meaning of FRE 502(b) occurred. Further, the Court rejects defendant's argument that it should essentially discount the fact that plaintiff produced 45,000 documents and only consider that plaintiff produced approximately 1600 (defendant's estimate) to 4000 (plaintiff's estimate) e-mails or memoranda. All of plaintiff's documents had to be reviewed for privilege, not just e-

mails and memoranda.[10]  Also, the Court is satisfied that plaintiff employed diligent efforts and safeguards when it set up and used its analytical software.  Albeit, since defendant did not review plaintiff's June 25, 2009 in camera letter, defendant does not have detailed first-hand knowledge of plaintiff's confidential protocol.

Accordingly, since plaintiff satisfied its burden of establishing that the three elements of FRE 502(b) have been met, the Court finds that plaintiff did not waive its attorney-client privilege and work-product protection regarding the documents identified in its September 10, 2008 letter.[11]

---

[10]Plaintiff represents that the categories of documents it reviewed include: draft and final, signed and unsigned, clean and annotated versions of reports, analyses, memoranda, notes, minutes, opinions, determinations, consent orders, unilateral orders, agreements, spreadsheets, databases, photographs, statements of work, cost estimates, invoices, cost summaries, letters, e-mail, and other correspondence.  Strong Decl. ¶23.  Plaintiff claims that it found examples of privileged or otherwise protected documents in "virtually every one of these categories."  Id. at ¶24.

[11]Defendant's other arguments are also not persuasive.  The Court assumes that the twelve attorneys and paralegals who conducted plaintiff's privilege review were competent.  The Court declines to require plaintiff to identify the specific qualifications of each reviewer.  Plaintiff has already represented that it "assigned only trained and experienced attorneys and paralegals."  Weigert Decl. ¶6.  Further, the interests of justice do not support waiver as to this group of documents.  It appears that plaintiff's implementation of a new computer application was largely to blame for the errors that occurred.  This is not unexpected.  The use of sophisticated analytical software should be encouraged.  Obviously, however, given plaintiff's experience thus far, future errors will not be treated generously.

(2) <u>Documents Identified in November 21, 2008 Letter</u>

The second group of documents to address are those identified in plaintiff's November 21, 2008 letter.  For the reasons already discussed the Court finds that plaintiff satisfied Rule 502(b)(1) and (2).[12]  However, the Court finds that plaintiff did not take reasonable precautions to rectify its error.  Therefore, since plaintiff did not satisfy its burden under Rule 502(b)(3), it waived its privilege and work product objections as to this category of documents.

After plaintiff received defendant's August 29,2008 letter it was on notice that something was amiss with its document production and privilege review.  Defendant's letter should have spurred plaintiff to promptly re-assess its procedures and re-check its production.  Nevertheless, plaintiff waited until November 21,

---

[12]Although the result is the same, there are some differences in the Rule 502(b)(1) analysis between the first and the second and third groups of documents.  The interests of justice do not weigh in plaintiff's favor with regard to the inadvertently produced documents identified after November 21, 2008.  By this date plaintiff had an adequate opportunity to correct its error.  If a party is on notice of an error in its document production it should not wait for its adversary to discover its error and then claim protection under FRE 502(b).  Further, as noted, these documents were fully disclosed to the lawyers in defendant's related insurance coverage litigation.  While it is not impossible to retrieve plaintiff's documents, this substantial effort is not compelled by the interests of justice when plaintiff did not act diligently to rectify its error.

2008, three months after it received defendant's August 29, 2008 letter, to confirm its error.  In addition, it appears that plaintiff did not even know about its error until it received Defendant's October 23, 2008 letter.  If defendant was able to discover an error by October 23, 2008, there is no reason plaintiff could not have done the same thing.  Indeed, plaintiff had a greater motivation than did defendant to conduct a thorough privilege review after plaintiff confirmed its mistakes on September 10, 2008.[13]

Surprisingly, even after plaintiff received defendant's October 23, 2008 letter it waited approximately one more month to confirm its error.  In view of the notice plaintiff received of the deficiencies in its privilege review, and its failure to diligently re-assess its document production and procedures for privilege

---

[13]There is a glaring omission in plaintiff's submissions. Plaintiff's Declarations provide no meaningful details regarding the steps it took immediately after August 29, 2008, the date of defendant's first letter identifying inadvertently produced privileged documents, to rectify its error.  Plaintiff merely states that "[s]hortly after receiving defendant's October 23, 2009 letter ..., the United States began to re-review the 89 documents for privilege." Weigert Decl. ¶9.  Plaintiff's Declarations are silent on what it did immediately after it received plaintiff's August 29, 2008 letter to assure the accuracy of its complete document production, not just the documents defendant identified.  It was not until April 27, 2009 that plaintiff represented to the Court that it was reviewing its entire document production.  Brief at 9, n.3.  Plaintiff did not represent to the Court that its review was completed until August 7, 2009.

review, the Court finds that plaintiff did not take reasonable steps to rectify the error it eventually confirmed in its November 21, 2008 letter.

After September 10, 2008, there is no question plaintiff was on notice of problems. It therefore should have taken prompt and diligent steps to re-assess its document production. <u>See</u> Note to FRE 502(b)(3)("The rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake. But the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently"). <u>See</u> also <u>Preferred Care Partners Holding Corp.</u>, 2009 WL 982449, at *14. ("In light of the fact that Humana was aware that it inadvertently produced a number of documents which it believed to contain privileged information, Humana had an obligation ... to ensure that no additional privileged documents were divulged").

The fact that plaintiff confirmed on September 10, 2008, that 80 documents were inadvertently produced was an obvious indication that other privileged documents may have been produced in error. If plaintiff had taken reasonable steps to rectify its error it would have discovered the documents identified in its November 21,

2008 letter soon after September 10, 2008.  Instead, defendant
alerted plaintiff to more inadvertent productions on October 23,
2008.  In addition, plaintiff could not give defendant and the
Court assurances that its privilege review was complete until
August 7, 2009, approximately ten months after it received notice
of potential problems.

In this context it is noteworthy that plaintiff only produced
approximately 1600-4000 e-mails and memoranda, many of which were
authored by or sent to DOJ or EPA attorneys.  Many of the
inadvertently produced documents came from this subset of
documents.  If plaintiff had taken reasonable steps after August
29, 2008 to rectify its error it would have immediately zeroed in
on this category of documents.  If this was done, and given the
modest subset of documents to review, plaintiff would have been
promptly alerted to the mistakes eventually confirmed in its
November 21, 2008 letter.  The record is plain that defendant did
not act reasonably and diligently to correct its error.  Therefore,
plaintiff waived its privilege and work product protection
regarding the documents identified in its November 21, 2008 letter.
Accord Preferred Care Partners Holding Corp. v. Humana, Inc., supra
(holding that defendant did not take reasonable steps to rectify
its error when it failed to take action two months after being

notified of an inadvertent production).

(3) <u>Post-June 25, 2009 Identifications</u>

For the reasons already discussed the Court finds that plaintiff satisfied Rule 502(b)(1) and (2) with regard to its post-June 25, 2009 identifications. However, plaintiff does not satisfy Rule 502(b)(3). The Court has already determined that plaintiff did not take reasonable steps to rectify its error when it waited until November 21, 2008 to confirm its error. This being the case, errors confirmed on June 25, 2009 or later are also late. Defendant's August 28, 2008 letter put plaintiff on notice that it should have re-analyzed its document production for errors. Plaintiff did not take reasonable steps to correct its mistake by waiting approximately ten months to confirm its error. Therefore, plaintiff waived its attorney client privilege and work product protection regarding the documents identified in its post-June 25, 2009 letters.

<u>PRP Search Documents</u>

Defendant requests plaintiff's documents regarding its search for potentially responsible parties ("PRP"). Defendant argues plaintiff waived its attorney-client privilege and work product protection for these documents because plaintiff placed the nature, timing and adequacy of its PRP search at issue in the case when

19

"the EPA claimed entitlement to exceed the 12-month and $2 million limits established by CERCLA and the National Contingency Plan." Brief at 20.  Defendant argues that a waiver occurred when plaintiff stated in its Action Memos that, inter alia, "Assistance will not otherwise be provided on a timely basis."  Defendant also argues, "by certifying the administrative record, the Government put at issue the accuracy of that record, which included numerous Action Memos that attest to the fact that removal of the hazardous substances in accordance with the NCP was appropriate because assistance would otherwise not be provided on a timely basis (i.e., there were not PRP's willing and about to conduct the remediation)." Reply Brief at 15.

The "at issue" doctrine applies where a "party has asserted a claim or defense that he intends to prove by use of the privileged materials." Pittston Co. v. Allianz Ins. Co., 143 F.R.D. 66, 71 (D.N.J. 1992); North River Ins. v. Philadelphia Reinsurance Corp., 797 F. Supp. 363, 370 (D.N.J. 1992).  When these circumstances are present the attorney-client privilege should yield upon a showing of: (1) a legitimate need to reach the evidence sought to be shielded, (2) relevance and materiality of that evidence to the issue before the court, and (3) a fair preponderance of the evidence by the party asserting the privilege including all

20

reasonable inferences that the information cannot be obtained from a less intrusive source.  Pittston Co., 143 F.R.D. at 71 (citations and quotations omitted).  An important factor in this determination is that the party seeking the protection must have injected the communication into the action.  Id.

Here, plaintiff did not interject its PRP search into the case.  Instead, defendant is pursuing a defense that the plaintiff's PRP search was inadequate.  This is not a case where plaintiff "made the decision and [took] ... the affirmative step in the litigation to place the advice of the attorney [or work product] in issue."  Rhone-Poulenc Rorer Inc. v. Hone Indemnity Company, et al., 32 F.3d 851, 863 (3rd. Cir. 1994).  See also Resolution Trust Corp. v. Mass. Mutual Life Ins. Co., 200 F.R.D. 183, 192 (W.D.N.Y. 2001)(citation omitted)("[i]t cannot be possible for [a defendant] to justify breaching [a plaintiff's] privilege by reason of its owns pleading of an affirmative defense.  That would give an adversary who is a skilled pleader the ability to render the privilege a nullity").  Thus, plaintiff did not place its PRP search "at issue" so as to waive its objections to producing its PRP search documents.

The Rhone-Poulenc decision is instructive.  In that case the plaintiff filed an insurance coverage complaint regarding HIV

claims from blood product.  Defendants requested plaintiff to produce privileged documents regarding the evaluations of its potential liability to consumers that were prepared before the coverage was purchased.  Defendants argued the documents were relevant to their defense concerning whether the plaintiff expected or intended the claims for which it sought coverage.  After the District Judge affirmed the Magistrate Judge's finding that plaintiff waived its privilege by putting its state of mind at issue, the Third Circuit issued a writ of mandamus directing the lower court to vacate its order.  The court reasoned, in part, that the plaintiff did not attempt to prove its claim or defense by disclosing or describing an attorney client communication.  Rhone-Poulenc, 32 F.3d at 863.  Similarly, in this case plaintiff is not attempting to prove its case by relying on the privileged documents defendant is requesting.  Although the requested documents are arguably relevant, this is not determinative as to whether they must be produced.  Relevance is not the standard for determining whether privileged information should be produced, "even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." Id. at 864.

The decision in Harding v. Dana Transport, Inc., 914 F. Supp.

22

1084 (D.N.J. 1996), is not controlling.  In that case the court ordered the defendant to produce its attorney's investigation of a sexual harassment claim.  What happened in Harding is that although the defendant relied upon the attorney's report as a defense, it did not want to produce its contents.  Nevertheless, defendant still argued that the report helped insulate it from liability.  In this case, plaintiff did not raise the issue of its PRP search as part of its claim or defense.  Nor is the PRP search an element of plaintiff's prima facie case.  In Harding the defendant relied upon the attorney's work product as a defense to liability.  914 F.Supp. at 1096.  Fairness, therefore, demanded that the report be produced.  Id.  Here, fairness does not dictate that all of plaintiff's PRP documents be produced because defendant, not plaintiff, interjected the issue into the case.

To be sure, however, all of plaintiff's PRP documents may not be immune from discovery.  Facts are not protected from discovery. Rhone-Poulenc, 32 F.3d at 864.  Further a "litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer, nor can a litigant refuse to disclose facts simply because that information came from a lawyer." Id. If defendant tailors its discovery, rather than asking for all PRP search documents, it may be able to obtain some of the discovery it

seeks.  However, that issue remains for another day.  The Court simply rules that since plaintiff did not put its PRP search documents "at issue" it did not waive its attorney client privilege and work product protection that attached to the documents. Nevertheless, if the documents or portions thereof are otherwise discoverable they must be produced.

Cancro Exhibit-10

Cancro Exhibit-10 is a March 13, 2003 (10:48 a.m.) e-mail from George Pavlou, then Director of EPA's Region II Emergency and Remedial Response Division, to an EPA attorney (Deborah Mellott, Esquire), with copies to two other EPA attorneys.  In the e-mail Pavlou asks Mellott to call a prospective purchaser of the General Color Site.  Plaintiff claims the e-mail is protected by the attorney-client privilege.  The Court disagrees.

The burden of establishing that a document is privileged is on the party asserting the privilege.  Torres v. Kuzniasz, 936 F.Supp. 1201, 1208 (D.N.J. 1996).  The attorney-client privilege protects communications when: (1) the asserted holder of the privilege is or sought to become a client, (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer, (3) the communication relates to a fact of which the

24

attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort, and (4) the privilege has been (a) claimed and (b) not waived by the client.  The attorney-client privilege does not apply merely because a statement was made to an attorney.  Nor does the privilege apply simply because it conveys advice that is legal in nature.  HPD Laboratories, Inc. v. Clorox Company, 202 F.R.D. 410, 414 (D.N.J. 2001).  Instead, the privilege applies "only [to] those disclosures - necessary to obtain informed legal advice - which might not have been made absent the privilege." Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1424 (3d Cir. 1991).

The Court finds that plaintiff has not satisfied its burden of proving that Cancro-10 is privileged.  As noted, merely because three attorneys were copied on Pavlou's e-mail is not determinative.  Further, except for the conclusory statements in plaintiff's brief [Doc. No. 149 at 27-29], there is no evidence that Pavlou was seeking an opinion on law or legal advice.  This is not apparent form the face of the e-mail and plaintiff has not supplied any supporting affidavits.  It appears that Cancro-10 is

simply an e-mail from Pavlou to three attorneys regarding EPA business.  The e-mail is not a communication requesting or giving an opinion on law or legal advice.

Accordingly, since Cancro-10 is not privileged it must be produced.[14]

Conclusion

For all the foregoing reasons plaintiff's Motion to Compel is GRANTED in part and DENIED in part.  The Court finds that plaintiff did not waive its privilege and work product protection regarding the documents identified in its September 10, 2008 letter. Defendant's motion is DENIED at to these documents.  However, the Court finds that plaintiff waived its privilege and work product protection regarding the documents identified in its November 21, 2008 and post-June 25, 2009 letters.  The Court GRANTS defendant's motion as to these documents and Orders these documents to be produced.  Further, the Court finds that defendant's request for all of plaintiff's PRP search documents is DENIED.  In addition, defendant's request for the production of Cancro Exhibit-10 is GRANTED.

---

[14]Even if Cancro-10 is privileged, it still must be produced.  Plaintiff did not claim the document was privileged until Cancro's deposition on December 11, 2008.  For the reasons already discussed, plaintiff waived its privilege regarding the document because it cannot satisfy the requirement of FRE 502(b)(3).

An accompanying Order will be entered memorializing the rulings in this Opinion.

                                        s/Joel Schneider
                                        JOEL SCHNEIDER
                                        United States Magistrate Judge

Dated: September 9, 2009